UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SCHNUCK MARKETS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> FIRST DATA MERCHANT DATA ) <br> SERVICES CORP., and ) <br> CITICORP PAYMENT SERVICES, INC. ) <br> ) <br> Defendants. ) | Case No. 4:13-CV-2226-JAR <br><br> (Hon. John A. Ross) |

## COMPLAINT

Plaintiff Schnuck Markets, Inc. ("Schnucks"), by and through undersigned counsel, brings this action against First Data Merchant Services Corp. ("First Data") and Citicorp Payment Services, Inc. ("Citicorp") (collectively, "Defendants"), and hereby alleges as follows:

## NATURE OF THE CASE

1. This action arises from Defendants' withholding more money from payments due to Schnucks than they are contractually entitled to withhold. Schnucks faced a cyber-attack earlier this year. When merchants have payment card data stolen from them, payment card networks sometimes levy financial assessments against the bank that sponsored the merchant into the network.

2. Defendants are withholding money from Schnucks for the amounts of actual and expected assessments by payment card networks. Almost all of the assessments made by the networks will be for the purpose of reimbursing banks that purportedly issued payment cards affected by the cyber-attack.

3. There is a limitation of liability clause in the parties' Agreement, which limits

Schnucks' indemnification obligation to Defendants for reimbursement of losses claimed by issuing banks to a defined amount. Despite the expressly defined limitation for losses, Defendants have wrongfully withheld more than the defined amount from payments due to Schnucks. Accordingly, Defendants have breached the Agreement by wrongfully withholding money due Schnucks under the Agreement.

4. Defendants have also breached the Agreement by establishing and funding a reserve account from funds owed to Schnucks in an amount that is substantially more than permitted by the Agreement.

5. In addition to a claim for breach of contract, Schnucks seeks a declaratory judgment by the Court determining both Schnucks' maximum liability under the Agreement and the maximum amount Defendants are permitted to withhold from Schnucks to fund the reserve account.

## PARTIES

6. Plaintiff Schnuck Markets, Inc. is a corporation organized and existing under the laws of the state of Missouri, with its principal place of business in St. Louis County, Missouri. Schnucks is a family-owned grocery store that operates 100 stores in five states.

7. Upon information and belief, Defendant First Data Merchant Services Corp. is a corporation organized and existing under the laws of the state of Georgia, with its principal place of business in Greenwood Village, Colorado. First Data provides payment processing services that enable merchants to let their customers pay with credit and debit cards.

8. Upon information and belief, Defendant Citicorp Payment Services, Inc. is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in Long Island City, New York. Citicorp acts as an acquiring bank providing sponsorship services to merchants so merchants can accept credit and debit cards.

2

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this controversy under 28 U.S.C. § 1332 because the amount in controversy exceeds Seventy-Five Thousand Dollars ("$75,000.00"), exclusive of interest, attorney's fees and costs, and complete diversity of citizenship exists between Schnucks, First Data, and Citicorp.

10. Venue is proper in the Eastern District of Missouri because the Agreement between Schnucks, First Data, and Citicorp that gives rise to this action contains a choice of venue provision pursuant which all parties agreed that any legal action or proceeding with respect to the Agreement would be brought in either the state court of St. Louis County, Missouri, or in the Federal District Court for the Eastern District of Missouri. Because this Court has personal jurisdiction over each and all of the defendants, venue is proper pursuant to 28 U.S.C. § 1391(b)(3).

11. The parties engaged in good faith discussions to attempt to resolve this dispute, but the discussions were unsuccessful.

## FACTS

*Schnucks' Merchant Processing Relationships*

12. In the time between the swipe of a payment card at a merchant's point-of-sale device and the authorization of the transaction, the transaction information goes from the device to a payment processor associated with the merchant's acquiring bank, where it is routed through a credit card network to the bank that issued the payment card, and then the issuing bank sends the authorization message back through to the merchant. Acquiring banks contract with merchants to process their transactions, while issuing banks provide credit to consumers and issue payment cards with the brand of a credit card association.

13. Visa and MasterCard are two of the largest credit card networks (the

3

"Networks"). They do not issue cards, nor do they contract with merchants to process transactions. Instead, they have contracts with acquiring and issuing banks.

14. An acquiring bank, by "sponsoring" a merchant into the Visa and MasterCard networks, becomes responsible to Visa and MasterCard for ensuring that the merchant follows each network's operating regulations, as well as any consequences of non-compliance. Thus, acquiring banks often include provisions in their agreements with merchants that require the merchants to follow the Visa and MasterCard operating regulations and indemnify the acquiring bank from financial losses that might arise from non-compliance.

