UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SCHNUCK MARKETS, INC., : | |
| : | |
| Plaintiff, : | |
| : | Case No.  4:13-CV-2226-JAR |
| v. : | |
| : | The Honorable John A. Ross |
| FIRST DATA MERCHANT DATA : | |
| SERVICES CORP., and : | |
| CITICORP PAYMENT SERVICES, INC., : | |
| : | |
| Defendants. : | |

**ANSWER OF DEFENDANTS FIRST DATA MERCHANT
SERVICES CORP. AND CITICORP PAYMENT SERVICES,
INC. WITH AFFIRMATIVE DEFENSES AND COUNTERCLAIM**

Defendants, First Data Merchant Services Corp. ("First Data") and Citicorp Payment Services, Inc. ("Citicorp") (collectively, "Defendants"), by and through undersigned counsel, submit this answer to the complaint filed by plaintiff, Schnuck Markets, Inc. ("Schnucks"), and assert the following affirmative defenses and counterclaim:

**ANSWER**

**NATURE OF THE CASE**

1.      Admitted in part; denied in part.  Upon information and belief, Defendants admit that, in late 2012 through early 2013, Schnucks experienced a cyber-attack on its payment card processing system that compromised certain of its customers' debit and credit card information. Defendants deny the remaining allegations in paragraph 1 of the complaint.

2.      Admitted in part; denied in part.  Defendants admit that a Reserve Account was established.  Defendants deny the remaining allegations in paragraph 1 of the complaint.

3.  Admitted in part; denied in part. Defendants admit that an agreement between the parties contains a limitation of liability clause. Defendants deny that they have wrongfully withheld any payments due to Schnucks. Defendants further deny that they have breached the agreement with Schnucks. By way of further response, the remaining allegations in paragraph 3 of the complaint characterize the terms of the Master Services Agreement (including the Bankcard Addendum) (collectively, the "MSA") and, as such, are denied. The MSA is a writing which should be referred to for its contents.

4.  Denied.

5.  Admitted in part; denied in part. Defendants admit that Schnucks filed a breach of contract claim against them, and that Schnucks seeks a declaratory judgment with respect to liability under the MSA. Defendants deny the remaining allegations in paragraph 5 of the complaint including, but not limited to, that Schuncks is entitled to such relief.

**PARTIES**

6.  Denied. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 6, and therefore deny such allegations.

7.  Admitted in part; denied in part. Defendants admit that First Data is in the business of, among other things, processing credit and debit card transactions for merchants. Defendants deny the remaining allegations in paragraph 7 of the complaint.

8.  Admitted in part; denied in part. Defendants admit that Citicorp is a corporation organized and existing under the law of the State of Delaware. Defendants deny the remaining allegations set forth in paragraph 8 of the complaint.

## JURISDICTION AND VENUE

9. Admitted in part; denied in part. Defendants admit that Schnucks alleges damages in excess of $75,000. Defendants deny that Schnucks is entitled to such relief.

10. Admitted in part; denied in part. Defendants admit that the Agreement contains a choice of venue provision which provides that a legal action or proceeding with respect to the Agreement should be brought in either a state court in St. Louis County, Missouri, or in the United States District Court for the Eastern District of Missouri. The remaining allegations in paragraph 10 of the complaint are conclusions of law to which no response is required. To the extent a response is required, the remaining allegations in paragraph 10 of the complaint are denied.

11. Admitted in part; denied in part. Defendants admit they engaged in good faith discussions to attempt to resolve this dispute, and that the discussions were unsuccessful. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation that Schnucks' participation in those discussions was in good faith, and on that basis deny this allegation.

## FACTS

*Schnucks' Merchant Processing Relationships*

12. Denied as stated.

13. Denied. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 13, and therefore deny such allegations.

14. Denied. The allegations in paragraph 14 of the complaint characterize the terms of the Visa and MasterCard networks' operating regulations, as well as agreements between

acquiring banks and merchants. These documents are writings which should be referred to for their contents. By way of further response, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 14, and therefore deny such allegations.

15. Denied. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 15, and therefore deny such allegations.

16. Admitted in part; denied in part. Defendants admit that, in October 2011, Schnucks and First Data entered into a Master Services Agreement, and that Schnucks, First Data, and Citicorp entered into a Merchant Services Bankcard Addendum. Defendants further admit that, consistent with the parties' course of conduct, the financial terms of these documents are confidential. By way of further response, the remaining allegations in paragraph 16 of the complaint characterize the terms of the MSA and, as such, are denied. The MSA is a writing which should be referred to for its contents.

