# EXHIBIT "A"

## MASTER SERVICES AGREEMENT

| SCHNUCK MARKETS, INC. | | SCHNUCK MARKETS, INC. | |
|---|---|---|---|
| Customer's Legal Name | | Doing Business As | |
| 11420 Lackland Road | St. Louis | MO | 63146 |
| Street Address | City | State | Zip Code |
| CORPORATION | | ▇▇▇▇▇▇▇ | |
| Specify Whether Customer is (circle one) a Corporation, Partnership, Sole Proprietorship, Non-Profit or Other Type of Entity | | Taxpayer Identification Number | |
| ▇▇▇▇▇▇▇ | | ▇▇▇▇▇▇▇ | |
| Recipient/Title For Notices | | Facsimile Number | |

This Master Services Agreement ("MSA") is among the CUSTOMER identified above and FIRST DATA MERCHANT SERVICES CORPORATION ("FDMS") and/or its affiliates (collectively, "PROVIDER") for the Services identified below:

The intent of this MSA is to provide one set of standardized "Terms and Conditions" to be utilized for multiple relationships within the United States between CUSTOMER and PROVIDER. All services provided by PROVIDER ("Services") will be identified as individual addenda to this MSA ("Addendum") with specific operational specifications and associated pricing. These Addenda will be subject to the Terms and Conditions of this MSA unless the applicable Addendum specifically states that additional and/or other terms and conditions apply.

In consideration of the mutual covenants and agreements set forth herein and other good and valid consideration, the receipt and sufficiency of which are hereby acknowledged, PROVIDER and CUSTOMER agree as follows:

1. **Services.** Provider shall provide the Services to Customer hereunder, which Services are more fully described in the attached Service Agreements: **BANKCARD ADDENDUM TO THE MASTER SERVICES AGREEMENT**, which is attached hereto and incorporated herein by reference.

2. **Term.** This MSA and any Addenda attached hereto shall be in effect upon signing by of each document by all parties and shall remain effective through the initial term of five (5) years. This MSA and any Addenda hereto shall automatically renew for successive one (1) year terms until terminated by the parties upon ninety (90) days notice prior to the end of the then existing term. This MSA shall be effective until all Addenda are terminated. **Upon its full execution, this MSA and subsequent Bankcard Addendum shall replace and supersede, in its entirety, the Service Agreement between Customer and Concord dated March 23, 1987.**

3. **Financial and Other Information.**
    3.1 (a) In the event that an Event of Default, as defined in the Bankcard Addendum or any other Addenda to this MSA, has occurred or (b) PROVIDER, in its discretion believes that an Event of Default may have occurred, CUSTOMER agrees to provide PROVIDER quarterly financial statements of CUSTOMER within sixty (60) days after the end of each fiscal quarter and annual audited financial statements within one-hundred twenty (120) days after the end of each fiscal year. Such financial statements shall be prepared in accordance with generally accepted accounting principles. Notwithstanding any of the foregoing, in the event that financial statements are requested as a result of PROVIDER's belief that an Event of Default may have occurred, CUSTOMER may elect to provide credit references, bank references or other information that it believes will evidence that an Event of Default, indeed, has not occurred. If, upon review of such information, PROVIDER still believes that an Event of Default may have occurred, PROVIDER may, once again, request the financial statements of CUSTOMER and, in the event that CUSTOMER fails to provide such financial statements, such action shall be considered to be a Termination Event, as defined in Section 21.11 of the Bankcard Addendum to this MSA or under any similar section of any other Addenda to this Agreement, and PROVIDER or SERVICERS (as defined in the Bankcard Addendum to this MSA) or such other

party, as applicable, may take such actions as permissible in such Bankcard Addendum or other addenda. Any financial statements that CUSTOMER provides pursuant to this Section 3.1 shall be provided in the form of an on-site financial audit by PROVIDER. Such financial audits shall be conducted during CUSTOMER's normal business hours and in a manner to not unreasonably interfere with CUSTOMER's day to day operations. The parties shall cooperate in determining the actual timing of the financial audits and PROVIDER shall give CUSTOMER at least fourteen (14) days prior notice of its desire and intent to conduct a financial audit pursuant to subsections (a) or (b) above. When performing such audit, PROVIDER must view such financial statements in a secure location at a CUSTOMER facility, PROVIDER shall not copy or note in writing or electronically any terms or figures from such financials statements, and shall not take any financial statements from such secure location. In addition, in the event that PROVIDER conducts such on-site financial audit pursuant to sub-section (b), and as a result of such audit determines that an Event of Default has not in fact occurred, PROVIDER shall have no ongoing right to CUSTOMER's financial statements unless a separate event triggers subsections (a) or (b) above.

