# EXHIBIT "C"





Citi Merchant Services
Provided by First Data Merchant Services Corporation

# Operating Procedures

# TABLE OF CONTENTS

## PART I: CARD SERVICES

### A. Operating Procedures

1. MasterCard, Visa and Discover Network Acceptance . . . . . . . . . . . . . 3
   1.1. Card Descriptions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   1.2. Effective/Expiration Dates . . . . . . . . . . . . . . . . . . . . . . . . . 3
   1.3. Valid Signature . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   1.4. Users Other Than Cardholders . . . . . . . . . . . . . . . . . . . . . . . . 4
   1.5. Special Terms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
   1.6. Delayed Delivery or Deposit Balance. . . . . . . . . . . . . . . . . . . . 4
   1.7. Recurring Transaction and Preauthorized Order Regulations. . . . 4
   1.8. Certain Rules and Requirements . . . . . . . . . . . . . . . . . . . . . . . 4
   1.9. Card Acceptance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   1.10. Deposits of Principals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   1.11. Merchants in the Lodging Industry . . . . . . . . . . . . . . . . . . . . . 5
   1.12. Customer Activated Terminals and Self-Service Terminals . . . . . . 5
   1.13. Displays and Advertising . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   1.14. Cash Payments by and Cash Disbursements to Cardholders . . . . 5
   1.15. Discover Network Cash Over Transactions. . . . . . . . . . . . . . . . . 5
   1.16. Telecommunication Transactions. . . . . . . . . . . . . . . . . . . . . . . 5
2. Suspect Transactions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
3. Completion of Sales Drafts and Credit Drafts . . . . . . . . . . . . . . . . . 6
   3.1. Information Required. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   3.2. Mail/Telephone/Internet (Ecommerce) and Other
        Card Not Present Sales. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   3.3. Customer Service Telephone Numbers for Cards
        Other Than MasterCard, Visa and Discover Network. . . . . . . . . . 7
4. Data Security . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   4.1. Payment Card Industry Data Security Standards (PCI DSS). . . . . 7
   4.2. Data Security Requirements. . . . . . . . . . . . . . . . . . . . . . . . . . 7
   4.3. Compliance Audits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   4.4. Immediate Notice Required . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   4.5. Investigation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   4.6. Required Information for Discover Network Security Breaches . . 7
   4.7. Merchant Providers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
   4.8. Noncompliance Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
   4.9. Costs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
5. Authorizations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
   5.1. Card Not Present Transactions . . . . . . . . . . . . . . . . . . . . . . . . 8
   5.2. Authorization via Telephone
        (Other Than Terminal/Electronic Device Users) . . . . . . . . . . . . 8
   5.3. Authorization via Electronic Devices. . . . . . . . . . . . . . . . . . . . . 8
   5.4. Third Party Authorization System. . . . . . . . . . . . . . . . . . . . . . . 9
   5.5. Automated Dispensing Machines . . . . . . . . . . . . . . . . . . . . . . 9
   5.6. Pre-Authorization for T&E (Travel & Entertainment)
        and Restaurant Merchants . . . . . . . . . . . . . . . . . . . . . . . . . . 9
   5.7. Discover Network Procedure for Request for Cancellation of
        Authorization . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
   5.8. Partial Authorization and Authorization Reversal. . . . . . . . . . . . 9
6. Submission/Deposit of Sales Drafts and Credit Drafts . . . . . . . . . . . 9
   6.1. Submission of Sales for Merchants Other Than Your Business. . . 9
   6.2. Timeliness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
   6.3. Mail/Branch Deposit Procedures. . . . . . . . . . . . . . . . . . . . . . . 9
   6.4. Electronic Merchants: Daily Batching Requirements
        & Media Submission . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
7. Settlement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
8. Refunds/Exchanges (Credits) . . . . . . . . . . . . . . . . . . . . . . . . . . 10
   8.1. Refunds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
   8.2. Exchanges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
9. Retention of Records for Retrievals and Chargebacks. . . . . . . . . . . . 10
   9.1. Retain Legible Copies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
   9.2. Provide Sales and Credit Drafts . . . . . . . . . . . . . . . . . . . . . . . 10
   9.3. Ensure Proper Retrieval Fulfillment . . . . . . . . . . . . . . . . . . . . 10
10. Chargebacks, Retrievals and Other Debits. . . . . . . . . . . . . . . . . . . 10
    10.1. Chargebacks. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    10.2. Other Debits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    10.3. Summary (Deposit) Adjustments/Electronic Rejects . . . . . . . . 13
    10.4. Disputing Other Debits and Summary Adjustments. . . . . . . . . 13
11. Account Maintenance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    11.1. Change of Settlement Account Number . . . . . . . . . . . . . . . . . 13
    11.2. Change in Your Legal Name or Structure . . . . . . . . . . . . . . . . 13
    11.3. Change in Company DBA Name, Address or
          Telephone/Facsimile Number . . . . . . . . . . . . . . . . . . . . . . . 13
    11.4. Other Changes in Merchant Profile. . . . . . . . . . . . . . . . . . . . 13
    11.5 Charges for Changes to Account Maintenance . . . . . . . . . . . . 13
12. Card Organization Monitoring. . . . . . . . . . . . . . . . . . . . . . . . . . . 13
13. Supplies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
14. Glossary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# PART I: CARD SERVICES

## A. OPERATING PROCEDURES

The Operating Procedures describe the procedures and methods for submitting Credit Card transactions for payment, obtaining authorizations, responding to Chargebacks and Media Retrieval requests, and other aspects of the operations of our services. You are required to comply with these Operating Procedures as part of your Merchant Processing Agreement.

Processor is a full-service financial transaction processor dedicated, among other processing services, to facilitating the passage of your Sales Drafts back to the thousands of institutions who issue the MasterCard,® Visa,® and Discover® Network Cards carried by your customers, as well as to the independent Issuers of American Express,® Optima® and JCB.® The Operating Procedures contained in this part focus primarily on certain of the MasterCard, Visa, and Discover Network Card Organizations Rules, and seek to provide you with the principles for a sound Card program; however, you should consult the Card Organization Rules for complete information and to ensure full compliance with them. They are designed to help you decrease your Chargeback liability and train your employees. (In the event we provide authorization, processing or settlement of transactions involving Cards other than MasterCard, Visa and Discover Network, you should also consult those independent Issuers' proprietary rules and regulations.)

The requirements set forth in these Operating Procedures will apply unless prohibited by law. You are responsible for following any additional or conflicting requirements imposed by your state or local jurisdiction.

## 1. MasterCard, Visa and Discover Network Acceptance

**1.1.    Card Descriptions.** At the point of sale, the Card must be carefully examined to determine whether it is a legitimate and valid Card. The name of the Card (e.g., Visa, MasterCard or Discover Network) should appear in bold letters on the Card. For all MasterCard and Visa Cards and for some Discover Network Cards, the Issuer (e.g., XYZ Bank, etc.) should also appear in bold letters on the Card. The following is a description of the authorized Visa, MasterCard and Discover Network Card designs:

Visa: Visa Cards have the Visa symbol on the right-hand side of the Card. Above the Visa symbol is the 3-dimensional hologram of the Visa Dove design. The expiration date must be followed by one space and may contain the symbol "V." Visa Cards contain a 16-digit account number embossed across the middle of the Cards and the first digit is always a four (4). In addition, Visa Cards have the first four digits of the account number printed directly below the embossed number. You must always check these numbers carefully to ensure that they are the same. Beginning January 2006, Visa has a new Card design which differs significantly from the previous description. You are required to familiarize yourself with the new design by consulting the document entitled "Card Acceptance and Charge-back Management Guidelines for Visa Merchants" (VRM 08. 12.16). You may download the document free of charge from Visa's website at http://www.visa.com/merchant or order a hardcopy to be mailed to you for a nominal charge by telephoning Visa Fulfillment at 800-VISA-311. Both the old and new Visa Card designs will be circulating concurrently in the marketplace through the year 2010. Only Visa Cards fitting the old or new descriptions may be accepted.

Beginning May 2008, Visa issued a new card design for un-embossed Visa cards. Unlike embossed Visa cards with raised numbers, letters and symbols, the un-embossed card has a smooth, flat surface. Because of the un-embossed cards flat surface, it cannot be used for transactions that require a card imprint. Un-embossed cards can only be used by merchants who process with an electronic Point Of Sale Terminal. As a result, the bottom of the card bears the following note, "Electronic Use Only."

MasterCard: MasterCard Cards are issued under the following names: MasterCard, EuroCard, Access, Union, Million and Diamond. The MasterCard symbol appears on the front or back of the Card. MasterCard and the Globe designs appear in a 3-dimensional hologram above the symbol. In addition, the words Classic, Preferred, Gold or Business may appear. MasterCard account numbers are sixteen (16) digits, and the first digit is always a five (5). The first four digits of the account number be printed directly below the embossed number. Only MasterCard Cards fitting this description may be accepted. Pursuant to an alliance with MasterCard, Diners Club Cards issued in the United States and Canada are being re-issued with a sixteen (16) digit account number the first two digits of which are now fifty-five (55) and with the MasterCard Mark and hologram on the front of the Diners Club Card. These Diners Club Cards shall be accepted and processed in the same manner as MasterCard transactions. Diners Club International Cards that are issued outside the U.S. and Canada may be re-issued with the MasterCard Mark on the back of the Card. These Diners Club Cards will have account numbers that are fourteen (14) digits, the first two digits of which are thirty-six (36). When these Diners Club Cards are used within the United States, Canada and other designated areas, they will be processed as MasterCard transactions. Beginning January 2006, MasterCard has a new Card design significantly different from the previous description. You are required to familiarize yourself with the new design by consulting a document "MasterCard Card Identification Features." You may download the document free of charge from MasterCard's website at http://www.mastercardmerchant.com. Both the old and new MasterCard Card designs will be circulating concurrently in the marketplace through the year 2010. Only MasterCard Cards fitting the old or new descriptions may be accepted.

Discover Network: All valid standard rectangular plastic Cards bearing the Discover Network Acceptance Mark or the Discover/NOVUS Acceptance Mark, as indicated below, include the following common characteristics and distinctive features.

- Card Numbers comprising at least 16 digits are displayed on the front of the Card.
- Card Numbers are clear and uniform in size and spacing within groupings.
- Expiration date, if present, appears in mm/yy format and indicates the last month in which the Card is valid.
- **Cards manufactured before October 3, 2008** display the Discover Network three-dimensional hologram, bearing a distinct circular shape and images of a globe pierced by an arrow, water, and stars on a repetitive pattern background (the "Discover Network Hologram") on the front of the Card.
- The Discover Network Hologram reflects light and appears to move as the Card is rotated.
- All Cards display a magnetic stripe on the reverse side of the Card. **Cards manufactured on or after October 3, 2008** feature a three-dimensional holographic design that is incorporated into the magnetic stripe. A series of distinct circular images will be visible across the length of the magnetic stripe, with blue glows between each shape. When the Card is rotated, the holographic design will reflect light and there will be apparent movement and color switching within the circular shape.
- Cards displaying either the Discover Network Hologram or the holographic magnetic stripe are valid after the effective dates indicated above, with the Discover Network Hologram eventually replaced by the holographic magnetic stripe for new Cards. Although both the Discover Network Hologram and the holographic magnetic stripe will each appear on Cards, valid Cards will not display both designs.
- Depending on the issuance date of the Card, the word "DISCOVER" or "DISCOVER NETWORK" will appear in ultraviolet ink on the front of the Card when it is held under an ultraviolet light.
- An underprint of "void" on the signature panel becomes visible if erasure of the signature is attempted.
- The Card Number or the portion of the Card Number displayed on the signature panel on the back of the Card should match the number displayed on the front of the Card and appear in reverse indent printing.
- **CID must be printed in a separate box to the right of the signature panel** on the back of the Card.
- An overprint on the signature panel reads "Discover Network." On some cards, the overprint may display the name of the Card (i.e., Discover, Discover 2GO,® Discover Platinum).
- A Discover Network Zip Indicator may appear on the back of a standard rectangular plastic Card indicating the Card can be used to conduct Contactless Card Transactions.

**NOTE:** Valid Cards may not always be rectangular in shape (e.g., Discover 2GO® Cards) and certain valid Contactless Payment Devices approved by us for use in accessing Card Accounts (e.g., radio frequency (RF) enabled Cards, key fobs, and Mobile Commerce Devices) and to conduct Contactless Card Transactions may not display the features described above.

**Prepaid Gift Card Security Features**

The features described below are found on Prepaid Gift Cards; however, the placement of these features may vary:

- Depending on the issue date of the Card, the Discover Network Acceptance Mark or the Discover/NOVUS Acceptance Mark will appear on the front or back of the Card.
- The embossed, stylized "D" appears on the front of the Card.
- A valid expiration date is embossed on the front of the Card.
- The front of the Card may display "Temporary Card," "Prepaid Card," "Gift Card," or "Electronic Use Only," must be printed on the front or the back of the Card.

**NOTE:** Prepaid Gift Cards accepted at a limited, specific list of Merchants are not required to include the Discover Network Hologram and may, but are not required to, bear the Discover Network Acceptance Mark or the Discover/NOVUS Acceptance Mark on the Card.

You are required to remain familiar with Discover Card designs and may reference the document "Discover Network Security Features." You may download the document free of charge from Discover Network's website at http://www.discovernetwork.com/fraudsecurity/fraud.html.