15. For a merchant to accept payment cards, in addition to having an agreement with an acquiring bank, the merchant also needs a payment processor to facilitate authorization, settlement, and other functions associated with routing payment card transactions from the point-of-sale to the payment networks. Accordingly, merchants often have a three-party services agreement with an acquiring bank and payment processor.

16. In October 2011, Schnucks and First Data entered into a Master Services Agreement ("MSA"), which sets forth the terms and conditions by which First Data agreed to provide credit and debit card merchant transaction processing services for Schnucks. At the same time, Schnucks, First Data, and Citicorp entered into a Merchant Services Bankcard Addendum ("MSA Addendum"), incorporated into the MSA, which sets forth the terms and conditions by which First Data and Citicorp collectively agreed to provide credit and debit card merchant transaction processing services for Schnucks. By their terms, the MSA and MSA Addendum make up the same Agreement and are collectively referred to as the "Agreement." A copy of the Agreement is not attached. The Agreement imposes confidentiality obligations because it contains confidential, proprietary, and sensitive information.

17. The operating regulations of Visa and MasterCard are expressly incorporated by

reference as part of the Agreement.

18.     The Agreement states that Schnucks may be obligated to indemnify and hold harmless Defendants, referred to as Servicers in the Agreement, for losses liabilities, damages, and expenses under certain circumstances that amount to a breach of the Agreement.

19.     The Agreement permits First Data to hold in reserve funds owed to Schnucks from payment card transactions under certain scenarios to offset indemnity obligations of Schnucks.

20.     The Agreement also contains a limitation of liability provision in Section 5.4 of the MSA, which limits liability for all losses, claims, and damages to a defined amount. There are two exceptions to that defined limitation of liability. The first exception applies a higher limitation to fines arising from non-compliance with Section 25 of the MSA Addendum. And the second exception states that there is no limitation for fees, fines, and penalties assessed by payment card networks.

21.     Assessments for the purpose of reimbursing issuing banks are not fines for non-compliance with Section 25, nor are such loss reimbursements a fine, fee, or penalty assessed by a card network. Accordingly, neither exception to the defined limitation of liability for losses applies to assessments made to reimburse issuing banks.

22.     Indeed, the higher limitation in Section 5.4 for breaches of Section 25, as evidenced by two sentences in that section, applies only as a limit to fines imposed by the Networks for Payment Card Industry Data Security Standards ("PCI DSS") non-compliance—it does not apply to losses.

23.     Similarly, the last sentence of Section 5.4, which specifies when the limitation of liability provision does not apply, is inapplicable to losses assessed by the Networks—it only applies to fees, fines or penalties by the Networks.

5

*The Cyber-Attack Against Schnucks*

24. Schnucks disclosed on March 30, 2013 that it had found and blocked a cyber-attack against its payment card processing system (the "Attack").

25. The Attack involved the insertion of malicious computer code that searched for the presence of data from the magnetic stripe of payment cards swiped at certain affected Schnucks stores.

26. On April 15, 2013, Schnucks identified the affected stores, the time frame during which cards used in those stores were at risk, and the total number of cards that may have been at risk.

*Card Network Assessments*

27. Visa and MasterCard refer to cyber-attacks that affect payment card data as account data compromise events. If the Networks believe a merchant was not fully compliant with PCI DSS at the time of the event, then they may assess a non-compliance fine against the merchant's acquiring bank. MasterCard also assesses a case management fee, which is based on the number of MasterCard accounts involved, against the acquiring bank. Additionally, when the account data compromise event involves data from the magnetic stripe of payment cards, Visa and MasterCard both issue assessments against the merchant's acquirer for the stated purpose of reimbursing banks that issued payment cards affected by the event for two categories of losses: (1) the amount that the issuing banks spent to monitor or cancel and re-issue at risk cards; and (2) the amount of fraudulent charges on the at risk cards.

28. In July 2013, First Data received a preliminary case management report from MasterCard outlining the case management fee and the amount of monitoring/card replacement and fraud loss reimbursement it was assessing against Citicorp.

29. Based on the amount of MasterCard's assessment, First Data projected the total

6

amount of Visa's assessment, including the amount it would assess for losses suffered by issuers of affected Visa cards associated with monitoring and card replacement, as well as counterfeit fraud losses.

30.     Based on the MasterCard assessment and its projection of the Visa assessment, First Data informed Schnucks that it was going to establish a reserve fund in full amount of the projected assessments by the Networks.  Approximately 97% of the actual and projected amount of the assessments by the Networks was for reimbursement of losses claimed by issuing banks.

31.     First Data established the reserve account by withholding a percentage each day from the funds First Data collected for Schnucks from the payment card transactions it processed at one store location.  To date, Defendants have withheld funds substantially in excess of the defined limitation of liability.