17. Admitted.

18. Admitted in part; denied in part. Defendants admit that the Agreement contains an indemnification provision. By way of further response, the remaining allegations in paragraph 18 of the complaint characterize the terms of the MSA and, as such, are denied. The MSA is a writing which should be referred to for its contents.

19. Admitted in part; denied in part. Defendants admit that the Agreement permits Defendants to hold in reserve funds otherwise owed to Schnucks. By way of further response, the remaining allegations in paragraph 19 of the complaint characterize the terms of the MSA and, as such, are denied. The MSA is a writing which should be referred to for its contents.

20. Admitted in part; denied in part. Defendants admit that the Agreement contains a limitation of liability provision. By way of further response, the allegations in paragraph 20 of the complaint characterize the terms of the MSA and, as such, are denied. The MSA is a writing which should be referred to for its contents.

21. Denied. By way of further response, the allegations in paragraph 21 of the complaint paraphrase and take out of context certain words and phrases contained in the MSA. As such, Defendants specifically deny Schnucks' mischaracterization of the MSA.

22. Denied. By way of further response, the allegations in paragraph 22 of the complaint paraphrase and take out of context certain words and phrases contained in the MSA. As such, Defendants specifically deny Schnucks' mischaracterization of the MSA.

23. Denied. By way of further response, the allegations in paragraph 23 of the complaint paraphrase and take out of context certain words and phrases contained in the MSA. As such, Defendants specifically deny Schnucks' mischaracterization of the MSA.

*The Cyber-Attack Against Schnucks*

24. Denied. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 24, and therefore deny such allegations.

25. Denied. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 25, and therefore deny such allegations.

26. Denied. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 26, and therefore deny such allegations.

5

*Card Network Assessments*

27. Denied as stated.

28. Admitted in part; denied in part. Defendants admit that, in July 2013, Defendants received a letter from MasterCard. The remaining allegations in paragraph 28 of the complaint characterize the terms of a letter from MasterCard to Citicorp and, as such, are denied. The letter is a writing which should be referred to for its contents.

29. Denied as stated.

30. Denied as stated.

31. Admitted in part; denied in part. Defendants admit that a Reserve Account was established. Defendants deny the remaining allegations in paragraph 31 of the complaint.

32. Denied.

33. Denied. The allegations in paragraph 33 of the complaint characterize the terms of the MSA and, as such, are denied. The MSA is a writing which should be referred to for its contents. By way of further response, Defendants specifically deny that the Reserve Account exceeds the amount of any current and anticipated fees or fines from the Networks.

## CLAIMS FOR RELIEF/CAUSES OF ACTION

### COUNT I
### (Breach of Contract)

34. Defendants incorporate by reference their answers to paragraphs 1 through 33 above as if fully set forth herein.

35. Admitted.

36. Admitted in part; denied in part. Defendants admit that MasterCard has invoiced Defendants for certain financial responsibilities as a result of Schnucks' cyber-attack and

Defendants anticipate that Visa will do the same. Defendants deny the remaining allegations in paragraph 36 of the complaint.

37.     Denied. The allegations in paragraph 37 of the complaint are conclusions of law to which no response is required. To the extent a response is required, the allegations in paragraph 37 of the complaint are denied.

38.     Denied. The allegations in paragraph 38 of the complaint are conclusions of law to which no response is required. To the extent a response is required, the allegations in paragraph 38 of the complaint are denied.

39.     Denied. The allegations in paragraph 39 of the complaint are conclusions of law to which no response is required. To the extent a response is required, the allegations in paragraph 39 of the complaint are denied.

## COUNT II
### (Declaratory Judgment)

40.     Defendants incorporate by reference their responses to paragraphs 1 through 39 above as if fully set forth herein.

41.     Denied. The allegations in paragraph 41 of the complaint are conclusions of law to which no response is required. To the extent a response is required, the allegations in paragraph 41 of the complaint are denied.

42.     Admitted in part; denied in part. Defendants admit only that a Reserve Account was established. Defendants deny the remaining allegations in paragraph 42 of the complaint.

43.     Denied. The allegations in paragraph 43 of the complaint are conclusions of law to which no response is required. To the extent a response is required, the allegations in paragraph 43 of the complaint are denied.