CUSTOMER authorizes PROVIDER to obtain from third parties publicly available credit information or a Dunn and Bradstreet report relating to CUSTOMER in connection with PROVIDER's determination whether to accept this Agreement and PROVIDER's continuing evaluation of the financial and credit status of CUSTOMER. Upon request, CUSTOMER shall provide to PROVIDER or their representatives reasonable access to CUSTOMER's facilities and records for the purpose of performing any inspection and/or copying of CUSTOMER's books and/or records related to the Card transactions contemplated in the Bankcard Addendum to this MSA.

3.2 CUSTOMER will provide PROVIDER with written notice of CUSTOMER's liquidation or substantial change in the basic nature of its business, transference or sale of any substantial part (25% or more in value) of its total assets, or, if CUSTOMER or its parent is not a corporation whose shares are listed on a national securities exchange or on the over-the-counter market, change in the control or ownership of CUSTOMER or its parent, within –forty-five (45) days after such liquidation, change transference or sale has taken place. CUSTOMER will also notify PROVIDER of any judgment, writ, warrant of attachment, execution or levy against any substantial part (25% or more in value) of CUSTOMER's total assets not later than three days after CUSTOMER obtains knowledge of any such judgment, writ, warrant of attachment, execution or levy. This section shall not be construed to require notice in the event that CUSTOMER's assets or shares are transferred or allocated among the Schnuck Family for succession purposes, estate planning purposes or otherwise, and the foregoing events shall not be considered a change in control or ownership under this Agreement.

4. **Indemnification.**
    4.1 CUSTOMER agrees to indemnify and hold harmless PROVIDER, its affiliates, agents, subcontractors, employees directors and officers from and against all losses, liabilities, damages and expenses (including attorneys' fees and collection costs) resulting from any breach of any warranty, covenant, provision of this MSA or any Addenda or any material misrepresentation by CUSTOMER under this MSA or any Addenda hereto.
    4.2 PROVIDER agrees to indemnify and hold harmless CUSTOMER, its affiliates, agents, subcontractors, employees, directors and officers from and against all losses, liabilities, damages and expenses (including attorneys' fees and collection costs) resulting from: (i) any breach of any warranty, covenant, provision of this MSA; (ii) any Addenda or any material misrepresentation by PROVIDER under this MSA or any Addenda hereto; or (iii) any allegation that the Services or any other process, deliverable, Equipment, or Software (collectively or individually, "Intellectual Property") provided by PROVIDER under this MSA, any Addenda hereto (including an Equipment Lease or Purchase Agreement), or CUSTOMER's use thereof, infringes or misappropriates the copyright, patent, trade secret, trademarks or other intellectual property right or interest of any person (the "Intellectual Property Right") except to the extent that such allegation arises from (a) CUSTOMER's use of the Intellectual Property other than in compliance with this MSA and any documentation regarding the Intellectual Property ("Documentation") supplied by PROVIDER, (b) CUSTOMER's use of the Intellectual Property in combination with other software, equipment, systems, services, processes, components or

elements not specifically authorized by PROVIDER as indicated in the Documentation, if the infringement or misappropriation would not have occurred but for such use or combination.

4.3 In the event of any legal action or claim with any third parties concerning any transaction or event in which a claim for indemnification against a party may be made under this Agreement or any Addenda, the party to be indemnified hereunder (the "indemnified party") agrees to: (a) promptly notify the party indemnifying hereunder (the "indemnifying party") of the legal action or claim, (b) reasonably cooperate with the indemnifying party in the making of claims or defenses, and (c) provide information, assist in the resolution of the legal action or claim and make available at least one employee or agent who can testify regarding said claim or defenses. The indemnifying party shall, upon written notice from the indemnified party, immediately undertake the defense of any said legal action or claim with counsel reasonably satisfactory to the indemnified party. In any event the indemnifying party shall be entitled to direct the defense and settlement thereof with counsel reasonably satisfactory to the indemnified party; provided, however, that the indemnifying party shall not compromise or settle any claim or action affecting the indemnified party to the extent that it involves more than the payment of money by the indemnifying party hereunder without the indemnified party's written consent.

5. **Warranty; Exclusion of Consequential Damages; Limitation on Liability**

   5.1 **Warranty.** PROVIDER represents and warrants that all Services can and shall be provided in a good and workmanlike manner and in accordance with the standards recognized in the payment card processing industry.

   5.2 **Disclaimer of Warranties.** THIS MSA AND ANY ADDENDA IS AN AGREEMENT FOR SERVICES AND EXCEPT AS EXPRESSLY PROVIDED IN THIS MSA AND ANY ADDENDA, FDMS AND ITS AFFILIATES DISCLAIM ALL REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, MADE TO CUSTOMER OR ANY OTHER PERSON, INCLUDING WITHOUT LIMITATION, ANY WARRANTIES REGARDING QUALITY, SUITABILITY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, NONINFRINGEMENT OR OTHERWISE (REGARDLESS OF ANY COURSE OF DEALING, CUSTOM OR USAGE OF TRADE) OF ANY SERVICES OR ANY GOODS PROVIDED INCIDENTAL TO THE SERVICES PROVIDED UNDER THIS AGREEMENT.