**1.2.    Effective/Expiration Dates.** At the point of sale, the Card should be carefully examined for the effective (valid from) (if present) and expiration (valid thru) dates which are located on the face of the Card. The sale date must fall on or between these dates. Do not accept a Card prior to the effective date or after the expiration date. If the Card has expired, you cannot accept it for a Card sale unless you have verified through your Authorization Center that the Card is in good standing, otherwise, you are subject to a Chargeback and could be debited for the transaction.

**1.3.    Valid Signature.** Check the back of the Card. Make sure that the signature panel has not been disfigured or tampered with in any fashion (an altered signature panel may appear discolored, glued or painted, or show erasure marks on the surface). The signature on the back of the Card must compare favorably with the signature on the Sales Draft. The

Sales Draft must be signed by the Card presenter in the presence of your authorized representative (unless a Card Not Present Sale) and in the same format as the signature panel on the Card; e.g., Harry E. Jones should not be signed H.E. Jones. The signature panels of Visa, MasterCard and Discover Network Cards now have a 3-digit number (CVV2/CVC2/CID) printed on the panel known as the Card Validation Code.

Visa, MasterCard and Discover Network: If the signature panel on the Card is blank, in addition to requesting an Authorization, you must do all the following:

- Review positive identification bearing the Cardholder's signature (such as a passport or driver's license that has not expired) to validate the Cardholder's identity.

- Indicate the positive identification, including any serial number and expiration date, on the Credit Draft or Sales Draft; provided that you must effect PAN Truncation, and must not include the expiration date on the copy of the Sales Draft or Credit Draft that you provide to the Cardholder, or as required by applicable law, the Sales Draft or Credit Draft you retain.

- Require the Cardholder to sign the signature panel of the Card prior to completing the Transaction.

**1.4.   Users Other Than Cardholders.** A Cardholder may not authorize another individual to use his/her Card for purchases. Be sure the signature on the Card matches with the one on the Sales Draft. Furthermore, any Card having two signatures on the back panel is invalid and any sale made with this Card can result in a Chargeback. For Cards bearing a photograph of the Cardholder, ensure that the Cardholder appears to be the person depicted in the picture which appears on the Card. If you have any questions, call the Voice Authorization Center and request to speak to a Code 10 operator.

**1.5.   Special Terms.** If you limit refund/exchange terms or impose other specific conditions for Card sales, the words "No Exchange, No Refund," etc. must be clearly printed (in 1/4" letters) on the Sales Draft near or above the Cardholder's signature. The Cardholder's copy, as well as your copy, must clearly show this information.

During a liquidation and/or closure of any of your outlets, locations and/or businesses, you must post signs clearly visible to customers stating that "All Sales Are Final," and stamp the Sales Draft with a notice that "All Sales Are Final."

Generally, do not give cash, check or in-store Credit refunds for Card sales. Visa allows for the following exclusions: A cash refund to the Cardholder for a small ticket transaction or a no signature required transaction, a cash refund, Credit, or other appropriate form of Credit to the recipient of a gift purchased as a Mail/Phone Order transaction, or a cash refund or in-store Credit for a Visa prepaid card transaction if the Cardholder states that the Visa prepaid card has been discarded. **NOTE:** A disclosure does not eliminate your liability for a Chargeback. Consumer protection laws and Card Organization Rules frequently allow the Cardholder to dispute these items notwithstanding such disclosures.

**1.6.   Delayed Delivery or Deposit Balance.** In a delayed delivery transaction where a Cardholder makes a deposit toward the full amount of the sale, you should execute two separate Sales Drafts (each completed fully as described in Section 3.1), the first for a deposit and the second for payment of the balance upon delivery of the merchandise and the performance of the services.

- Visa: For Visa transactions, you must obtain an authorization if the cumulative total of both Sales Drafts exceeds the floor limit. You must obtain an authorization for each Sales Draft on each transaction date. You must assign the separate authorization numbers to each Sales Draft, respectively. You must note on such Sales Drafts the words "delayed delivery," "deposit" or "balance," as appropriate, and the authorization dates and approval codes.

- MasterCard: For MasterCard transactions, you must obtain one authorization. You must note on both Sales Drafts the words "delayed delivery," "deposit" or "balance," as appropriate, and the authorization date and approval code.

- Discover Network: For Discover Network transactions, you must label one Sales Draft "deposit" and the other "balance," as appropriate. You must obtain the "deposit" authorization before submitting the sales data for the "deposit" or the "balance" to us. If delivery of the merchandise or service purchased will occur more than thirty (30) calendar days after the "deposit" authorization, you must obtain a subsequent authorization for the "balance." In addition, you must complete Address Verification at the time of the "balance" authorization, and you must obtain proof of delivery upon delivery of the services/merchandise purchased. You may not submit sales data relating to the "balance" to us for processing until the merchandise/service purchased has been completely delivered.

**NOTE:** For MasterCard and Visa transactions, if delivery is more than twenty-five (25) days after the original transaction date and the initial authorization request (as opposed to the thirty (30) days in Discover Network transactions), you should reauthorize the unprocessed portion of the transaction prior to delivery. If the transaction is declined, contact the Cardholder and request another form of payment. For example: On January 1, a Cardholder orders $2,200 worth of furniture and you receive an authorization for the full amount; however, only a $200 deposit is processed. The above procedures are followed, with a $2,000 balance remaining on the furniture; the $2,000 transaction balance should be reauthorized.

**1.7.   Recurring Transaction and Preauthorized Order Regulations.** If you process recurring transactions and charge a Cardholder's account periodically for recurring goods or services (e.g., monthly insurance premiums, yearly subscriptions, annual membership

fees, etc.), the Cardholder shall complete and deliver to you a Cardholder approval for such goods or services to be charged to his account. The approval must at least specify the Cardholder's name, address, account number and expiration date, the transaction amount, the timing or frequency of recurring charges and the duration of time for which the Cardholder's permission is granted. For Discover Network transactions, the approval must also include the total amount of recurring charges to be billed to the Cardholder's account, including taxes and tips and your Merchant Number.

If the recurring transaction is renewed, the Cardholder must complete and deliver to you a subsequent written request for the continuation of such goods or services to be charged to the Cardholder's account. You may not complete a recurring transaction after receiving a cancellation notice from the Cardholder or Issuer or after a request for authorization has been denied.

If we or you have terminated this Agreement, you may not submit authorization requests or sales data for recurring transactions that are due after the termination date of this Agreement.

You must obtain an authorization for each transaction and write "Recurring Transaction" (or "P.O." for MasterCard transactions) on the Sales Draft in lieu of the Cardholder's signature. A positive authorization response for one recurring transaction Card Sale is not a guarantee that any future recurring transaction authorization request will be approved or paid.

For all recurring transactions, you should submit the 3-digit Card Validation Code number with the first authorization request, but not subsequent authorization requests. Discover Network Card Organization Rules specifically require that you follow this Card Validation Code procedure for Discover Network recurring transactions.

Also, for Discover Network recurring transactions, the Sales Draft must include a general description of the transaction, your merchant name and a toll-free customer service number that the Cardholder may call to obtain customer assistance from you or to cancel the written approval for the recurring transaction.

All recurring transactions or preauthorized orders may not include partial payments for goods or services purchased in a single transaction.

You may not impose a finance charge in connection with a Recurring Transaction or Preauthorized Order.

If you process recurring payment transactions, the Recurring Payment Indicator must be included in each authorization request. Penalties can be assessed by the Card Organizations for failure to use the Recurring Payment Indicator.

**1.8.   Certain Rules and Requirements.** The following rules are requirements strictly enforced by Visa, MasterCard and Discover Network:

- You cannot establish minimum or maximum amounts as a condition for accepting a Card, except that for Discover Network transactions, you may limit the maximum amount a Discover Network Cardholder may spend if, and only if, you have not received a positive authorization response from the Issuer.

- You cannot impose a surcharge or fee for accepting a Card.

- You cannot establish any special conditions for accepting a Card.

- You cannot establish procedures that discourage, favor or discriminate against the use of any particular Card. However, you may choose not to accept either U.S. issued Debit Cards or U.S. issued Credit Cards under the terms described in Section 1.9.

- You cannot require the Cardholder to supply any personal information (e.g., home or business phone number; home or business address; or driver's license number) unless instructed by the Authorization Center. The exception to this is for a mail/telephone/Internet order or delivery-required transaction, and zip code for a card-present key-entered transaction in order to obtain an Address Verification. Any information that is supplied by the Cardholder must not be in plain view when mailed.

- Any tax required to be collected must be included in the total transaction amount and not collected in cash.

- You cannot submit any transaction representing the refinance or transfer of an existing Cardholder obligation deemed uncollectible.

- You cannot accept a Visa Consumer Credit Card or Commercial Visa Product, issued by a U.S. Issuer, to collect or refinance an existing debt.

- You cannot submit a transaction or sale that has been previously charged back.

- You must create a Sales Draft or Credit Draft for each Card transaction and deliver at least one copy of the Sales Draft or Credit Draft to the Cardholder.

- You cannot submit a transaction or sale to cover a dishonored check.

- If you accept Card checks, your Card check acceptance policy must treat the acceptance of checks from all payment card brands that you accept equally (e.g., if you accept MasterCard, Visa and Discover Network, your check acceptance policy must treat checks for all three payment card brands equally). You should handle these Card checks like any other personal check drawn upon a bank in the United States.

- Failure to comply with any of the Card Organization Rules may result in fines or penalties.

- You are required to notify the Cardholder that you are responsible for the Card transaction including your goods and services, any related customer service issues, dispute resolution and performance of the terms and conditions of the card transaction.

**1.9.  Card Acceptance.** If you have indicated either in the Application or by registering with us at least thirty (30) days in advance that, as between Non-PIN Debit Card transactions and Credit Card transactions, you will limit your acceptance to either (i) only accept Non-PIN Debit transactions; or (ii) only accept Credit Card transactions, then the following terms in this Section 1.9 will apply:

**1.9.1.** You will be authorized to refuse to accept for payment either Non-PIN Debit Cards or Credit Cards that are issued within the United States. You will, however, continue to be obligated to accept all foreign issued Credit Card or Debit Cards issued by MasterCard, Visa or Discover Network so long as you accept any type of MasterCard, Visa or Discover Network branded Card.

**1.9.2.** While many Debit Cards include markings indicating debit (such as "Visa Checkcard, Visa Buxx, Gift Card, DEBIT, or Mastermoney), many Debit Cards may not include any such markings. It will be your responsibility to determine at the point of sale whether a Card is of a type that you have indicated that you will accept. You agree to institute appropriate systems and controls to limit your acceptance to the Card types indicated. You may purchase a table of ranges of numbers currently associated with Debit Card transactions upon execution of confidentiality/non-disclosure agreements required by the Card Organizations. You will be responsible for updating your systems to utilize such tables and to obtain updated tables.

**1.9.3.** To the extent that you inadvertently or intentionally accept a transaction other than the type anticipated for your account, such transaction will downgrade to a higher cost interchange and you will be billed the difference in interchange (a Non-Qualified Interchange Fee), plus a Non-Qualified Surcharge (see your Agreement and Glossary).

**1.9.4.** Based upon your choice to accept only the Card types indicated in the application, you must remove from your premises any existing signage indicating that you accept all Visa, MasterCard or Discover Network cards and use approved specific signage reflecting your policy of accepting only Non-PIN Debit or Credit Cards.

**1.9.5.** Even if you elect not to accept Non-PIN Debit Card transactions as provided above, you may still accept PIN Debit Card transactions if you have signed up for PIN Debit Card Services. Certain debit networks require that you enter into an agreement with a sponsoring or acquiring bank. With regard to those networks, a separate agreement between you and Processor and a sponsoring or acquiring bank is required. Bank shall not be a party to any such PIN Debit Card Services agreement, and Bank shall not be liable to you in any way with respect to such services.

**1.10.  Deposits of Principals.** Owners, partners, officers and employees of your business establishment, and the guarantors who signed the Application, are prohibited from submitting Sales Drafts or Credit Drafts transacted on their own personal Cards, other than transactions arising from bona fide purchases of goods or services in the ordinary course of your business. Such use in violation of this Section 1.10 is deemed a cash advance, and cash advances are prohibited.

**1.11.  Merchants in the Lodging Industry.**

**1.11.1.  Generally.**  There are additional rules and requirements that apply to merchants in the lodging industry for practices including, but not limited to, Guaranteed Reservations and charges for no shows, advance deposits, overbookings, and priority checkout. If you are a merchant in the lodging industry, **you must contact us for these additional rules and requirements. Failure to do so could result in additional charges or termination of this Agreement.**

**1.11.2.  Lodging Service Programs.**  In the event you are a lodging merchant and wish to participate in Visa's and/or MasterCard's lodging services programs, please contact your sales representative or relationship manager for details and the appropriate MasterCard and Visa requirements.

**1.12.  Customer Activated Terminals and Self-Service Terminals.**  Prior to conducting Customer Activated Terminal ("CAT") transactions or Self-Service Terminal transactions **you must contact us for approval and further instructions, rules and requirements that apply to CAT and Self-Service Terminal transactions. Failure to do so could result in additional charges or termination of this Agreement.**

**1.13.  Displays and Advertising.** You must prominently display appropriate Visa, MasterCard, Discover Network and, if applicable, other Card Organization decals and program Marks at each of your locations, in catalogs, on websites and on other promotional materials as required by Card Organization Rules. You may not indicate that Visa, MasterCard, Discover Network or any other Card Organization endorses your goods or services.

Your right to use the program Marks of the Card Organizations terminates upon the earlier of (i) if and when your right to accept the Cards of the respective Card Organization terminates (e.g., if your right to accept Discover Network Cards terminates, you are no longer permitted to use Discover Network Program Marks), (ii) delivery of notice by us or the respective Card Organization to you of the termination of the right to use the Mark(s) for that Card Organization, or (iii) termination of the license to use the program Marks by the respective Card Organization to us.