32.     Schnucks' obligation to indemnify Defendants for assessments designed to reimburse issuing banks for claimed losses is limited to defined limitation in section 5.4 of the Agreement.

33.     In addition to the Agreement's limitation of liability provision, the MSA Addendum contains limits on the amount of a reserve account that First Data may establish.  The reserve account established by Defendants far exceeds the amount of any current and anticipated fees or fines from the Networks.

## CLAIMS FOR RELIEF/CAUSES OF ACTION

### COUNT I
### (Breach of Contract)

34.     Schnucks incorporates the allegations in the previous paragraphs in this Complaint as if fully set forth herein.

35.     The Agreement is a valid and enforceable contract between Schnucks and

Defendants.

36.    As a result of the Attack, the Networks have or are expected to issue assessments against Citicorp, and the assessments are for the stated purpose of reimbursing issuing banks for monitoring/card replacement and counterfeit fraud losses.

37.    The Agreement limits Schnucks' liability to indemnify Defendants for such losses to a defined amount.  The two exceptions to the defined limitation do not apply to assessments for losses claimed by issuing banks.

38.    Despite this, Defendants have breached their obligations under the Agreement by establishing a reserve account that has already been funded in an amount far in excess of the defined limitation and in violation of the provisions permitting Defendants to establish a reserve.

39.    Defendants' breach of their obligations under the Agreement has caused and continues to cause Schnucks to incur damages in the form and amount of money that has been wrongfully withheld from Schnucks.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Schnuck Markets, Inc. prays for judgment in its favor and against Defendants First Data Merchant Services Corp. and Citicorp Payment Services, Inc., jointly and severally, as follows:

1)    Damages in the amount wrongly withheld under the Agreement;

2)    Prejudgment interest, post-judgment interest, and the costs and expenses incurred in connection with this matter, including reasonable attorney's fees; and

3)    All such other and further relief, either at law or in equity, to which Schnucks is entitled.

## COUNT II
### (Declaratory Judgment)

40. Schnucks incorporates the allegations in the previous paragraphs in this Complaint as if fully set forth herein.

41. Pursuant to the Agreement, the maximum amount of Schnucks' indemnity obligation to Defendants for losses is a defined amount set forth in Section 5.4 of the MSA.

42. First Data has established a reserve and withheld more funds from Schnucks than it is permitted to under the Agreement.

43. An actual, concrete, and justiciable controversy exists between Schnucks and Defendants regarding the maximum amount of Schnucks' indemnity obligation and the maximum amount that may be withheld from Schnucks' funds.

44. Schnucks requests a declaratory judgment that its liability pursuant to the Agreement for operating expense loss reimbursements and fraud loss reimbursements assessed by the Networks is limited to the defined amount set forth in Section 5.4 for losses.

45. Schnucks requests a declaratory judgment that the maximum amount Defendants may hold in the reserve account pursuant to the Agreement is the amount of any current or anticipated fines or fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Schnuck Markets, Inc. prays for judgment in its favor and against Defendants First Data Merchant Services Corp. and Citicorp Payment Services, Inc., jointly and severally, as follows:

1) A declaratory judgment that Schnucks' maximum liability under the Agreement for losses suffered by issuing banks for monitoring/card replacement and counterfeit fraud losses is the defined amount in Section 5.4 applicable to losses;

2) A declaratory judgment specifying that the maximum amount Defendants may hold in the reserve account is the amount of any current or anticipated fines or fees;

3) An order requiring the return of the wrongfully withheld amount as well as prejudgment interest, post-judgment interest, costs, and expenses, including reasonable attorney's fees; and

4) All such other and further relief, either at law or in equity, to which Schnucks is entitled.

Dated November 7, 2013

Respectfully submitted,

By: */s/ Kevin F. Hormuth*
Kevin F. Hormuth, No. 48165 MO
David P. Niemeier, No. 50969 MO
GREENSFELDER, HEMKER & GALE, PC
10 South Broadway, Suite 2000
St. Louis, MO  63102
kfh@greensfelder.com
dpn@greensfelder.com
Telephone: 314.241.9090
Facsimile: 314.345.5466

Daniel R. Warren (*pro hac forthcoming*)
dwarren@bakerlaw.com
Telephone: 216.861.7145
Facsimile: 216.696.0740

Theodore J. Kobus III (*pro hac forthcoming*)
Telephone: 212.589.4200
Facsimile: 212.589.4201
Email: tkobus@bakerlaw.com

Craig A. Hoffman (*pro hac forthcoming*)
cahoffman@bakerlaw.com
Telephone:  513.929.3491
Facsimile:  513.929.0303