44. Denied. The allegations in paragraph 44 of the complaint are conclusions of law to which no response is required. To the extent a response is required, the allegations in paragraph 44 of the complaint are denied.

45. Denied. The allegations in paragraph 45 of the complaint are conclusions of law to which no response is required. To the extent a response is required, the allegations in paragraph 45 of the complaint are denied.

## ADDITIONAL AND/OR AFFIRMATIVE DEFENSES

By way of further answer and affirmative defense to the complaint, Defendants assert the following additional and/or affirmative defenses:

### First Defense

Some or all of Schnucks' claims are not ripe for adjudication.

### Second Defense

Schnucks has failed to state a claim upon which relief can be granted.

### Third Defense

Schnucks' claims are barred, in whole or in part, because they result from Defendants' proper exercise of their rights under the MSA.

### Fourth Defense

Schnucks' claims are barred, in whole or in part, by the terms of the MSA.

### Fifth Defense

Schnucks' claims are barred, in whole or in part, by the doctrines of mistake, both unilateral and mutual.

### Sixth Defense

Schnucks' claims are barred, in whole or in part, by the doctrine of unclean hands.

### Seventh Defense

Schnucks' claims are barred, in whole or in part, by the doctrine of avoidable consequences.

### Eighth Defense

Schnucks' damages, if any, were caused by parties other than Defendants.

### Ninth Defense

Schnucks' damages, if any, were caused by its own actions or inaction.

### Tenth Defense

Schnucks' claims are barred, in whole or in part, by its own comparative and/or contributory negligence.

### Eleventh Defense

Defendants reserve the right to assert such additional and/or affirmative defenses as may be uncovered, whether in discovery or otherwise.

### COUNTERCLAIM

For its counterclaim against plaintiff/counterclaim defendant, Schnuck Markets Inc. ("Schnucks"), defendants/counterclaim plaintiffs, First Data Merchant Services Corp. ("First Data") and Citicorp Payment Services, Inc. ("Citicorp") (collectively, "Defendants"), through their undersigned attorneys, states as follows:

### The Parties

1.  First Data is a corporation organized under the laws of the State of Florida with a principal place of business located at 5565 Glenridge Connector NE, Suite 2000, Atlanta, Georgia 30342.

2. First Data is in the business of, among other things, processing credit and debit card transactions for merchants.

3. Citicorp is a corporation organized under the laws of the State of Delaware with a principal place of business located in Illinois.

4. Citicorp partners with First Data to provide certain credit and debit card processing services to merchants.

### **The MSA**

5. In or about October 2011, First Data and Schnucks entered into a Master Services Agreement (the "Master Services Agreement") under which First Data agreed to provide certain credit and debit card processing services for Schnucks. A redacted copy of the Master Services Agreement is attached as Exhibit "A."[1]

6. In connection with the Master Services Agreement, First Data, Schnucks and Citicorp entered into a Bankcard Addendum to the Master Services Agreement (the "Bankcard Addendum"). A redacted copy of the Bankcard Addendum is attached as Exhibit "B."[2]

7. The Bankcard Addendum provides that the terms of the Master Services Agreement are incorporated into the Bankcard Addendum and that Citicorp, First Data and Schnucks agree to be bound by the terms of the Master Services Agreement. *See* Exhibit B at ¶ 2.

---

[1] Consistent with Local Rule 5-2.17, Defendants redacted certain personal data identifiers from the Master Services Agreement (Exhibit A). Contemporaneous with this filing, Defendants also filed a motion to file under seal an unredacted copy of the Master Services Agreement.

[2] Consistent with the parties' agreement to keep sensitive financial and pricing information confidential, Defendants redacted such information from the Bankcard Addendum (Exhibit B). Contemporaneous with this filing, Defendants also filed a motion to file under seal an unredacted copy of the Bankcard Addendum.

8.      The Bankcard Addendum also incorporates the Program Terms and Conditions (Operating Procedures) (the "Operating Procedures").[3]  *Id.*  A true and correct copy of the Operating Procedures is attached as Exhibit "C."

9.      Section 13.3 of the Bankcard Addendum, in part, provides that Schnucks "shall at all times be responsible for, payment for all fees and charges (including increases [sic] additions, or modification made thereto), without limitation, of any Credit Card Association [MasterCard and Visa], Network, card-issuing organization, telecommunications provider, federal, state or local governmental authority (each a 'Third Party') including, without limitation any switch fee, issuer, reimbursement fee, adjustment fee, interchange fee, assessment fee or access fee, (collectively, 'Third Party Fees')."  *See* Exhibit B at § 13.3.