   5.3 **Exclusion of Consequential Damages.** NOTWITHSTANDING ANYTHING IN THIS MSA AND ANY ADDENDA TO THE CONTRARY, IN NO EVENT SHALL EITHER PARTY OR ITS AFFILIATES BE LIABLE UNDER ANY THEORY OF TORT, CONTRACT, STRICT LIABILITY OR OTHER LEGAL THEORY FOR LOST PROFITS, LOST REVENUES, LOST BUSINESS OPPORTUNITIES, EXEMPLARY, PUNITIVE, SPECIAL, INCIDENTAL, INDIRECT OR CONSEQUENTIAL DAMAGES, EACH OF WHICH IS HEREBY EXCLUDED BY AGREEMENT OF THE PARTIES, REGARDLESS OF WHETHER SUCH DAMAGES WERE FORESEEABLE OR WHETHER ANY PARTY OR ANY ENTITY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

   5.4 **Limitation of Liability.** NOTWITHSTANDING ANYTHING IN THIS MSA AND ANY ADDENDA TO THE CONTRARY, CUSTOMER, FDMS AND ITS AFFILIATES' CUMULATIVE LIABILITY, IN THE AGGREGATE (INCLUSIVE OF ANY AND ALL CLAIMS MADE BY CUSTOMER, FDMS AND/OR ITS AFFILIATES, WHETHER RELATED OR UNLRELATED) FOR ALL LOSSES, CLAIMS, SUITS, CONTROVERSIES, BREACHES, OR DAMAGES FOR ANY CAUSE WHATSOEVER (INCLUDING, BUT NOT LIMITED TO, THOSE ARISING OUT OF OR RELATED TO THIS MSA AND ANY ADDENDA) AND REGARDLESS OF THE FORM OF ACTION OR LEGAL THEORY SHALL NOT EXCEED $500,000. NOTWITHSTANDING THE FOREGOING, CUSTOMER, FDMS AND ITS AFFILIATES' CUMULATIVE LIABILTY FOR ITS BREACH UNDER SECTION 25 (DATA SECURITY) SHALL NOT EXCEED $3,000,000. FOR PURPOSES OF CLARIFICATION, EITHER PARTY CUMMULATIVE TOTAL UNDER THIS CONTRACT SHALL NOT EXCEED $3,500,000. THIS SECTION 5.4 LIMITATION OF LIABILITY SHALL NOT APPLY TO CUSTOMER'S LIABILITY FOR CHARGEBACKS, SERVICERS' FEES, THIRD PARTY FEES, AND FEES, FINES OR PENALTIES BY THE ASSOCIATION OR ANY OTHER CARD OR DEBIT CARD PROVIDED UNDER THIS MSA OR ANY ADDENDA.

6. **Independent Contractor; Third Party Beneficiaries.** The parties are independent contractors. Neither party shall have any authority to bind the other. Nothing in this Agreement shall constitute or be

construed as the creation of an agency, employment, partnership or joint venture between PROVIDER and CUSTOMER. This MSA and any Addenda is entered into solely for the benefit of PROVIDER and CUSTOMER and will not confer any rights upon any person not expressly a party to this MSA and any Addenda, including consumers. PROVIDER may subcontract with others to provide Services; provided that PROVIDER shall remain responsible for and liable for the performance of any subcontractor pursuant to the terms of this Agreement.

7. **Publicity.** Neither party will initiate publicity relating to this MSA and any Addenda without the prior written approval of the other, except that: (i) either party may make disclosures required by legal, accounting or regulatory requirements.

8. **Exclusivity.** During this MSA term: (i) PROVIDER will be the sole and exclusive provider of Services to CUSTOMER; and (ii) CUSTOMER will not, directly or indirectly, offer or promote any other Services.

9. **Compliance with Laws.** In performing its obligations under this MSA and any Addenda, the parties agree to comply with all federal and state laws, rules and regulations applicable to it for the Services provided for hereunder.