**1.13.1.  Discover Network Sublicense to Use Discover Network Program Marks.** You are prohibited from using the Discover Network Program Marks, as defined below, other than as expressly authorized in writing by us. "Discover Network Program Marks" means the brands, emblems, trademarks and/or logos that identify Discover Network Cards, including, without limitation, Diners Club International Cards. Additionally, you shall not use the Discover Network Program Marks other than as a part of the display of decals, signage, advertising and other forms depicting the Discover Network Program Marks that are provided to you by us or otherwise approved in writing by us.

You may use the Discover Network Program Marks only to promote the services covered by the Discover Network Program Marks by using them on decals, indoor and outdoor signs, advertising materials and marketing materials; provided that all such uses by you must be approved in advance by us in writing.

You shall not use the Discover Network Program Marks in such a way that customers could believe that the products or services offered by you are sponsored or guaranteed by the owners of the Discover Network Program Marks. You recognize that you have no ownership rights in the Discover Network Program Marks. You shall not assign to any Person any of the rights to use the Program Marks.

**1.14.  Cash Payments by and Cash Disbursements to Cardholders.** You must not accept any direct payments from Cardholders for charges of merchandise or services which have been included on a Sales Draft; it is the right of the Issuer to receive such payments. You may not make any cash disbursements or cash advances to a Cardholder as part of a Card transaction unless you are a financial institution with express authorization in writing in advance from Servicers.

**1.15.  Discover Network Cash Over Transactions.** Cash Over transactions are not available for MasterCard or Visa transactions. You may issue Cash Over in connection with a Discover Network Card sale, provided that you comply with the provisions of this Agreement, including the following requirements:

- You must deliver to us a single authorization request for the aggregate total of the goods/services purchase amount and the Cash Over amount of the Card sale. You may not submit separate authorization requests for the purchase amount and the Cash Over amount.

- The Sales Draft must include both the purchase amount and the Cash Over amount, and you may not use separate Sales Drafts for the purchase amount and Cash Over amount.

- No minimum purchase is required for you to offer Cash Over to a Discover Network Cardholder, provided that some portion of the total Card sale must be attributable to the purchase of goods or services.

- The maximum amount of cash that you may issue as Cash Over is $100.00.

**(Cash Over may not be available in certain markets. Contact us for further information).**

**1.16.  Telecommunication Transactions.** Telecommunication Card Sales occur when a telephone service provider is paid directly using a Card for individual local or long-distance telephone calls. (**NOTE:** Pre-paid telephone service cards are not and do not give rise to Telecommunication Card Sales). **Prior to conducting Telecommunication transactions you must contact us for approval and further instructions, rules and requirements. Failure to do so could result in additional charges or termination of this Agreement.**

## 2. Suspect Transactions

If the appearance of the Card being presented or the behavior of the person presenting the Card is suspicious in nature, you must immediately call the Voice Authorization Center and ask to speak to a Code 10 operator. Answer all their questions and follow their instructions. While not proof that a transaction is fraudulent, the following are some suggestions to assist you in preventing fraudulent transactions that could result in a Chargeback:

**Ask yourself, does the Customer:**

- appear nervous/agitated/hurried?
- appear to be making indiscriminate purchases (e.g., does not care how much an item costs, the size, etc.)?
- make purchases substantially greater than your usual customer (e.g., your average transaction is $60, but this transaction is for $360)?
- insist on taking the merchandise immediately (e.g., no matter how difficult it is to handle, is not interested in free delivery, alterations, etc.)?
- appear to be purchasing an unusual amount of expensive items?
- take an unusual amount of time to sign the Sales Draft, or look at the back of the Card as he signs?
- talk fast or carry on a conversation to distract you from checking the signature?
- take the Card from a pocket instead of a wallet?
- repeatedly come back, in a short amount of time, to make additional purchases?
- cause an unusual, sudden increase in the number and average sales transactions over a one- to three-day period?
- tell you he has been having some problems with his Issuer and request that you call a number (that he provides) for a "special" handling or authorization?

**Does the Card:**

- have characters the same size, height, style and all within alignment?
- appear to be re-embossed (the original numbers or letters may be detected on the back of the Card)?
- have a damaged hologram?
- have a Magnetic Stripe on the back on the Card?
- have an altered signature panel (e.g., appear discolored, glued or painted, or show erasure marks on the surface)?
- have "valid from" (effective) and "valid thru" (expiration) dates consistent with the sale date

If you use an electronic terminal and swipe the Card, make sure the account number displayed on the terminal and/or the Sales Draft matches the number on the Card. If you cannot or do not verify the account number and accept the sale, you are subject to a Chargeback and could be debited for the amount of the transaction. IF THE NUMBERS DO NOT MATCH, DO NOT ACCEPT THE CARD AS A FORM OF PAYMENT, EVEN THOUGH AN AUTHORIZATION CODE FOR THE MAGNETICALLY SWIPED CARD NUMBER MAY BE RECEIVED.

**Fraud-Prone Merchandise Tips:**

- Jewelry, video, stereo, computer and camera equipment, shoes and men's clothing are typically fraud-prone because they can easily be resold.
- Be suspicious of high dollar amounts and transactions with more than one fraud-prone item, e.g., two VCRs, three gold chains, etc.

**If you suspect fraud:**

- Call the Voice Authorization Center and ask to speak to a Code 10 operator.
- If the terminal does not display the Card number, call the POS Help Desk for terminal assistance.

**REMEMBER: AN AUTHORIZATION CODE ONLY INDICATES THE AVAILABILITY OF A CARDHOLDER'S CREDIT AT THE TIME OF THE TRANSACTION. IT DOES NOT WARRANT THAT THE PERSON PRESENTING THE CARD IS THE RIGHTFUL CARDHOLDER. IF PROPER PROCEDURES ARE NOT FOLLOWED AT THE TIME OF THE TRANSACTION, YOU ARE SUBJECT TO A CHARGEBACK AND YOUR ACCOUNT MAY BE DEBITED FOR THE AMOUNT OF THE TRANSACTION.**

### 3. Completion of Sales Drafts and Credit Drafts

You must prepare a Sales Draft or Credit Draft, as applicable, for each Card transaction and provide a copy of it or a transaction receipt or copy of the Draft to the Cardholder at the time the Card transaction is completed.

**3.1.     Information Required.** All of the following information must be contained on a single page document constituting a Sales Draft:

- Cardholder's account number must appear on the Credit Draft or Sales Draft in the manner required by applicable law and Card Organization Rules. **NOTE: The copy of the Sales Draft or Credit Draft you provide to a Cardholder must not include the Cardholder's Card expiration date or any more than the last four digits of the Cardholder's Card number. Some states have similar requirements that also apply to the Sales Drafts or Credit Drafts you retain. MasterCard requires that Card expiration dates be excluded from the Sales Drafts or Credit Drafts your business retains. You are solely responsible to determine the Card account number truncation requirements and Card expiration date exclusion requirements for your state/jurisdiction;**
- Clear imprint of the Card. Whenever the term "imprint" is used it refers to the process of using a manual imprinting machine to make an impression of the Card on a Sales Draft; it does not include the printout from a printer attached to an electronic device. If you use an electronic device (e.g., authorization/draft capture terminal, cash register, POS Device, etc.) and swipe the Card to read and capture the Card information via the Magnetic Stripe, you do not have to imprint the Card. **HOWEVER, IF THE TERMINAL FAILS TO READ THE MAGNETIC STRIPE OR IF YOU ARE REQUIRED TO OBTAIN A VOICE AUTHORIZATION, THEN YOU MUST IMPRINT THE CARD. IN ADDITION, THE SALES DRAFT MUST HAVE THE CARDHOLDER'S SIGNATURE. FAILURE TO FOLLOW THESE PROCEDURES WILL PREVENT YOU FROM DEFENDING A TRANSACTION IN THE EVENT THAT IT IS CHARGED BACK UNDER A CLAIM THAT THE RIGHTFUL CARDHOLDER DID NOT AUTHORIZE THE PURCHASE. ENTERING INFORMATION INTO A TERMINAL MANUALLY WILL NOT PREVENT THIS TYPE OF CHARGEBACK. FOR MAIL, TELEPHONE, INTERNET AND OTHER CARD NOT PRESENT ORDERS see SECTION 3.2;**
- Cardholder's signature. However, eligible merchants participating in MasterCard's Quick Payment Service Program, Visa's Small Ticket and No Signature Programs, Discover Network's No Signature Program, and/or certain Discover Network transactions (see note below) are not required to obtain the Cardholder's signature under certain conditions set forth by each program;
- Date of the transaction;
- Amount of the transaction (including the approved currency of the sale);
- Description of the goods and/or services involved in the transaction (if there are too many items, combine them into one description; e.g., "clothing" instead of "one pair of pants, one shirt"). Do not carry information onto a second Sales Draft;
- Description of your merchandise return and Credit/refund policy;
- A valid authorization code; and
- Merchant's Doing Business As ("D/B/A") name and location (city and state required) and Merchant Account Number.

When imprinting Sales Drafts, do not alter the Cardholder account number, circle or underline any information on the Sales Draft or alter a Sales Draft in any way after the transaction has been completed and signed. Stray marks and other alterations on a Sales Draft may render it electronically unscannable, unreadable or illegible. This may result in a Chargeback or Summary Adjustment to your account.

For Discover Network sales using a paper Sales Draft (as opposed to Electronic Draft Capture), the paper Sales Draft must also contain the initials of your representative or employee that conducted the transaction. For Discover Network Credits, the Credit Draft must contain the signature of your authorized representative or employee that conducted the transaction.

Discover Card Sales in an amount more than $25.00 including sales taxes, tip, and/or Cash Over amount are not eligible for treatment as No Signature Required Card Sales and you may lose a dispute of such a Card Sale if the Merchant fails to obtain the Cardholder's Signature on the Sales Draft.

Eligible merchants participating in No Signature Program, Quick Payment Service and/or Small Ticket are only required to provide the Cardholder with the completed Sales Draft when requested by the Cardholder.

**NOTE:** For Discover Network transactions, if you are a merchant operating under certain merchant category codes approved by Discover Network, you are not required to obtain the Cardholder's signature so long as the full track data is transmitted in the authorization request and the sale amount is $25.00 or less.

**3.2.     Mail / Telephone / Internet (Ecommerce) Orders and Other Card Not Present Sales.** You may only engage in mail/telephone/Internet orders provided they do not exceed the percentage of your total payment Card volume reflected on your application. Failure to adhere to this requirement may result in cancellation of your Agreement. Merchants conducting Internet transactions using MasterCard or Visa Cards must have special codes (an "Electronic Commerce Indicator") added to their authorization and settlement records. Discover Network does not use an Electronic Commerce Indicator. Failure to register as a merchant conducting Internet transactions can result in fines imposed by the Card Organizations.

Mail, Telephone, Internet and other Card Not Present transactions have a substantially higher risk of Chargeback. Since you will not have an imprinted or magnetically swiped transaction and you will not have the Cardholder's signature on the Sales Draft as you would in a face-to-face transaction, you will assume all risk associated with accepting a mail/telephone/Internet or other Card Not Present transaction. The following procedures, while they will not eliminate Chargebacks, are useful in reducing them and should be followed by you:

- Obtain the expiration date of Card.
- On the Sales Draft, clearly print the Cardholder's account number; effective and expiration dates; date of transaction; description of the goods and services; amount of the transaction (including shipping, handling, insurance, etc.); Cardholder's name, billing address and shipping address; authorization code; and merchant's name and address (city and state required); provided, that you must effect PAN Truncation, and must not include the expiration date, on the copy of the Sales Daft or Credit Draft that you provide to the Cardholder, or as required by applicable law, the Sales Draft or Credit Draft you retain.
- For mail orders, write "MO"; for telephone orders, write "TO" on the Cardholder's signature line.
- If feasible, obtain and keep a copy of the Cardholder's signature on file on a form authorizing you to submit telephone and mail order transactions.
- You should utilize the Address Verification Service for all Card Not Present Transactions (see note below). Address Verification is specifically required for all Discover Network Card Not Present Transactions, and **if you do not receive a positive match through AVS, you may not process the Discover Network Card Not Present Transaction. If you do not have AVS, contact us immediately.**
- You should obtain the 3-digit Card Validation Code number and include it with each authorization request. Discover Network Card Organization Rules specifically require that you submit the Card Validation Code with the authorization request for all Discover Network Card Not Present Transactions.
- For telephone orders, it is recommended that written verification of the sale be requested from the Cardholder (sent by mail or fax).
- You may not submit a transaction for processing until after the merchandise has been shipped or the service has been provided to the customer. (The Card Organizations will permit the immediate billing of merchandise manufactured to the customer's specifications [i.e., special/custom orders] provided the Cardholder has been advised of the billing details.)
- You should provide a copy of the Sales Draft to the Cardholder at the time of delivery. You must also obtain proof of delivery of the goods or services to the address designated by the Cardholder (i.e., by getting a signature of the Cardholder or person designated by the Cardholder through the delivery carrier). If the Cardholder visits one of your locations to receive the goods or services purchased, obtain an imprint of the card and the Cardholder's signature.
- Notify the Cardholder of delivery time frames and special handling and/or cancellation policies. Merchandise shipping dates must be within seven (7) days of the date authorization was obtained. If, after the order has been taken, additional delays will be incurred (e.g., out of stock), notify the Cardholder and reauthorize the transaction.
- You may not require a Cardholder to complete a postcard or other document that displays the Cardholder's account number in clear view when mailed.