10.     Section 13.5 of the Bankcard Addendum states that Schnucks "agrees to pay SERVICERS [Citicorp and First Data] any fines, fees, or penalties imposed on SERVICERS by any Association [MasterCard and Visa], resulting from Chargebacks and any other fines, fees or penalties imposed by an Association with respect to negligent acts or omissions of CUSTOMER [Schnucks]."  *Id.* at § 13.5.

11.     Section 25 of the Bankcard Addendum states:

. . .CUSTOMER is required to follow the Operating Procedures and comply with Association Rules as they may each be amended from time to time.  The Association may impose different compliance requirements on different types and levels of customers.  The Association may impose restrictions, fines, or prohibit CUSTOMER from participating in Association programs if it is determined CUSTOMER is non-compliant with data security such programs.  CUSTOMER understands that it must be in compliance with data security regulations for its type or level of customer as defined by the Associations security procedures as well as comply with general security procedures.

---

[3]     Defendants refer to the Master Services Agreement, the Bankcard Addendum and the Operating Procedures collectively as the "MSA".

*Id.* at § 25.

12.     Section 25 of the Bankcard Addendum provides that ". . .CUSTOMER [Schnucks] understands and acknowledges that it is solely the responsibility of CUSTOMER to maintain compliance with all Association PCI Data Security procedures and regulations, and to pay any and all fines levied by the applicable Association for its non-compliance . . . ." *Id.*

13.     Section 4.9 of the Operating Procedures, in part, provide:

> If you or a Merchant Provider (or other Person used by you) are determined by any Card Organization, regardless of any forensic analysis or report, to be the likely source of any loss, disclosure, theft or compromise of Cardholder data or Card transaction information, or caused Cardholder data to be put at risk (together, 'Compromised Data Events') and regardless of your belief that you have complied with the Card Organization Rules or any other security precautions and are not responsible for the Compromised Data Event, <u>*you must promptly pay us for all related expenses, claims, assessments, fines, losses, costs and penalties and Issuer reimbursements imposed by the Card Organizations against us*</u> (together, 'Data Compromise Losses').

*See* Exhibit C at § 4.9 (emphasis added).

14.     Likewise, Section 10.2 of the Operating Procedures, in part, state:

> We may also debit your Settlement Account or your settlement funds in the event we are required to pay Card Organization fees, charges, fines, penalties or other assessments as a consequence of your sales activities. Such debits shall not be subject to any limitations of time specified elsewhere in the Agreement, including, without limitation, the following . . . Card Organization fees, charges, fines, penalties, registration fees, or other assessments including any fines levied against us or any amount for which you are obligated to indemnify us.

*Id.* at § 10.2.

15.     Section 5.4 of the Master Services Agreement provides:

> Limitation of Liability.  NOTWITHSTANDING ANYTHING IN THIS MSA AND ANY ADDENDA TO THE CONTRARY, CUSTOMER, FDMS AND ITS AFFILIATES' CUMULATIVE LIABILITY, IN THE

> AGGREGATE (INCLUSIVE OF ANY AND ALL CLAIMS MADE BY CUSTOMER, FDMS AND/OR ITS AFFILIATES, WHETHER RELATED OR UNRELATED) FOR ALL LOSSES, CLAIMS, SUITS CONTROVERSIES, BREACHES, OR DAMAGES FOR ANY CAUSE WHATSOEVER (INCLUDING, BUT NOT LIMITED TO, THOSE ARISING OUT OF OR RELATED TO THIS MSA AND ANY ADDENDA) AND REGARDLESS OF THE FORM OR ACTION OR LEGAL THEORY SHALL NOT EXCEED $500,000. NOTWITHSTANDING THE FOREGOING, CUSTOMER FDMS AND ITS AFFILIATES' CUMULATIVE LIABILITY FOR ITS BREACH UNDER SECTION 25 (DATA SECURITY) SHALL NOT EXCEED $3,000,000. FOR PURPOSES OF CLARIFICATION, EITHER PARTY CUMULATIVE TOTAL UNDER THIS CONTRACT SHALL NOT EXCEED $3,500,000. *THIS SECTION 5.4 LIMITATION OF LIABILITY SHALL NOT APPLY TO CUSTOMER'S LIABILITY FOR CHARGEBACKS, SERVICERS' FEES, THIRD PARTY FEES, AND FEES, FINES OR PENALTIES BY THE ASSOCIATION OR ANY OTHER CARD OR DEBIT CARD PROVIDED UNDER THIS MSA OR ANY ADDENDA.*

*See* Exhibit A at § 5.4 (emphasis added).