10. **Assignment.** Neither party may assign its rights or delegate its obligations under this MSA and any Addenda without the other's prior written consent, which will not be unreasonably withheld. PROVIDER may, however, assign any or all of its rights or delegate any or all of its obligations to an affiliate or an entity acquiring all or substantially all of the assets of PROVIDER. In the event of an assignment by CUSTOMER without PROVIDER's prior written consent, the provisions of Section 20.1 of the Bankcard Addendum will apply. Notwithstanding anything in this paragraph to the contrary, in the event that CUSTOMER's assets or shares are transferred or allocated among the Schnuck Family for succession purposes, estate planning purposes or otherwise, it shall not be considered an assignment under this Agreement

11. **Choice of Law and Venue.** This MSA and any Addenda shall be governed by and construed in accordance with the laws of the State of Missouri without regard to its choice of law provisions. The parties will attempt in good faith to resolve any controversy or claim arising out of or relating to this Agreement through discussions between the respective PROVIDER and CUSTOMER executives responsible for this Agreement. If these discussions are unsuccessful, the parties agree that any legal action or proceeding with respect to this Agreement (including any tort claims) will be brought either in the state court of St. Louis County, Missouri or the Federal District Court of the United States of America for the Eastern District of Missouri and by execution and delivery of this Agreement, each party hereby consents to the jurisdiction of the aforesaid courts solely for the purpose of adjudicating its rights with respect to this Agreement or by document related thereto.

12. **Waiver of Jury Trial.** ALL PARTIES IRREVOCABLY WAIVE ANY AND ALL RIGHTS THEY MAY HAVE TO A TRIAL BY JURY IN ANY JUDICIAL PROCEEDING INVOLVING ANY CLAIM RELATING TO OR ARISING UNDER THIS MSA AND ANY ADDENDA.

13. **Force Majeure.** Neither party shall be held responsible for any delays in or failure or suspension of service caused, directly or indirectly, by any cause beyond its reasonable control, including mechanical or power failure, failure, delay or error in clearing or processing a transaction through the ACH Network or Federal Reserve system, if applicable, the nonperformance, delay or error by a third party or in any other third party system for any similar cause beyond the reasonable control of such party, including without limitation, failures or fluctuations in telecommunications, any outbreak or escalation of hostilities, war, riots, terrorism or civil disorders in any country; strikes, labor difficulties, fire, earthquake, fire, flood, elements of nature or other acts of God, any act or omission of the other party or any government authority.

14. **Notices.** Except as otherwise specifically provided, all notices and other communications required or permitted hereunder (other than those involving normal operational matters relating to the Services) shall be in writing, shall be sent by mail, courier or facsimile (facsimile notices shall be confirmed in writing by a facsimile confirmation), if to Customer at the address appearing on the first page of this MSA, with a copy to Attention: General Counsel at the same address and if to PROVIDER at the following address: First

Data Merchant Services, 1307 Walt Whitman Road, Melville, New York 11747, Facsimile (631) 683-7516, Attention: Executive Vice President Operations, with a copy to Attention: General Counsel's Office, 6200 S. Quebec St., Suite 260-A, Greenwood Village, Colorado 80111, and shall be deemed to have been given (i) if sent by mail or courier, when received, and (ii) if sent by facsimile machine, when the confirmation copy is actually received. Notice given in any other manner shall be effective when actually received.

**15. Headings.** The headings contained in this MSA and any Addenda are for convenience of reference only and shall not in any way affect the meaning or construction of any provision of this MSA and any Addenda.

**16. Severability.** The parties intend every provision of this MSA and any Addenda to be severable. If any part of this MSA and any Addenda is not enforceable, the remaining provisions shall remain valid and enforceable. In such case, the parties will in good faith modify or substitute a provision consistent with their original intent. If any remedy fails of its essential purpose, then all other provisions, including the limitations on liability and exclusion of damages, will remain fully effective.

**17. Entire Agreement; Amendment; Waiver.** This MSA and any Addenda hereto constitute the entire agreement between the parties with respect to the subject matter thereof, and supersedes any previous agreements and understandings. A party's waiver of a breach of any term or condition of this MSA and any Addenda shall not be deemed a waiver of any subsequent breach of the same or another term or condition. Purchase orders, requests for production, pre-printed terms or other CUSTOMER-generated documents that PROVIDER may receive are for administrative convenience only and do not modify this MSA and any Addenda and are expressly rejected by PROVIDER. No amendment of this Agreement, including any Exhibits hereto, shall be effective unless reduced to writing signed by both parties. The words "including", "include" and "includes" will each be deemed to be followed by the term "without limitation". This MSA and any Addenda may be executed in counterparts, each of which will be deemed an original for all purposes, but all of which when taken together will constitute one agreement.

The parties hereto have caused this MSA and any Addenda to be executed by their duly authorized officers. **THIS MSA AND ANY ADDENDA IS NOT BINDING UPON PROVIDER UNTIL SIGNED BY PROVIDER.**

| SCHNUCK MARKETS, INC. ("CUSTOMER") | FIRST DATA MERCHANT SERVICES CORPORATION ("FDMS") |
|---|---|
| By: _[signature]_ | By: _[signature]_ |
| Name: _Scott C. Schnuck_ (Please Print or Type) | Name: _PAVL CWALINA_ (Please Print or Type) |
| Title: _Chairman and C.E.O._ | Title: _SVP_ |
| Date: _October 6, 2011_ | Date: _10-10-11_ |