- If you accept orders via the Internet, your web site must include the following information in a prominent manner:
  - Complete description of the goods or services offered;
  - Description of your merchandise return and Credit/refund policy;
  - Customer service contact, including email address and/or telephone number;
  - Transaction currency (U.S. dollars, unless permission is otherwise received from Servicers);
  - Any applicable export or legal restrictions;
  - Delivery policy;
  - Consumer data privacy policy;
  - A description of the transaction security used on your website; and
  - The sale or disclosure of databases containing Cardholder account numbers, personal information, or other Card transaction information to third parties is prohibited.
- You may not accept Card Account Numbers through Electronic Mail over the Internet.

**NOTE:** Address Verification Service ("AVS") does not guarantee against Chargebacks, but used properly, it assists you in reducing the risk of fraud by confirming whether certain elements of the billing address provided by your customer match the billing address maintained by the Issuer. AVS also may help you avoid incurring additional interchange expenses. AVS is a separate process from obtaining an Authorization and will provide a separate response. A transaction may not match addresses when submitted for AVS and still receive an Authorization. It is your responsibility to monitor the AVS responses and use the information provided to avoid high-risk transactions.

**3.2.1.  Discover Network Protocol for Internet Transactions.** Each Internet Discover Network Card transaction accepted by you and submitted to us shall comply with Discover Network standards, including, without limitation, Discover Network standards governing the formatting, transmission and encryption of data, referred to as the "designated protocol." You shall accept only those Internet Discover Network Card transactions that are encrypted in accordance with the designated protocol. As of the date of these Operating Procedures, the designated protocol for the encryption of data is Secure Socket Layer (SSL). We may, at our discretion, withhold Settlement until security standards can be verified. However, the designated protocol, including any specifications with respect to data encryption, may change at any time upon thirty (30) days advance written notice. You shall not accept any Internet Discover Network Card transaction unless the transaction is sent by means of a browser which supports the designated protocol.

**3.3.  Customer Service Telephone Numbers** for Card types which are funded by individual non-bank Card Organizations include:

| | |
|---|---|
| American Express/Optima | 1-800-528-5200 |
| JCB, International | 1-800-366-4522 |
| TeleCheck | 1-800-366-1054 |
| Voyager | 1-800-987-6591 |
| WEX | 1-800-492-0669 (24 hours) |

## 4. Data Security

**THE FOLLOWING IS IMPORTANT INFORMATION REGARDING THE PROTECTION OF CARDHOLDER DATA. PLEASE REVIEW CAREFULLY AS FAILURE TO COMPLY CAN RESULT IN SUBSTANTIAL FINES AND LIABILITIES FOR UNAUTHORIZED DISCLOSURE AND TERMINATION OF THIS AGREEMENT.**

**4.1.  Payment Card Industry Data Security Standards (PCI DSS).** Visa, MasterCard, American Express, Discover Network and JCB aligned data security requirements to create a global standard for the protection of Cardholder data. The resulting Payment Card Industry Data Security Standards (PCI DSS) defines the requirements with which all entities that store, process, or transmit payment card data must comply. PCI DSS is the name used to identify those common data security requirements. The Cardholder Information Security Program (CISP) is Visa USA's data security program, the Site Data Protection (SDP) program is MasterCard's data security program and Discover Network Information Security and Compliance (DISC) is Discover Network's data security program, each based on the PCI DSS and industry aligned validation requirements. PCI DSS compliance validation is focused on Merchant Equipment (as defined below) where Cardholder data is retained, stored, or transmitted, including:

- All external connections into your network (i.e., employee remote access, third party access for processing, and maintenance);
- All connections to and from the authorization and settlement environment (i.e., connections for employee access or for devices such as firewalls, and routers); and
- Any data repository outside of the authorization and settlement environment.

For the purposes of this Section 4, "Merchant Equipment" means any and all equipment you use in connection with Card authorization, clearing, completing, settling, transmitting or other related processing, including, without limitation, all telecommunication lines and wireless connections and software, systems, point-of-sale terminals, card readers, merchandise and card scanners, printers, PIN pad devices and other hardware, whether owned by you, Merchant Providers or other Persons used by you.

The Card Organizations or we may impose fines or penalties, or restrict you from accepting Cards if it is determined that you are not compliant with the applicable data security requirements. We may in our sole discretion, suspend or terminate Services under this Agreement for any actual or suspected data security compromise. You agree that you

will not request any Authorizations, submit any Sales Drafts or Credit Drafts until you have read and understood the PCI DSS, CISP, SDP and DISC for which you acknowledge we have provided you sufficient information to obtain, and you will be deemed to have done so upon our receipt of your request or submission of any Authorizations, Sales Drafts or Credit Drafts.

You must comply with the data security requirements described in this Section 4.1, including, without limitation, PCI DSS, SDP, CISP and DISC, and any additional Card Organization requirements applicable to PIN transactions.

Detailed information about PCI DSS can be found at the PCI DSS Council's website: www.pcisecuritystandards.org.

Detailed information about Visa's CISP program can be found at Visa's CISP website: www.visa.com/cisp.

Detailed information about MasterCard's SDP program can be found at the MasterCard SDP website: www.mastercard.com/US/sdp/index.html.

Detailed information about DISC can be found at Discover Network's DISC website: http://www.discovernetwork.com/fraudsecurity/disc.html.

**4.2.  Data Security Requirements. You must comply with the data security requirements shown below:**

- You must install and maintain a secure network firewall to protect data across public networks.
- You must encrypt stored data and data sent across networks.
- You must use and regularly update anti-virus software and keep security patches up-to-date.
- You must restrict access to data by business "need to know," assign a unique ID to each person with computer access to data and track access to data by unique ID.
- Don't use vendor-supplied defaults for system passwords and other security parameters.
- You must regularly test security systems and processes.
- You must maintain a policy that addresses information security for employees and contractors.
- You must restrict physical access to Cardholder information.
- You may not transmit Cardholder account numbers to Cardholders for Internet transactions.
- You cannot store or retain Card Validation Codes (three-digit values printed in the signature panel of most Cards, and a four-digit code printed on the front of an American Express Card).
- You cannot store or retain Magnetic Stripe data, PIN data or AVS data. Only Cardholder account number, Cardholder Name and Cardholder expiration date can be retained subsequent to transaction authorization.
- You must destroy or purge all Media containing obsolete transaction data with Cardholder information.
- You must keep all systems and Media containing Card account, Cardholder, or transaction information (whether physical or electronic) in a secure manner so as to prevent access by, or disclosure to any unauthorized party.
- For Internet transactions, copies of the transaction records may be delivered to Cardholders in either electronic or paper format.
- You must use only services and Merchant Equipment that have been certified as PCI-DSS compliant by the Card Organizations.

**4.3.  Compliance Audits.** You may be subject to ongoing validation of your compliance with PCI DSS standards. Furthermore, we retain the right to conduct an audit at your expense, performed by us or a Person designated by us to verify your compliance, or that of your agents or Merchant Providers, with security procedures and these Operating Procedures.

**4.4.  Immediate Notice Required.** In the event that transaction data is known or suspected of having been accessed or retrieved by any unauthorized Person, you must contact us immediately, and in no event more than 24 hours after becoming aware of such activity.

**4.5.  Investigation.** You must, at your own expense (i) perform or cause to be performed an independent investigation, including a forensics analysis performed by a certified forensic vendor acceptable to us and the Card Organizations, of any data security breach of Card or transaction data, (ii) perform or cause to be performed any remedial actions recommended by any such investigation, and (iii) cooperate with us in the investigation and resolution of any security breach. Notwithstanding the foregoing, if required by a Card Organization, we will engage a forensic vendor approved by a Card Organization at your expense. You must cooperate with the forensic vendor so that it may immediately conduct an examination of Merchant Equipment, and your and Merchant Providers' procedures and records and issue a written report of its findings.

**4.6.  Required Information for Discover Network Security Breaches.** For security breaches involving Discover Network transactions and/or track data, you must provide us and/or Discover Network with the following information: (i) the date of breach; (ii) details concerning the data compromised (e.g., account numbers and expiration dates, Cardholder names and addresses, etc.); (iii) the method of such breach; (iv) your security personnel contacts; (v) the name of any person (including law enforcement) assisting you with your investigation of such breach; and (vi) any other information which we reasonably request from you concerning such breach, including forensics reports. You shall provide such infor-

mation as soon as practicable, and the items listed in (i)-(v) shall be provided to us in any event within 48 hours of your initial notification to us of the breach.

**4.7.    Merchant Providers.** The data security standards set forth in this Section 4 also apply to Merchant Providers. Before you engage any Merchant Provider, you must provide to us in writing (a) the Merchant Provider's legal name, (b) contact information, and (c) intended function. You acknowledge and agree that you will not use, or provide Cardholder data access to, any Merchant Provider until you receive our approval and, if required, confirmation of our registration of that Merchant Provider with applicable Card Organizations. You must ensure that you and Merchant Providers: (i) comply with the registration process which can involve site inspections, background investigations, provision of financial statements, and any other information required by a Card Organization; (ii) comply with the periodic and other reporting required by a Card Organization; and (iii) comply with all applicable Card Organization Rules, including without limitation, those requiring security of Cardholder data. You may allow Merchant Providers access to Cardholder data only for purposes authorized under and in conformance with the Card Organization Rules. You are responsible for all our costs and expenses associated with our review, approval, certification (and recertification as may required by us or the Card Organization Rules) and registration of any Merchant Providers.

Your use of the Services, equipment, software, systems, materials, supplies or resources of third parties regarding your Card transactions processing, including, without limitation, Merchant Providers and any third party lessors or licensors, will not affect your obligations under this Agreement to us which will apply to the same extent as if you had not used them. We have no liability or responsibility to you or others regarding these third parties, even if we referred them to you. These third parties are your agents, and you are solely responsible for (i) determining whether they can meet your needs and standards, (ii) their actions, inactions and compliance with the terms of this Agreement and the Card Organization Rules and (iii) any and all fees, costs, expenses and other obligations owed to them by you or owed by them to us or to Card Organizations.

**4.8.    Noncompliance Fees.** If we have not received receipt of your validation of compliance with your PCI DSS standards within the first 120 days of the date of the Agreement, you will be charged a monthly non-receipt of PCI Validation fee as set forth in the Application or as otherwise communicated to you, for the period beginning upon expiration of the 120 day period, until such time as you are compliant or this Agreement is terminated, whichever comes first. This monthly non-receipt of PCI Validation fee is in addition to any and all other fees for which you are responsible related to your failure to be compliant as required hereunder.

**4.9.    Costs.** If you or a Merchant Provider (or other Person used by you) are determined by any Card Organization, regardless of any forensic analysis or report, to be the likely source of any loss, disclosure, theft or compromise of Cardholder data or Card transaction information (together, **"Compromised Data Events"**) and regardless of your belief that you have complied with the Card Organization Rules or any other security precautions and are not responsible for the Compromised Data Event, you must promptly pay us for all related expenses, claims, assessments, fines, losses, costs, and penalties and Issuer reimbursements imposed by the Card Organizations against us (together, "Data Compromise Losses"). In addition to the foregoing, you must also pay us promptly for all expenses and claims made by Issuers against us alleging your responsibility for the Compromised Data Event, apart from any claim procedures administered by the Card Organizations.

## 5. Authorizations

Each authorization request you submit to us must fully comply with the applicable provisions of this Agreement. Submission of an authorization request that does not fully comply may result in assessment of additional fees to you, a declined authorization response or a Chargeback to you.

You must obtain an Authorization Approval Code from us (or a Person, as provided in Section 5.4) for all transactions. A positive authorization response for MasterCard remains valid for seven (7) days for electronic processed transactions. For true paper merchants for MasterCard and Visa transactions the Authorization remains valid for thirty (30) days. A positive authorization response for Discover Network transactions remains valid for ninety (90) days. Failure to settle within these timeframes may result in a late presentment Chargeback.

Failure to obtain an Authorization Approval Code for a sales transaction may result in a Chargeback and/or the termination of your Agreement. Authorization Approval Codes can be obtained through your POS Terminal or a Voice Response Unit ("VRU"). Any fees related to authorizations will be charged for a request for an Authorization Approval Code, whether or not the transaction is approved.

Do not attempt to obtain an Authorization Approval Code provided by someone other than us except as described in Section 5.4. If a Cardholder or another service provider provides you with either an authorization number or with a telephone number for obtaining authorizations, the Authorization Approval Code you receive may not be valid. Even if the transaction is initially processed and funded, it may be charged back at a later date. Also, if you receive a purported Authorization Approval Code from someone other than us, we will not have the supporting records and will be unable to verify that you received the authorization if that is later questioned in a Chargeback.

An Authorization Approval Code only indicates the availability of credit on an account at the time the authorization is requested. It does not warrant that the person presenting the Card is the rightful Cardholder, nor is it a promise or guarantee that you will not be subject to a Chargeback.

If you obtain Address Verification, you must review the AVS response separately from the authorization response and make your own decision about whether to accept the transaction. A transaction can receive an Authorization Approval Code from the Issuer even if AVS is unavailable or reflects that the address provided to you does not match the billing address on file at the Issuer. If the authorized Cardholder disputes such a transaction, you will be responsible for the resulting Chargeback.

If you receive a Referral response to an attempted authorization, you may not submit the transaction without calling for and receiving a voice authorization. After receiving a Referral response you may not attempt another authorization on the same Card through your POS Terminal.