### Schnucks Experiences Cyber-Attack

16. In March 2013, Defendants were notified by MasterCard Worldwide ("MasterCard") and Visa that Schnucks may have experienced a cyber-attack on its payment card processing system (the "Attack").

17. On July 17, 2013, Defendants received a letter from MasterCard regarding the Attack (the "July 17, 2013 Letter").

18. The July 17, 2013 Letter stated the amount of financial responsibility that MasterCard assessed as a result of the Attack.

19. Based, in part, upon the amount of MasterCard's assessment, First Data projected the amount of Visa's assessment.

20. Defendants established a Reserve Account to cover the actual and anticipated financial responsibility invoiced by MasterCard and Visa as a result of the Attack.

## COUNT I
### *Declaratory Judgment*

21.     Defendants incorporate paragraphs 1 through ___ as if fully set forth herein.

22.     Section 5.4 of the Master Services Agreement provides that the "limitation of liability" of that Section does not apply to Schnucks' liability for " . . . SERVICERS' FEES, THIRD PARTY FEES, AND FEES, FINES OR PENALTIES BY THE ASSOCIATION OR ANY OTHER CARD OR DEBIT CARD PROVIDED UNDER THIS MSA OR ANY ADDENDA." *See* Exhibit A at § 5.4.

23.     As such, the limitation of liability set forth in Section 5.4 of the Master Services Agreement does not apply to: (i) fees charged by MasterCard or Visa to Defendants as a result of a cyber-attack experienced by a merchant including, but not limited to, servicers' fees, third-party fees, fees related to ADC Operational Reimbursement and ADC Fraud Recovery; and/or (ii) fees, fines or penalties charged by Visa or MasterCard for a merchant's failure to comply with the Payment Card Industry Data Security (PCIDSS) requirements.

24.      A justiciable controversy that presents a real, substantial, presently-existing controversy exists between Defendants and Schnucks with respect to the applicability of Section 5.4 of the Master Services Agreement.

25.     Defendants have a legally protectable interest at stake, consisting of a pecuniary or personal interest directly at issue and subject to immediate or prospective consequential relief;

26.     This controversy is ripe for judicial determination.

27.     There is no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, defendants/counterclaim plaintiffs, First Data Merchant Services Corp. and Citicorp Payment Services, Inc., respectfully request judgment in their favor and against plaintiff/counterclaim defendant, Schnuck Markets, Inc.:

(1) Issuing a declaratory judgment stating that the limitation of liability set forth in Section 5.4 of the Master Services Agreement does not apply to: (i) fees charged by MasterCard or Visa to Defendants as a result of a cyber-attack experienced by a merchant including, but not limited to, servicers' fees, third-party fees, fees related to ADC Operational Reimbursement and ADC Fraud Recovery; and/or (ii) fees, fines or penalties charged by Visa or MasterCard for a merchant's failure to comply with the Payment Card Industry Data Security (PCIDSS) requirements;

(2) Awarding Defendants their attorneys' fees; and

(3) Such other relief as the Court deems just and proper.

        WILLIAMS VENKER & SANDERS LLC

        By: */s/ Patrick I. Chavez*
        Lucy T. Unger, 36848MO
        Patrick I. Chavez, 47732MO
        Bank of America Tower
        100 North Broadway, 21st Floor
        St. Louis, Missouri 63102
        314/345-5000
        314/345-5055 (FAX)
        lunger@wvslaw.com
        pchavez@wvslaw.com

        ATTORNEYS FOR DEFENDANTS/COUNTERCLAIM PLAINTIFFS FIRST DATA MERCHANT SERVICES CORP. AND CITICORP PAYMENT SERVICES, INC.

Dated: January 21, 2014

## **CERTIFICATE OF SERVICE**

I certify that on this 21st day of January 2014, the foregoing was electronically filed with the Clerk of the Eastern District of Missouri, using the CM/ECF system, to be served by operation of the Court's electronic filing system upon all counsel of record.

                                                   */s/ Patrick I. Chavez*