If you fail to obtain an Authorization Approval Code or if you submit a Card transaction after receiving a decline (even if a subsequent authorization attempt results in an Authorization Approval Code), your transaction may result in a Chargeback and may be assessed fines or fees by the Card Organizations for which you will be responsible. These currently range from $25 to $150 per transaction. To avoid these costs and related Chargebacks, always obtain an Authorization Approval Code directly from your terminal before submitting a transaction for settlement.

For Cards other than MasterCard, Visa and Discover Network (e.g., American Express, etc.) or for check acceptance, you must follow the procedures for authorization and acceptance for each.

You may not attempt to obtain multiple authorizations for a single transaction. If a sale is declined, do not take alternative measures with the same Card to obtain an approval of the sale from other authorization sources. Instead, request another form of payment. If you accept and process a transaction that was declined, or attempt multi-transactions and/or multi-authorizations, you are subject to a Chargeback, Card Organization fines and/or cancellation of your Agreement.

**5.1.    Card Not Present Transactions.** You must obtain the 3-digit Card Validation Code (CVV2, CVC2, CID) and submit this Code with all authorization requests with respect to transactions where the Card is not present (e.g., telephone, mail or internet sales). However, for recurring transaction authorizations you should submit the Card Validation Code with the first authorization request only, and not with subsequent recurring transaction authorization requests. (See Section 1.7). **NOTE: For each Card Not Present Discover Network transaction, you must also verify the name and billing address of the Discover Network Cardholder using the Address Verification System (AVS), and if you do not receive a positive match, do not process the Discover Network Card Not Present transaction.**

**5.2.    Authorization via Telephone (Other Than Terminal/Electronic Device Users).**

• Call your designated voice authorization toll free number and enter the authorization information into the VRU using a touch tone phone or hold for an authorization representative.

• If advised to pick up a Card, use reasonable and peaceful means to do so, and do not take any action that will alarm or embarrass the Card presenter. You will bear all responsibility for claims, liabilities, costs and expenses as a result of any action by you, your employees, vendors or agents, that attempt to retain a Card without the Issuer's direct request or failure to use reasonable, lawful means in retaining or attempting to retain the Card. Forward the Card to: Attn: Rewards Department, P.O. Box 5019, Hagerstown, MD 21740. You may be paid a reward for the return of the Card.

• On occasion, the Authorization Center will ask you to obtain identification from the Cardholder before issuing an approval code. If you are instructed to do so, clearly write the appropriate identification source and numbers in the space provided on the Sales Draft unless otherwise prohibited by law.

• If the sale is declined, please remember that our operators are only relaying a message from the Issuer. The fact that a sale has been declined should not be interpreted as a reflection of the Cardholder's creditworthiness. The Cardholder should be instructed to call the Issuer.

**5.3.    Authorization via Electronic Devices.**

• If you use an electronic terminal to obtain an Authorization Approval Code, all sales should be authorized through this equipment. Authorizations through other methods will result in additional charges to you.

• If your terminal malfunctions, refer to your Quick Reference Guide, if necessary, or call the POS Help Desk. The problem will either be corrected promptly or may require terminal programming or replacement. During the period in which your terminal is not functioning, remember to check it periodically since most terminal problems are temporary in nature and are quickly corrected.

• If a terminal is moved or if wires are disconnected, causing malfunction, call the POS Help Desk immediately and follow their instructions. You may be responsible for any service charges incurred for reactivation of the terminal.

• Until the terminal becomes operable, you must call your designated voice authorization toll free number and enter authorization information into the VRU using a touchtone phone. During this time, each transaction must be imprinted using a manual Imprinter machine. Failure to obtain an Authorization Approval Code and to imprint these transactions could result in a Chargeback to your account.

**5.4.    Third Party Authorization System.** If you have contracted with another authorization network to obtain Credit Card authorization, i.e., your terminal can Split Dial, liability resulting from discrepancies with that network must be resolved between you and that network. We will not research Chargebacks resulting from Authorization Approval

Codes obtained from another authorization service organization. Such Chargebacks will be passed through to you for resolution. If an authorization provided by a third party authorization system is challenged in a Chargeback, you must obtain proof (e.g., third party authorization logs) from the authorization source and submit it to us within the time frame specified on the Chargeback documentation.

IF YOU CONTRACTED TO USE ONE OF OUR AUTHORIZATION SERVICES, DO NOT USE ANOTHER THIRD PARTY SYSTEM WITHOUT NOTIFYING CUSTOMER SERVICE. OTHERWISE, WE WILL BE UNABLE TO SUCCESSFULLY RESEARCH AND DEFEND ANY AUTHORIZATION RELATED CHARGEBACKS ON YOUR BEHALF. THIS DELAY WILL SIGNIFICANTLY DECREASE YOUR TIME TO RESEARCH AND PROVIDE PROOF OF AUTHORIZATION, THUS REDUCING YOUR OPPORTUNITY TO REVERSE A CHARGEBACK.

If you utilize another authorization network, you will be responsible for the downgrade of any transactions to a higher cost interchange that result from a mismatch of information to our systems and those of third party authorization networks (see your Agreement).

If you use a third party authorization network, you must also comply with Section 4.7.

**Call the following for other Card types:**

| | |
|---|---|
| American Express/Optima | 1-800-528-5200 |
| JCB, International | 1-800-522-9345 |
| TeleCheck | 1-800-366-5010 |
| Voyager | 1-800-987-6589 |
| WEX | 1-800-842-0071 |

**Available 24 hours/day; 7 days/week.**

All approved sales authorized in this manner must be entered manually as "post authorization" transactions into the terminal, once the terminal becomes operational. All Credit transactions must be entered into the terminal for data capture. You may be subject to a Chargeback if you receive a Referral and subsequently receive an approval. To reduce the risk of such a Chargeback, the Card should be imprinted using a manual Imprinter machine. (For specific procedures on Electronic Data Capture, refer to the Terminal Operating Instructions/Users Guide.) If the terminal malfunctions for more than twenty-four (24) hours, contact Customer Service for further instructions on processing your transactions.

**5.5.  Automated Dispensing Machines.** Records must be produced for all transactions whose origin and data capture are automated dispensing machines or Limited Amount Terminals. Records should include the Cardholder account number, merchant's name, terminal location, transaction date and amount.

**5.6.  Pre-Authorization for T&E (Travel & Entertainment) and Restaurant Merchants.** If you are a business engaged in providing travel and/or entertainment services (e.g., car rentals, hotels, motels, etc.) or a restaurant business, and engage in the practice of "pre-authorization" you must comply with the following general procedures:

- A hotel, motel, or car rental merchant may obtain an estimated Visa, MasterCard or Discover Network authorization at the time of check-in.

- Restaurants must not add an estimated tip amount to the authorization request beyond the value of the goods provided, or services rendered, plus any applicable tax.

- You must notify the Cardholder of the dollar amount you intend to "Pre-Authorize."

- If the customer decides to use another form of payment (e.g., cash, check, etc.) you must promptly call the Voice Authorization Response Unit to delete the authorization hold. Provide the Cardholder's account number, original dollar amount and date of the transaction, and the authorization code. If a new transaction takes place, a new imprinted and signed Sales Draft for the exact amount and a new authorization code for that amount must be obtained.

- **VEHICLE RENTAL PROVIDERS MAY NOT INCLUDE POTENTIAL VEHICLE DAMAGE OR INSURANCE DEDUCTIBLES IN ANY PREAUTHORIZATIONS.**

- If you receive a decline on a transaction, you must wait twenty-four (24) hours before attempting to reauthorize. If you reauthorize prior to this time frame and receive an approval, you may be subject to a Chargeback and a fine imposed by the Card Organizations.

- Hotels, motels, and car rental merchants are allowed up to a 15% variance above the amount authorized. If the final amount charged to the Cardholder exceeds the original estimate by more than 15% above the preauthorization, you must authorize any additional amounts, and all incremental authorization codes must be written in the authorization area along with the date of authorization and the amount authorized.

- Pre-Authorization for certain establishments, are allowed up to a 20% (instead of 15%) variance above the amount authorized. If the final amount exceeds the amount "pre-authorized" by more than 20%, you must authorize the additional amount. Estimating the Authorization amount to include a tip is prohibited. The authorization request should include only the amount associated with the bill presented to the consumer.

- You should obtain an authorization for the initial estimated charges and then monitor the charges to ensure that the actual charges made do not exceed the estimated charges. If the actual charges exceed the amount of the initial estimated authorization (and any subsequent estimated authorizations), then you must secure a positive authorization for the additional amount. **NOTE:** Subsequent authorizations should only be for the additional amount of total charges and not include amounts already authorized.

- The estimated amount of any pre-authorization for lodging accommodations must be based on (i) the intended length of stay; (ii) the room rate; (iii) applicable taxes and service charges; and (iv) any other miscellaneous charges as dictated by experience.

- If an authorization request is declined, no charges occurring after that date will be accepted for that Cardholder.

- You do not need to obtain a final authorization if the total sum of charges (the final amount) does not exceed 120% of the previously authorized charges. You must record the dates, authorized amounts, and their respective Authorization Approval Codes on the Sales Draft(s).

**5.7.  Discover Network Procedure for Request for Cancellation of Authorization.** If a Discover Network Card sale is cancelled or the amount of the transaction changes following your receipt of authorization for the sale, you must call your Authorization Center directly and request a cancellation of the authorization. An authorization may be cancelled at any time within fifteen (15) days of your receipt of the authorization, but must be cancelled before the sales data relating to the transaction is submitted to us, after which the authorization cannot be changed. For an authorization cancellation, you must provide us with the following information, in this order:

- The Discover Network Merchant Number used in the authorization;

- The Card number;

- The original amount of the authorization being cancelled;

- The new amount of the total transaction (if any);

- The original authorization code for the authorization being cancelled;

- The expiration date of the Card; and

- A brief reason for the authorization cancellation.

**5.8.  Partial Authorization and Authorization Reversal.** Partial authorization provides an alternative to a declined transaction by permitting an Issuer to return an authorization approval for a partial amount, an amount less than the transaction amount requested by the merchant when the available card balance is not sufficient to approve the transaction in full. The Cardholder is able to use up the remaining funds on the card and select another form of payment (i.e., another payment card, cash, check) for the remaining balance of the transaction. If you support partial authorizations, a partial authorization indicator must be included in each authorization request.

An authorization reversal must be submitted if the authorization is no longer needed, a partial amount of the total authorized is submitted for the settled transaction, or the Cardholder elects not to complete the purchase. The transaction sent for settlement must be no more than the amount approved in the partial authorization response. In the event that you wish to support the partial authorization functionality, you must contact Processor for additional rules and requirements.

## 6. Submission/Deposit of Sales Drafts and Credit Drafts

**6.1.  Submission of Sales for Merchants Other Than Your Business.** You may present for payment only valid charges that arise from a transaction between a bona fide Cardholder and your establishment. If you deposit or attempt to deposit transactions that arise from sales between Cardholders and a different business than the one approved by us in our Agreement with you, then the transaction may be charged back, we may suspend or debit funds associated with all such transactions, and we may immediately terminate your account and the Agreement.

**6.1.1.  Factoring.** Factoring is considered merchant fraud and strictly prohibited. Factoring is the submission of authorization requests and/or Sales Drafts by a merchant for Card transactions transacted by another business. If you submit Sales Drafts on behalf of another person, you will suffer any losses associated with the disputes of any such Sales Draft and/or transaction. Also if any fraud is involved, you could face criminal prosecution.

**6.2.  Timeliness.** In order to qualify for the lowest interchange Discount Rate, all Sales and Credit Drafts must be properly completed and submitted daily. If you have not received payment for submitted Sales Drafts after one (1) week from your normal payment date, contact Customer Service. **Late Submission of Sales or Credit Drafts may result in increased interchange rates or fees or in a Chargeback to you.**

**6.3.  Mail/Branch Deposit Procedures.** Complete the appropriate summary form designated for your use. Imprint the completed summary with your Merchant Identification Card, if applicable, and sign it. Please do not staple or clip Sales Drafts together or to summary forms. This will distort the Cardholder's account number and may result in a Summary Adjustment or Chargeback to you. Mail your deposits daily to us, or, if your Agreement allows deposit at a local bank branch, you must make daily deposits.

Do not send us the merchant copies (which are for your records); submit only the Bank hard copies of the transactions. If merchant copies are submitted, they will be returned to you unprocessed.

**6.4.  Electronic Merchants: Daily Batching Requirements & Media Submission.** Batches must be transmitted to us by the time indicated in the Agreement in order to be processed on the date of transmission. Additionally, if you deposit via magnetic tape, electronic transmissions, or Electronic Data Capture terminal, and have contracted to send the actual Sales Drafts and Credit Drafts to us for imaging and retrieval, the Media must be batched daily by register/terminal following the procedures below. Failure to do so may result in a processing fee and/or a Chargeback due to our inability to retrieve the Media as requested by the Issuer.

- A register/terminal Batch header form must be filled out for each Batch of Media.

- The Batch header must be imprinted with your Merchant Identification Card, and all areas completed properly (i.e., Batch number, date, amount, number of items, etc.).

- The Batch/deposit total must match to the settled/reconciled amount displayed on the terminal upon closing the Batch.
- Any discrepancies between the actual Media and electronic display must be reconciled and corrected before storing the Media (for merchants who contract to hold their Media) or before sending us the copies of the deposit. Otherwise, transactions may appear to be a new Submission and may be manually keyed (causing duplicate billing to Cardholders and resulting in Chargebacks) or we may not be able to retrieve an item when requested by the Issuer.
- It is your responsibility to ensure that the actual Media is batched correctly and, depending on the terms of your Agreement, either stored at your location or sent to Processor. (In some cases, the actual Media is sent daily to your head office, and forwarded to Processor for imaging.)
- **You must confirm that your equipment has transmitted its Batches to us at least once daily.** Even if your equipment is designed or programmed to close and submit Batches without your intervention, it is ultimately your responsibility to confirm that the Batches have been transmitted to us for processing.

### 7. Settlement

Your funds for MasterCard/Visa/Discover Network transactions will be processed and transferred to your financial institution within two (2) Business Days from the time a Batch is received by Processor if your financial institution is the Bank. If your financial institution is not the Bank, your MasterCard/Visa/Discover Network transactions will be processed via the Federal Reserve within two (2) Business Days from the time a Batch is received by Processor. The Federal Reserve will transfer such amounts to your financial institution.

If you have been classified by Discover Network as having a Discover Direct Strategic Relationship with Discover Network, we will not acquire your Discover Network transactions and they will be subject to your agreement with Discover Network.

You acknowledge and agree that if we have not agreed to or do not acquire transactions for any Card type (i) we have no liability or responsibility whatsoever for the settlement of or disputes regarding those transactions and (ii) you will pursue directly with the related Card Organization all claims and disputes regarding those transactions. You agree to pay us for per item processing, authorization and other fees in the Application for any non-acquired transaction services you receive from us.

### 8. Refunds/Exchanges (Credits)

#### 8.1.  Refunds.

- You must promptly complete and submit a Credit Draft for the total amount of the Credit, which must include the following information:
  - The account number and expiration date;
  - The Cardholder's name;
  - Your name, city, state and Merchant Account Number;
  - A description of the goods or services;
  - The transaction date of the Credit;
  - The total amount of the Credit; and
  - For Discover Network transactions, the approved currency used and the signature of your authorized representative or employee.
- You cannot process a Credit transaction that does not correspond to a refund on a previous transaction on the original Sales Draft.
- Full refunds must be for the exact dollar amount of the original transaction including tax, handling charges, etc. (You must identify the shipping and handling charges incurred.) The refund amount may not be for more than the original Card sale amount.
- All dollar amounts and other handwritten information must be clearly written. (Stray marks on the Credit Draft will render it unscannable/illegible.)
- Do not circle or underline any information on the Credit Draft.
- Imprint the Credit Draft with the same Card used by the Cardholder to make the original purchase when applicable. You should not credit an account that differs from the account used for the original transaction.
- Never give cash or check refunds for Card sales.
- Have the Cardholder sign the Credit Draft, give the Cardholder the appropriate copy, and deposit the Credit Draft immediately. Failure to process a Credit within five (5) calendar days may result in a Chargeback.
- Authorization is not required for Credits.
- You cannot intentionally submit a sale and an offsetting Credit at a later date solely for the purpose of debiting and crediting your own or a customer's account.
- You are responsible for paying all refunds submitted to us on your merchant account. We assume no responsibility for verifying any Credits or refunds.
- Do not process a Credit transaction once a Chargeback is received. Credits issued after a Chargeback has been received may not be recoverable and the merchant would be financially responsible for the credit as well as the Chargeback.
- YOU ARE RESPONSIBLE TO SECURE YOUR TERMINALS AND TO INSTITUTE APPROPRIATE CONTROLS TO PREVENT EMPLOYEES OR OTHERS FROM SUBMITTING CREDITS THAT DO NOT REFLECT BONA FIDE RETURNS OR REIMBURSEMENTS OF PRIOR TRANSACTIONS.

#### 8.2.  Exchanges.

- No additional paperwork is necessary for an even exchange. Just follow your standard company policy.
- For an uneven exchange, complete a Credit Draft (follow the procedures outlined in Section 8.1) for the total amount of only the merchandise returned. The Cardholder's account will be credited for that amount. Then, complete a new Sales Draft for the total amount of any new merchandise purchased.

### 9. Retention of Records For Retrievals and Chargebacks

#### 9.1.  Retain Legible Copies.

For MasterCard and Visa: You must securely retain legible copies of all Sales Drafts and Credit Drafts or any other transaction records for a period of eighteen (18) months from the date of each transaction and a period of five (5) years for the retention of healthcare Sales Drafts and Credit Drafts. The Sales Drafts you retain must comply with all requirements (see Section 3.1).

For Discover Network: You must securely retain legible copies of all Sales Drafts and Credit Drafts or any other transaction records for the longer of (i) 365 days or (ii) the resolution of any pending or threatened disputes, claims, disagreements or litigation involving the Card transaction. You must also keep images or other copies of Sales Drafts for no less than three (3) years from the date of the Discover Network transaction.

#### 9.2.  Provide Sales and Credit Drafts. You must provide all Sales Drafts and Credit Drafts or other transaction records requested by us within the shortest time limits established by Card Organization Rules. You are responsible for any deficiencies in Card transaction data transmitted or otherwise delivered to us.

#### 9.3.  Ensure Proper Retrieval Fulfillment. To ensure proper Retrieval fulfillments and/or Chargeback processing, Sales Drafts and Credit Drafts must contain the full account number and expiration date to the extent permitted by applicable law and Card Organization Rules (see Section 3.1). Failure to retain this information could result in a future Chargeback to your account.

### 10. Chargebacks, Retrievals and Other Debits

#### 10.1.  Chargebacks.

**10.1.1.  Generally.** Both the Cardholder and the Issuer have the right to question or dispute a transaction. If such questions or disputes are not resolved, a Chargeback may occur. As a result, we will debit your Settlement Account or settlement funds for the amount of each Chargeback. It is strongly recommended that, whenever possible, you contact the Cardholder directly to resolve a disputed transaction or Chargeback, unless the dispute involves a Discover Network Cardholder, in which case Discover Network rules and regulations expressly prohibit you from contacting the Discover Network Cardholder regarding the dispute. You are responsible for all Chargebacks, our Chargeback fees, and related costs arising from your transactions.

**10.1.2.  Transaction Documentation Requests.** In some cases, before a Chargeback is initiated, the Issuer will request a copy of the Sales Draft, via a request for transaction documentation. We will forward the request to you. You must respond to the request within the time frame and manner set forth in the request. We will then forward your response to the Issuer. If you fail to timely respond, we will so notify the Issuer and a Chargeback may result. Upon receipt of a transaction documentation request, immediately retrieve the requested Sales Draft(s) using the following guidelines:

- Make a legible copy, centered on 8½ x 11-inch paper (only one (1) Sales Draft per page).
- Write the 'case number' from the request for transaction documentation on each copy/page.
- If applicable, make copies of a hotel folio, car rental agreement, mail/phone/internet order form, or other form of receipt.
- If a Credit transaction has been processed, a copy of the Credit Draft is also required.
- Letters are not acceptable substitutes for Sales Drafts.
- Fax or mail legible copies of the Sales Draft(s) and Credit Drafts, if applicable, to the fax number or mail address provided on the request form.
- If you fax your response, please set your fax machine to print your fax number and name on the documents that you send. We can use this information to help determine where the documentation received originated from should additional research be required.
- Additionally, please set the scan resolution on your fax machine to the highest setting. The higher resolution setting improves the clarity of characters and graphics on the documentation transmitted and helps reduce the number of illegible fulfillments and/or Chargebacks.

If we do not receive a clear, legible and complete copy of the transaction documentation within the timeframe specified on the request, you may be subject to a Chargeback for "non-receipt" for which there is no recourse.

A handling fee may be charged by the Issuer and will be debited from your Settlement Account or settlement funds if, a transaction documentation request results from a difference in the following information on the Sales Draft and the transmitted record: Merchant name or an incorrect city, state, foreign country and/or transaction date.

**10.1.3. Chargeback Process.** Regardless of whether you respond to a transaction documentation request, a Chargeback may be debited to your Settlement Account for numerous reasons (see below). If the Issuer submits a Chargeback, we will send you a Chargeback notification, which may also include a request for transaction documentation. **Due to the short time requirements imposed by MasterCard, Visa and Discover Network, it is extremely important that you respond to a Chargeback notification and transaction documentation request within the time frame set forth in the notification.** Do not process a Credit transaction once a Chargeback is received; the Issuer will credit the Cardholder's account. Credits issued after a Chargeback has been received may not be recoverable and the merchant would be financially responsible for the Credit as well as the Chargeback. If the information you provide is both timely and, in our sole discretion, sufficient to warrant a representment of the transaction and/or reversal of the Chargeback, we will do so on your behalf. However, representment and/or reversal is/are ultimately contingent upon the Issuer and/or Cardholder accepting the transaction under applicable Card Organization guidelines. Representment or reversal is not a guarantee that the Chargeback has been resolved in your favor.

For Visa Chargebacks: If we reverse the Chargeback and represent the transaction to the Issuer, the Issuer, at its sole discretion, may elect to submit the matter for arbitration before Visa. Visa currently charges a $250 filing fee and a $250 review fee. If a decision is made in favor of the Cardholder and/or Issuer, and the Chargeback is upheld, you will be responsible for all such fees and any other applicable fees and penalties imposed by Visa, as they may change from time to time. Such fees and penalties will be debited from your Settlement Account or settlement funds, in addition to the Chargeback.

For MasterCard Chargebacks: If we reverse the Chargeback and represent the transaction to the Issuer, the Issuer, at its sole discretion, may elect to resubmit the Chargeback. In such event, at the discretion of Processor, we will debit your Settlement Account or settlement funds for the Chargeback. However, if you feel strongly that it is an invalid Chargeback, we may, on your behalf and at your request, submit the matter for arbitration before MasterCard. MasterCard currently charges a $150 filing fee and a $250 review fee. If a decision is made in favor of the Cardholder and/or Issuer, and the Chargeback is upheld, you will be responsible for all such fees and any other penalties imposed by MasterCard as they may change from time to time. Such fees and penalties will be debited from your Settlement Account or settlement funds, in addition to the Chargeback.

For Discover Network Chargebacks: If Discover Network rejects our representment request and you feel strongly that the Chargeback is invalid, we may, at the discretion of Processor and on your behalf and at your request, submit the matter for dispute arbitration before Discover Network. Discover Network charges fees for representment requests and an arbitration fee as published in their fee schedule.

If the Chargeback is not disputed within the applicable time limits set forth by MasterCard, Visa, and Discover Network rules and regulations, reversal rights are forfeited. Our only alternative, for Visa and MasterCard non-fraud Chargeback reason codes, is to attempt a "good faith collection" from the Issuer on your behalf. This process can take up to six (6) months and must meet the Issuer's criteria (e.g., at or above a set dollar amount). Good faith collection attempts are not a guarantee that any funds will be collected on your behalf. Issuers normally charge good faith collection fees, which are deducted from the transaction amount if accepted in addition to any processing fees that are charged by us. **NOTE:** Discover Network does not offer good faith collection for Acquirers.

MasterCard and Visa Card Organization Rules require that a merchant make a good faith attempt and be willing and able to resolve any disputes directly with the Cardholder. Discover Network rules and regulations, however, prohibit you and/or us from contacting the Cardholder directly regarding dispute(s) or any other matter, except as required for acceptance of Discover Network transactions, and require you and/or us to submit any responses to dispute notices directly to Discover Network.

Due to Card Organization Rules, you may not re-bill a Cardholder after a Chargeback is received for that transaction, even with Cardholder authorization.

We strongly recommend that you include a detailed rebuttal letter along with all pertinent documents when responding to a transaction request or a Chargeback notification (e.g., rental agreement, imprinted portion of the invoice or Sales Draft; the portion signed by the Cardholder; and the area where the authorization codes, with amounts and dates, are located).

Due to the short time frames and the supporting documentation necessary to successfully (and permanently) reverse a Chargeback in your favor, we strongly recommend the following:

• Avoid Chargebacks by adhering to the guidelines and procedures outlined in these Operating Procedures.
• If you do receive a Chargeback, investigate, and if you dispute the Chargeback, submit the appropriate documentation within the required time frame.
• Whenever possible, contact the Cardholder directly to resolve the dispute, unless the dispute relates to a Discover Network Cardholder, in which case direct contact with the Discover Network Cardholder regarding the dispute is prohibited by Discover Network Card Organization Rules.
• If you have any questions, call Customer Service.

**10.1.4. Chargeback Reasons.** The following section outlines the most common types of Chargebacks. This list is not exhaustive. For ease of understanding, we have combined like Chargebacks into six groupings. We have included recommendations on how to reduce the risk of Chargebacks within each group. These are recommendations only, and do not guarantee that you will be able to prevent Chargebacks.

1. **Authorization Issues:** Proper Authorization procedures were not followed and valid Authorization was not obtained.

   **The following scenarios could cause an Authorization Related Chargeback to occur:**
   • Authorization not obtained.
   • Authorization was declined.
   • Transaction processed with an expired card and Authorization was not obtained.
   • Transaction was processed with an invalid account number and Authorization was not obtained.
   • Card Recovery Bulletin (CRB) or Exception File was not checked (transactions below floor limit).

   **To reduce your risk of receiving an Authorization Related Chargeback:**
   • Obtain valid Authorization on the day of the transaction
     – Card Present Transactions-Authorization must be obtained on the transaction date for the amount settled.
     – Card Not Present Transactions-Authorization must be obtained on the transaction date for the amount settled. However, if merchandise is being shipped, Authorization must be obtained within seven calendar days of the transaction ship date.
   • If a declined response is received, then request another form of payment from the Cardholder.
   • If a Referral response is received, then follow proper voice procedures to obtain a valid Authorization and obtain an imprint of the card.
   • "Pick-up" response indicates that the Issuer is requesting for the card to be retained and returned back to them. The Card should not be accepted for payment. Additionally, you can choose to retain the Credit Card and return it to the Acquirer.
   • Merchants should not exceed any predetermined thresholds for specific terminal types as specified by each Card Organization.

2. **Cancellations and Returns:** Credit was not processed properly or the Cardholder has cancelled and/or returned items

   **The following scenarios could cause a Cancellation and Return Related Chargeback to occur:**
   • Cardholder received damaged or defective merchandise.
   • Cardholder continued to be billed for cancelled recurring transaction.
   • Credit transaction was not processed.

   **To reduce your risk of receiving a Cancellation and Return Related Chargeback:**
   • Issue Credit to the Cardholder for the same account as the purchase in a timely manner.
     – Do not issue Credit to the Cardholder in the form of cash, check or in-store/merchandise Credit as we may not be able to recoup your funds in the event the transaction is charged back.
   • Ensure customers are fully aware of the conditions for recurring transactions. Cancel recurring billings as soon as notification is received from the Cardholder or as a Chargeback, and Issue the appropriate Credit as needed to the Cardholder in a timely manner.
   • Pre-notify the Cardholder of billings within 10 days (Domestic) and 15 (International) prior to billing, allowing the Cardholder time to cancel the transaction.
   • Provide proper disclosure of your refund policy for returned/cancelled merchandise, or services to the Cardholder at the time of transaction.
     – Card present, Cardholder signed the Sales Draft containing disclosure.
   • If applicable, the words "NO EXCHANGE, NO REFUND," etc. must be clearly printed in 1/4 inch lettering on the Sales Draft near or above the Cardholder signature.
     – Ecommerce, provide disclosure on website on same page as check out requiring Cardholder to click to accept prior to completion.
     – Card Not Present, provide cancellation policy at the time of the transaction.
     – Provide cancellation numbers to Cardholder's when lodging services are cancelled.
   • Ensure delivery of the merchandise or services ordered to the Cardholder.

3. **Fraud:** Transactions that the Cardholder claims are unauthorized; the account number is no longer in use or is fictitious, or the merchant was identified as "high risk."

   **The following scenarios could cause a Fraud Related Chargeback to occur:**
   • Multiple transactions were completed with a single card without the Cardholder's permission.
   • Counterfeit card was utilized and proper acceptance procedures were not followed.
   • Authorization was obtained; however, full track data was not transmitted.
   • Cardholder states that they did not authorize or participate in the transaction.
   **NOTE:** Visa Fraud Chargebacks: Chargeback representment rights do not exist if you failed to fulfill a retrieval request and/or provide a sales slip that contains all required data elements. To preserve Chargeback representment rights, respond to all retrieval

requests with a clear legible copy of the transaction that contains all required data elements within the required timeframe that is specified by the retrieval request.

**To reduce your risk of receiving a Fraud Related Chargeback:**

**Card Present Transactions:**

- Obtain an Authorization for all transactions.

- If you are utilizing an electronic device to capture card information, swipe all Card transactions through your electronic authorization device to capture Cardholder information and ensure the displayed Cardholder number matches the number on the Card.

- If you are unable to swipe the Card or if a Referral response is received, imprint the Card using a valid imprinting device that will capture the embossed Card and merchant information. Do not alter the imprint on the draft in any way. Manually entering the information into the terminal does not protect you from this type of Chargeback. All pertinent information relating to the transaction must be written on the manually imprinted draft (transaction date, dollar amount, authorization code and merchandise description) along with the Cardholder signature.

   **NOTE:** Do not imprint on the back of a signed Sales Draft. The imprint must be on the transaction document that contains all transaction elements to prove the Card was present at the time of the transaction.

- Obtain the Cardholder signature for all transactions; ensure the signature on the Sales Draft matches the signature on the back of the Card.

- Process all transaction one time and do not Batch out transactions multiple times.

- Educate staff on procedures to eliminate point of sale (POS) fraud.

**Card Not Present Transactions:**

- Participation in recommended Fraud Prevention Tools:
   – Verified by Visa Program
   – MasterCard SecureCode
   – Address Verification Services
   – CVV2, CVC2 and CID Verification

   **NOTE:** While transactions utilizing these tools may still be disputed, the service may assist you with your decision to accept the Card for the transaction.

- Ensure you ship to the AVS confirmed address (bill to and ship to should match).

- Obtain Authorization for all transactions.

- Ensure merchant descriptor matches the name of the business and is displayed correctly on the Cardholder statement.

- Ensure descriptor includes correct business address and a valid customer service number.

4. **Cardholder Disputes:** Merchandise or services not received by the Cardholder, Merchandise defective or not as described.

**The following scenarios could cause a Cardholder Dispute Chargeback to occur:**

- Services were not provided or merchandise was not received by the Cardholder.

- The Cardholder was charged prior to merchandise being shipped or merchandise was not received by agreed upon delivery date or location.

- Cardholder received merchandise that was defective, damaged, or unsuited for the purpose sold, or did not match the description on the transaction documentation/ verbal description presented at the time of purchase.

- Cardholder paid with an alternate means and their Card was also billed for the same transaction.

- Cardholder cancelled service or merchandise and their Card was billed.

- Cardholder billed for a transaction that was not part of the original transaction document.

**To reduce your risk of receiving a Cardholder Dispute Related Chargeback:**

- Provide Services or Merchandise as agreed upon and described to the Cardholder; clearly indicate the expected delivery date on the sales receipt or invoice.

- Contact the Cardholder in writing if the merchandise or service cannot be provided or is delayed, and offer the Cardholder the option to cancel if your internal policies allow.

- In the event that the Cardholder received defective merchandise or the merchandise received was not as described; resolve the issue with the Cardholder at first contact.

- If the merchandise is being picked up by the Cardholder, have them sign for the merchandise after inspection that it was received in good condition.

- Do not charge the Cardholder until the merchandise has been shipped, ship according to the agreed upon terms and obtain signed Proof of Delivery from the Cardholder.

- If unable to provide services or merchandise, issue a Credit to Cardholder in a timely manner.

- Accept only one form of payment per transaction and ensure the Cardholder is only billed once per transaction.

- Do not bill Cardholder for loss, theft or damages unless authorized by the Cardholder.

5. **Processing Errors:** Error was made when transaction was processed or it was billed incorrectly.

**The following scenarios could cause a Processing Error Chargeback to occur:**

- Transaction was not deposited within the Card Organization specified timeframe.

- Cardholder was issue a Credit Draft; however, the transaction was processed as a sale.

- Transaction was to be processed in a currency other than the currency used to settle the transaction.

- The account number or transaction amount utilized in the transaction was incorrectly entered.

- A single transaction was processed more than once to the Cardholder's account.

- Cardholder initially presented Card as payment for the transaction; however Cardholder decided to use an alternate form of payment.

- Limited amount or self-service terminal transaction was processed for an amount which is over the pre-determined limit.

**To reduce your risk of receiving a Processing Error Related Chargeback:**

- Process all transactions within the Card Organization specified timeframes.

- Ensure all transactions are processed accurately and only one time.

   **NOTE:** In the event that a transaction was processed more than once; immediately issue voids, transaction reversals or Credits.

- Ensure that credit transaction receipts are processed as Credits and sale transaction receipts are processed as sales.

- Ensure all transactions received a valid Authorization Approval Code prior to processing the transaction and obtain a legible magnetic swipe or imprinted Sales Draft that is signed.

- Do not alter transaction documentation or make any adjustments unless the Cardholder has been contacted and agrees to any modifications of the transaction amount.

- Ensure limited amount, self-service and automated fuel dispenser terminals are set properly to conform to the pre-determined limits.

6. **Non Receipt of Information:** Failure to Respond to a Retrieval Request or Cardholder Does Not Recognize

**The following scenarios could cause Non Receipt of Information Chargeback to occur:**

- The transaction documentation was not provided to fulfill the retrieval request.

- The retrieval request was fulfilled with an illegible Sales Draft or was an invalid fulfillment (incorrect sales draft or sales draft did not contain required information which may include signature).

- The Cardholder does not recognize or is unfamiliar with the transaction due to the merchant name and/or location not matching the name and/or location where the transaction took place.

**To reduce your risk of receiving a Non Receipt of Information Related Chargeback:**

- Provide a clear and legible copy of the Sales Draft that contains all required data elements within the required timeframe that is specified on the retrieval request.

- Ensure that the most recognizable merchant name, location and/or customer service phone number is provided on all transactions.

- Retain copies of all transaction documentation for the required timeframe that is specified by each Card Organization.

- Develop efficient methods to retrieve transaction documentation to maximize ability to fulfill requests.

**10.2. Other Debits.** We may also debit your Settlement Account or your settlement funds in the event we are required to pay Card Organization fees, charges, fines, penalties or other assessments as a consequence of your sales activities. Such debits shall not be subject to any limitations of time specified elsewhere in the Agreement, including, without limitation the following, which we may add to or delete from this list as changes occur in the Card Organization Rules or our Operating Procedures pursuant to Section 15:

- Card Organization fees, charges, fines, penalties, registration fees, or other assessments including any fees levied against us or any amount for which you are obligated to indemnify us.

- Currency conversion was incorrectly calculated. **NOTE: For Discover Network transactions, you are not permitted to convert from your local Discover Network approved currency into another currency, nor may you quote the price of a transaction in U.S. Dollars if completed in another approved currency.**

- Discount Rate not previously charged.

- Reversal of deposit posted to your account in error.

- Debit for Summary Adjustment not previously posted.

- Reversal of Credit for deposit previously posted.

- Debit for Chargeback never posted to your account.

- Debit for EDC Batch error fee.

- Card Organization Merchant Chargeback/fraud monitoring fees – excessive Chargeback handling fees.

- Failure of transaction to meet Member Controller Authorization Service ("MCAS") – Cardholder account number on exception file.

- Original transaction currency (foreign) not provided.
- Travel Voucher exceeds maximum value.
- Debit and/or fee for investigation and/or Chargeback costs related to this Agreement, or for costs related to our collection activities in an amount no less than $100.00.
- Costs arising from replacement or damage to equipment rented.
- Payment of current or past due amounts for any equipment purchase, rental or lease.
- Incorrect merchant descriptor (name and/or city, state) submitted.
- Incorrect transaction date submitted.
- Shipping and handling interchange fees.
- Costs or expenses associated with responding to any subpoena, garnishment, levy or other legal process associated with your account in an amount no less than $150.00.

**10.3.  Summary (Deposit) Adjustments/Electronic Rejects.** Occasionally, it is necessary to adjust the dollar amount of your summaries/Submissions (deposits) and credit or debit your Settlement Account or settlement funds accordingly. The following is a list of the most frequent reasons for Summary (Deposit) Adjustments/Electronic Rejects:

- Your summary reflected an arithmetic error.
- Submitted sales not included in your Agreement (e.g., American Express).
- The dollar amount is unreadable/illegible.
- The Cardholder's account number is unreadable/illegible.
- Duplicate Sales Draft submitted.
- Card number is incorrect/incomplete.
- Summary indicated credits, but no credits were submitted.

**10.4.  Disputing Other Debits and Summary Adjustments.** In order to quickly resolve disputed debits and Summary Adjustments, it is extremely important that the items listed in this section be faxed or sent to the address listed on the notification.

If the Summary Adjustment is for an unreadable or incorrect Cardholder account number, resubmit the corrected Sales Draft with your next deposit. Also, if the transaction is over thirty (30) calendar days old, you must reauthorize and obtain a valid Authorization Approval Code.

A clear and legible copy of the Sales Draft containing the following should be obtained from your files:

- Date of sale/Credit;
- Cardholder's account number, name and signature;
- Total amount of the sale and description of goods and services; and
- Date and Authorization Approval Code.

Include a dated cover letter detailing the reasons for requesting a review of the debit or Summary Adjustment and documentation to support your dispute. (You should retain a copy of the correspondence and all documentation for your files.) If the inquiry is related to prior correspondence, be sure to include the control number we previously used.

Immediately fax or mail the Sales Draft or Credit Drafts to the fax number or address provided on your notification letter.

If you have any questions, please call the Customer Service number provided on the last page of your Program Guide. If a Customer Service Representative informs you that additional documentation is required in order to fully review the item, please immediately submit your rebuttal and transaction documentation to the fax number or address listed on the debit notification.

### 11. Account Maintenance

**11.1.  Change of Settlement Account Number.** If you change the Settlement Account in which you receive the proceeds of your transactions, you must call Customer Service or your Relationship Manager immediately. If you accept payment types other than Visa, MasterCard and Discover Network (such as the American Express Card and TeleCheck Services), you are also responsible for contacting the Card Organizations or companies governing those Cards to notify them of this change.

**11.2.  Change in Your Legal Name or Structure.** You must call Customer Service or your Relationship Manager and request a new Agreement.

**11.3.  Change in Company DBA Name, Address or Telephone/Facsimile Number.** To change your company or location DBA name, address or telephone/facsimile number, you must send the request in writing to the address on your statement.

**11.4.  Other Change(s) in Merchant Profile.** You must immediately notify us of any change to the information on file with us in your merchant profile, including: (i) any new lines or types of business; (ii) change in ownership; (iii) the opening, closing or liquidation of business or any location; (iv) change in Card processing method (i.e., paper Sales Drafts to POS Device); (v) voluntary or involuntary party to a bankruptcy case; (vi) entry into a loan or other agreement with a Person that seeks to affect this Agreement; and/or (vii) change from a business that exclusively conducts Card-present retail sales to one that accepts Card sales by mail, telephone or Internet transactions. We retain the right to terminate this Agreement if you fail to notify us of any change to the information in your merchant profile.

**11.5.  Charges for Changes to Account Maintenance.** You may be charged for any changes referenced in this Section or any other changes requested by you or otherwise necessary related to account maintenance.

### 12. Card Organization Monitoring

MasterCard, Visa and Discover Network have established guidelines, merchant monitoring programs and reports to track merchant activity such as, but not limited to excessive Credit, reported fraud and Chargebacks, and increased deposit activity. In the event you exceed the guidelines or submit suspicious transactions as identified by an Card Organization or any related program or reports, you may be subject to: (i) operating procedure requirement modifications; (ii) Chargebacks and/or increased fees; (iii) settlement delay or withholding; (iv) termination of your Agreement; or (v) audit and imposition of fines.

### 13. Supplies

**Placing Orders.**

- To order additional supplies, call Customer Service when you have two months' inventory left. We will ship you an adequate amount of supplies. The amount of supplies (based on usage) on hand should not exceed a three- to six-month supply.
- In an EMERGENCY, please contact Customer Service using the number provided on the last page of your Program Guide. If supplies are sent via an express delivery service, the delivery charges will be debited to your account.
- You are responsible for unauthorized use of sales/Credit and summary Media. We recommend that you store all supplies in a safe location.
- You may be charged for supplies and applicable shipping and handling charges.

## 14. Glossary

As used in these Operating Procedures and your Agreement, the following terms mean as follows:

**Acquirer:** Bank in the case of MasterCard, Visa and certain debit transactions or Processor in the case of Discover Network transactions that acquire Card sale transactions from merchants such as yourself.

**Address Verification:** A service provided through which the merchant verifies the Cardholder's address, in whole or in part. Primarily used by Mail/Telephone/Internet order merchants, Address verification is intended to deter fraudulent transactions. However, it is not a guarantee that a transaction is valid.

**Affiliate:** A person that, directly or indirectly, (i) owns or controls a party to this Agreement or (ii) is under common ownership or control with a party to this agreement.

**Agreement:** The Agreements among Client, Processor, Bank, and the PIN Debit Sponsor Bank, contained in the Application, the Program Guide and the Schedules thereto and documents incorporated therein, each as amended from time to time, which collectively constitute the Agreement among the parties. Bank is a party to this Agreement for Visa, MasterCard and non-PIN debit purposes only.

**Application:** See Merchant Processing Application

**Authorization:** Approval by, or on behalf of, the Issuer to validate a transaction. An Authorization indicates only the availability of the Cardholder's Credit Limit or funds at the time the Authorization is requested.

**Authorization Approval Code:** A number issued to a participating merchant by the Authorization Center which confirms the Authorization for a sale or service.

**Authorization Center:** A department that electronically communicates a merchant's request for Authorization on Credit Card transactions to the Cardholder's bank and transmits such Authorization to the merchant via electronic equipment or by voice Authorization.

**Bank:** The bank identified on the Application signed by you.

**Bankruptcy Code:** Title 11 of the United States Code, as amended from time to time.

**Batch:** A single Submission to us of a group of transactions (sales and Credits) for settlement. A Batch usually represents a day's worth of transactions.

**Business Day:** Monday through Friday, excluding Bank holidays.

**Buyer Initiated Payment (BIP):** A payment that occurs when a cardholding business approves an invoice (or invoices) and submits an electronic payment instruction causing funds to be deposited directly into a their supplier's merchant account

**Card:** See either Credit Card or Debit Card.

**Cardholder:** Means the Person whose name is embossed on a Card (or Debit Card, as applicable) and any authorized user of such Card.

**Card Not Present Sale/Transaction:** A transaction that occurs when the Card is not present at the point-of-sale, including Internet, mail-order and telephone-order Card sales.

**Card Organization:** Any entity formed to administer and promote Cards, including without limitation MasterCard Worldwide ("MasterCard"), Visa U.S.A., Inc.("Visa"), DFS Services LLC ("Discover Network") and any applicable debit networks.

**Card Organization Rules:** The rules, regulations, releases, interpretations and other requirements (whether contractual or otherwise) imposed or adopted by any Card Organization and related authorities, including without limitation, those of the PCI Security Standards Council, LLC and the National Automated Clearing House Association (including, with respect to EBTs, the Quest Operating Rules).

**Card Validation Code:** A three-digit value printed in the signature panel of most Cards and a four-digit value printed on the front of an American Express Card. Visa's Card Validation Code is known as CVV2; MasterCard's Card Validation Code is known as CVC2; Discover Network's Card Validation Code is known as a CID. Card Validation Codes are used to deter fraudulent use of an account number in a non-face-to-face environment, (e.g., mail orders, telephone orders and Internet orders).

**Card Verification Value (CVV)/Card Validation Code (CVC):** A unique value encoded on the Magnetic Stripe of a Card used to validate Card information during the Authorization process.

**Cash Over Transaction:** Dispensing of cash by a merchant in connection with a Card sale, other than a PIN Debit Card transaction, for the purchase of goods or services.

**Chargeback:** A Card transaction (or disputed portion) that is returned to us by the Issuer. Client is responsible for payment to us for all Chargebacks.

**Client:** The party identified as "Client" on the Application. The words "Subscriber," "you" and "your" refer to Client.

**Credit:** A refund or price adjustment given for a previous purchase transaction.

**Credit Card:** A device bearing a valid Organization Mark of Visa, MasterCard or Discover Network and authorizing the Cardholder to buy goods or services on credit and, to the extent the Schedules so provide, a valid device authorizing the Cardholder to buy goods or services on credit and issued by any other Card Organization specified on such Schedules.

**Credit Draft:** A document evidencing the return of merchandise by a Cardholder to a Client, or other refund or price adjustment made by the Client to the Cardholder, whether electronic, paper or some other form, all of which must conform to Card Organization Rules and applicable law.

**Credit Limit:** The credit line set by the Issuer for the Cardholder's Credit Card account.

**Customer Activated Terminal (CAT):** A magnetic stripe terminal or chip-reading device (such as an automatic dispensing machine, Limited Amount Terminal, or Self-Service Terminal) that is not an ATM.

**Debit Card:** See either PIN Debit Card or Non-PIN Debit Card.

**Dial-Up Terminal:** An Authorization device which, like a telephone, dials an Authorization Center for validation of transactions.

**Discount Rate:** A percentage rate and/or amount charged a merchant for processing its qualifying daily Credit Card and Non-PIN Debit Card transactions, as set forth in the Application. Transactions that fail to meet applicable interchange requirements will be charged additional amounts as set forth in your Agreement.

**Electronic Draft Capture (EDC):** A process which allows a merchant's Dial-Up Terminal to receive Authorization and capture transactions, and electronically transmit them to the Processor. This eliminates the need to submit paper for processing.

**Factoring:** The submission of authorization requests and/or Sales Drafts by a merchant for Card sales or cash advances transacted by another business.

**Imprinter:** A manual or electric machine used to physically imprint the merchant's name and ID number as well as the Cardholder's name and Card number on Sales Drafts.

**Issuer:** The financial institution or Card Organization which has issued a Card to a Person.

**Limited Amount Terminal:** A Customer Activated Terminal that has data capture only capability, and accepts payment for items such as parking garage fees, road tolls, motion picture theater entrance, or magnetic-stripe telephones.

**Magnetic Stripe:** A stripe of magnetic information affixed to the back of a plastic Credit or Debit Card. The Magnetic Stripe contains essential Cardholder and account information.

**Marks:** Names, logos, emblems, brands, service marks, trademarks, trade names, tag lines or other proprietary designations.

**Media:** The documentation of monetary transactions (i.e., Sales Drafts, Credit Drafts, computer printouts, etc.)

**Merchant Account Number (Merchant Number):** A number that numerically identifies each merchant location, outlet, or line of business to the Processor for accounting and billing purposes.

**Merchant Identification Card:** A plastic embossed card supplied to each merchant to be used for imprinting information to be submitted with each Batch of paper Sales Drafts. Embossed data includes Merchant Account Number, name and sometimes merchant ID code and terminal number.

**Merchant Processing Application:** The Merchant Processing Application and Agreement executed by Client, Processor and Bank, which is one of the documents comprising the Agreement.

**Merchant Provider:** Any Person engaged by you to provide services to you involving or relating to (i) access to Cardholder data, transaction data or information related to either Cardholder data or transaction data or (ii) PIN encryption, including without limitation, Encryption Service Organizations (ESOs).

**Non-PIN Debit Card:** A device with a Visa, MasterCard or Discover Network Mark that is tied to a Cardholder's bank account or a prepaid account and which is processed without the use of a PIN.

**Non-Qualified Interchange Fee:** The difference between the interchange fee associated with the Anticipated Interchange Level and the interchange fee associated with the more costly interchange level at which the transaction actually processed.

**Non-Qualified Surcharge:** A surcharge applied to any transaction that fails to qualify for the Anticipated Interchange Level and is therefore downgraded to a more costly interchange level. The Non-Qualified Surcharge (the amount of which is set forth on the Service Fee Schedule) is in addition to the Non-Qualified Interchange Fee, which is also your responsibility (see above and your Agreement)

**Operating Procedures:** The manual prepared by Processor, containing operational procedures, instructions and other directives relating to Card transactions. The current Operating Procedures are set forth in the Program Guide.

**PAN Truncation:** A procedure by which a Cardholder's copy of a Sales Draft or Credit Draft, or as required by applicable law, the Sales Draft or Credit Draft you retain, will only reflect the last four digits of the Card account number.

**Person:** A third party individual or entity, other than the Client, Processor or Bank.

**PIN:** A Personal Identification Number entered by the Cardholder to submit a PIN Debit Card transaction.

**PIN Debit Card:** A device bearing the Marks of ATM networks (such as NYCE or Star) used at a merchant location by means of a Cardholder-entered PIN in the merchant PIN Pad. PIN Debit Cards.

**PIN Debit Sponsor Bank:** The PIN Debit Sponsor Bank(s) identified on the Application signed by you that is/are the sponsoring or acquiring bank(s) for certain PIN Debit networks.

**Point of Sale (POS) Terminal:** A device placed in a merchant location which is connected to the Processor's system via telephone lines and is designed to authorize, record and transmit settlement data by electronic means for all sales transactions with Processor.

**Processor:** The entity identified on this Application (other than the Bank) which provides certain services under this Agreement.

**Recurring Payment Indicator:** A value used to identify transactions for which a Cardholder provides permission to a merchant to bill the Cardholder's Card account at either a predetermined interval or as agreed by the Cardholder for recurring goods or services.

**Referral:** A message received from an Issuer when an attempt for Authorization requires a call to the Voice Authorization Center or Voice Response Unit (VRU).

**Retrieval Request/Transaction Documentation Request:** A request for documentation related to a Card transaction such as a copy of a Sales Draft or other transaction source documents.

**Sales/Credit Summary:** The identifying form used by a paper Submission merchant to indicate a Batch of Sales Drafts and Credit Drafts (usually one day's work). Not a Batch header, which is used by electronic merchants.

**Sales Draft:** Evidence of a purchase, rental or lease of goods or services by a Cardholder from, and other payments to, Client using a Card, including preauthorized orders and recurring transactions (unless the context requires otherwise); regardless of whether the form of such evidence is in paper or electronic form or otherwise, all of which must conform to Card Organization Rules and applicable law.

**Self-Service Terminal:** A Customer Activated Terminal that accepts payment of goods or services such as prepaid cards or video rental, has electronic capability, and does not accept PINs.

**Services:** The activities undertaken by Processor and/or Bank, as applicable, to authorize, process and settle all United States Dollar denominated Visa, MasterCard and Discover Network transactions undertaken by Cardholders at Client's location(s) in the United States, and all other activities necessary for Processor to perform the functions required by this Agreement for Discover Network and all other Cards covered by this Agreement.

**Servicers:** For Visa and MasterCard Credit, Non-PIN Debit Card transactions, PIN Debit, Bank and Processor collectively, in which case, Bank and Processor shall be jointly, but not also severally, liable to the Client. For all other Card transactions, Processor. The words "our," "us" and "we" refer to Servicers.

**Settlement Account:** An account or account(s) at a financial institution designated by Client as the account to be debited and credited by Processor or Bank for Card transactions, fees, Chargebacks and other amounts due under the Agreement or in connection with the Agreement.

**Split Dial:** A process which allows the Authorization terminal to dial directly to different Card processors (e.g., American Express) for Authorization. In this instance, the merchant cannot be both EDC and Split Dial. Split Dial is also utilized for Check Guarantee companies.

**Split Dial/Capture:** Process which allows the Authorization terminal to dial directly to different Card processors (e.g., Amex) for Authorization and Electronic Draft Capture.

**Store and Forward:** A transaction that has been authorized by a merchant when the merchant cannot obtain an Authorization while the customer is present, typically due to a communications failure. The merchant will store the transaction electronically in their host system and retransmit the transaction when communications have been restored.

**Submission:** The process of sending Batch deposits to Processor for processing. This may be done electronically or by mail.

**Summary Adjustment:** An adjustment to your Submission and/or Settlement Accounts in order to correct errors. (See Sections 10.3 and 10.4).

**Telecommunication Card Sale:** Individual local or long-distance telephone calls, for which the telephone service provider is paid directly by use of a Card. These do not include, however, calls paid for with pre-paid telephone service cards. Telecommunication Card Sales are considered Card Not Present Sales.

**Transaction Fees:** Service costs charged to a merchant on a per transaction basis.

**Us, We and Our:** See Servicers.

**You, Your:** See Client.