**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SCHNUCK MARKETS, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No.  4:13-CV-2226-JAR |
| v. | : | |
| | : | The Honorable John A. Ross |
| FIRST DATA MERCHANT DATA | : | |
| SERVICES CORP., and | : | |
| CITICORP PAYMENT SERVICES, INC., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM IN SUPPORT OF THE MOTION FOR JUDGMENT**
**ON THE PLEADINGS OF FIRST DATA MERCHANT SERVICES CORP.**
**AND CITICORP PAYMENT SERVICES, INC.**

Defendants/Counterclaim-Plaintiffs First Data Merchant Services Corp. ("First Data")

and Citicorp Payment Services, Inc. ("Citicorp") (collectively, the "Defendants"), pursuant to

Rule 12(c) of the Federal Rules of Civil Procedure, submit this Memorandum in support of their

Motion for Judgment on the Pleadings with respect to the claims asserted by

Plaintiff/Counterclaim-Defendant Schnuck Markets, Inc. ("Schnucks" or "Plaintiff") and

Defendants' Counterclaim.

**I.       INTRODUCTION**

In March 2013, Schnucks sustained a cyber-attack that resulted in a data breach adversely

impacting its credit and debit card using customers.  Schnucks commenced these proceedings in

an effort to avoid its clear financial responsibility for the consequences of its data breach.

Specifically, Plaintiff claims that its financial responsibility is contractually limited to $500,000.

However, a plain language reading of the contractual provision relied on by Plaintiff

demonstrates that this limitation does not apply here.  Plaintiff is exclusively liable for 100% of

the financial responsibility imposed by the card brand associations Visa and MasterCard

(collectively the "Associations") for the Plaintiff's data breach.  The Associations impose that financial responsibility initially on Citicorp as the responsible "acquiring" bank pursuant to *their* contract.  Citicorp has a contract with First Data as the merchant processor pursuant to which First Data is then liable to indemnify Citicorp.  And, finally, Plaintiff as the merchant is contractually liable to both First Data and Citicorp to indemnify them for the financial consequences imposed by the Associations.  First Data's contract with Plaintiff provides that Plaintiff is responsible for, among other things, fees assessed by the Associations due to a data breach, and all fines, fees, and penalties assessed by the Associations because the merchant failed to comply with applicable data security standards.  The written agreements governing the parties' relationship further expressly authorize Defendants to establish a special reserve account (the "Reserve Account") funded by the monetary flow of Schnucks' payment card transactions to cover Plaintiff's actual and anticipated liability to the Associations for its data breach.

Plaintiff admits its liability but asserts there is a $500,000 contractual limitation on that liability.  The plain language of the applicable limitation of liability states otherwise.  The limitation of liability provision specifically *does not apply* to: (1) fees charged by Visa or MasterCard to Defendants as a result of the data breach ("Third-Party Fees"); and/or (2) *fees (including reimbursements and assessments), fines, penalties,* assessed by Visa or MasterCard based on Schnucks being the source of a loss or compromise of cardholder data.

As detailed below, Plaintiff repeatedly admits in the Complaint that Defendants established the Reserve Account for the express purpose of off-setting the Third-Party Fees assessed by Visa and MasterCard against Defendants.  In other words, Plaintiff admits that the Reserve Account is composed of the kinds of fees as to which there is no contractual limitation.  Thus, if Plaintiff is responsible for Third Party Fees and Defendants were permitted to establish

the Reserve Account to recover those fees from Plaintiff, then Plaintiff effectively concedes that

it is liable for any such fees assessed or to be assessed by the Associations on Defendants as a

result of Schnucks' data breach.

The Court should, therefore, grant Defendants' Motion for Judgment on the Pleadings to

spare the parties and the Court significant time and expense litigating this matter.

## II.   ADMITTED FACTS FROM PLAINTIFF'S COMPLAINT AND PROCEDURAL BACKGROUND

### A.   The Master Services Agreement, Bankcard Addendum, and Operating Procedures

The Complaint describes an inter-related series of written agreements among Schnucks,

First Data, and Citicorp concerning the processing of credit and debit card transactions at

Schnucks retail locations.  Complaint, Doc. #9, at ¶¶ 12, 16-17.  These inter-related agreements

are: (1) a Master Services Agreement ("MSA") (Exhibit A to Defendants' Motion); (2) a

Bankcard Addendum to the MSA ("Bankcard Addendum") (Exhibit B to Defendants' Motion);

and (3) Program Terms and Conditions ("Operating Procedures") (Exhibit C to Defendants'

Motion).[1]

In October 2011, Schnucks and First Data entered into the MSA.  *See* Exhibit A. The

MSA establishes "the terms and conditions by which First Data agreed to provide credit and

---

[1]      The MSA, the Bankcard Addendum, and the Operating Procedures are also attached (with certain agreed to redactions) to Defendants' Answer and Counterclaim (Doc. #20) as Exhibits A, B, and C.  The Court is free to consider these documents here because they are integral to the disposition of the Complaint. *See Nationwide Mut. Ins. Co. v. Harris Medical Associates*, LLC, 2013 WL 5341498, *3 (E.D. Mo. Sept. 23, 2013) ("In considering a Rule 12(c) motion, the Court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record").  They are referenced herein as simply "Exhibits A, B, and C."

3

debit card merchant transaction processing services for Schnucks." Complaint, Doc. #9, at ¶ 16.[2]

Section 5.4 of the MSA contains a limitation of liability provision:

> "Limitation of Liability.  NOTWITHSTANDING ANYTHING IN THIS MSA AND ANY ADDENDA TO THE CONTRARY, CUSTOMER, FDMS AND ITS AFFILIATES' CUMULATIVE LIABILITY, IN THE AGGREGATE (INCLUSIVE OF ANY AND ALL CLAIMS MADE BY CUSTOMER, FDMS AND/OR ITS AFFILIATES, WHETHER RELATED OR UNRELATED) FOR ALL LOSSES, CLAIMS, SUITS CONTROVERSIES, BREACHES, OR DAMAGES FOR ANY CAUSE WHATSOEVER (INCLUDING, BUT NOT LIMITED TO, THOSE ARISING OUT OF OR RELATED TO THIS MSA AND ANY ADDENDA) AND REGARDLESS OF THE FORM OR ACTION OR LEGAL THEORY SHALL NOT EXCEED $500,000. NOTWITHSTANDING THE FOREGOING, CUSTOMER, FDMS AND ITS AFFILIATES' CUMULATIVE LIABILITY FOR ITS BREACH UNDER SECTION 25 (DATA SECURITY) SHALL NOT EXCEED $3,000,000.  FOR PURPOSES OF CLARIFICATION, EITHER PARTY CUMULATIVE TOTAL UNDER THIS CONTRACT SHALL NOT EXCEED $3,500,000.  **THIS SECTION 5.4 LIMITATION OF LIABILITY SHALL NOT APPLY TO CUSTOMER'S LIABILITY FOR CHARGEBACKS, SERVICERS' FEES, THIRD PARTY FEES, AND FEES, FINES OR [PENALTIES] BY THE ASSOCIATION OR ANY OTHER CARD OR DEBIT CARD PROVIDED UNDER THIS MSA OR ANY ADDENDA.**"

Exhibit A at § 5.4 (emphasis added).

Contemporaneous with the signing of the MSA, Plaintiff and Defendants executed a Bankcard Addendum to the MSA.  Complaint, Doc. #9, at ¶¶ 16-17; *see* Exhibit B.  The Bankcard Addendum incorporates the MSA and "sets forth the terms and conditions by which First Data *and Citicorp* collectively agreed to provide credit and debit card merchant transaction processing services for Schnucks."  Complaint, Doc. #9, at ¶ 16 (emphasis added); Answer to Counterclaim, Doc. #30, at ¶ 6.  The Bankcard Addendum imposes all financial responsibility on

---

[2]     The MSA is controlled by Missouri law.  *See* Exhibit A at § 11.

Schnucks for invoices directed to Defendants by "Third Parties," such as Visa and MasterCard

(a/k/a the credit card Associations), arising out of a data security breach:

> **CUSTOMER [Schnucks] shall at all times be responsible for, payment for all fees and charges** (including increases[,] additions, or modification made thereto), **without limitation, of any Credit Card Association [Visa and MasterCard]**, Network, card-issuing organization, telecommunications provider, federal, state or local governmental authority (each a 'Third Party') **including, without limitation any switch fee, issuer, reimbursement fee, adjustment fee, interchange fee, assessment fee or access fee, (collectively, 'Third Party Fees')**.

Exhibit B at § 13.3 (emphasis added).  Further, Section 13.5 of the Bankcard Addendum

memorializes Schnucks' agreement to pay "any *fines, fees, or penalties*" arising out of Plaintiff's

own "negligent acts or omissions."  *Id.* at § 13.5 (emphasis added).

The Bankcard Addendum also requires that Plaintiff implement a data security program,

and thus be "PCI compliant" at all times,[3] as defined by the Associations stating:

> . . . CUSTOMER [Schnucks] is required to follow the Operating Procedures and comply with Association Rules as they may each be amended from time to time. The Association may impose different compliance requirements on different types and levels of customers.  The Association may impose restrictions, fines, or prohibit CUSTOMER from participating in Association programs if it is determined CUSTOMER is non-compliant with such programs.  **CUSTOMER understands that it must be in compliance with data security regulations for its type or level of customer as defined by the Associations security procedures as well as comply with general security procedures**.

Exhibit B at § 25 (emphasis added).  In connection with these data security requirements, the

Bankcard Addendum reiterates that ". . . CUSTOMER [Schnucks] understands and

acknowledges that it is *solely the responsibility of CUSTOMER* to maintain compliance with all

Association PCI Data Security procedures and regulations, and *to pay any and all fines levied by

the applicable Association* for its non-compliance . . . ."  *Id*. (emphasis added).

---

[3]     "PCI" stands for "payment card industry."

5

The Bankcard Addendum incorporates the Program Terms and Conditions (or "Operating Procedures") and the MSA incorporates the operating regulations of the Associations.  *See* Exhibit B at § 4; Exhibit C; Complaint, Doc. #9, at ¶ 17.[4]   Section 4.9 of the Operating Procedures details Schnucks' data security obligations and *its financial responsibility* over to the Associations for failure to fulfill those obligations:

> If you [Schnucks] or a Merchant Provider (or other Person used by you) are determined by any Card Organization, regardless of any forensic analysis or report, to be the likely source of any loss, disclosure, theft or compromise of Cardholder data or Card transaction information, or caused Cardholder data to be put at risk (together, 'Compromised Data Events') and regardless of your belief that you have complied with the Card Organization Rules or any other security precautions and are not responsible for the Compromised Data Event, **you must promptly pay us for all related expenses, claims, assessments, fines, losses, costs and penalties and Issuer reimbursements imposed by the Card Organizations against us** (together, 'Data Compromise Losses').

*See* Exhibit C at § 4.9 (emphasis added).  To secure these financial obligations, the Bankcard Addendum permits Defendants to create and maintain a Reserve Account from Schnucks' payment card transaction flow. *See* Complaint, Doc. #9, at ¶ 19; Exhibit B at § 22.

### B.   The Attack Against Schnucks' Payment Card Processing System

On March 30, 2013, Plaintiff experienced a cyber-attack against its payment card processing system that "involved the insertion of malicious computer code that searched for the presence of data from the magnetic stripe of payment cards swiped" at certain of Schnucks' affected retail locations.  Complaint, Doc. #9, at ¶¶ 24-25.  The Associations characterize such cyber-attacks as "data compromise events."  *Id*. at ¶ 27.

---

[4]    It is undisputed that the MSA, Bankcard Addendum, and Operating Procedures constitute one entire, integrated contract between Plaintiff and Defendants.  *See* Complaint, Doc. #9, at ¶¶ 16-17 and Exhibit B (Bankcard Addendum) at § 26.3 ("*The Bankcard Addendum, along with the [MSA] . . . and the Operating Procedures, constitutes the entire agreement between the parties with respect to the subject matter*") (emphasis added).

If the Associations maintain that a merchant was not "PCI compliant" at the time of a data breach, they may assess a "non-compliance fine" and/or a "case management fee" against the acquiring bank (here, Citicorp). *Id.* Additionally, when the data compromise event involves data procured from payment card magnetic stripes, the Associations can issue assessments against the acquiring bank as reimbursement for: "(1) the amount that the [payment card] issuing banks spent to monitor or cancel and re-issue at risk cards; and (2) the amount of fraudulent charges on the at risk cards." *Id.*

C.      **Defendants Establish the Reserve Account**

As a direct result of Schnucks' data breach, "First Data received a preliminary case management report from MasterCard outlining the case management fee and the amount of monitoring/card replacement and fraud loss reimbursement it was assessing against Citicorp." Complaint, Doc. #9, at ¶ 28. Based on MasterCard's assessment, First Data projected the total dollar amount of Visa's anticipated assessment arising out of the breach. *Id.* at ¶ 29. As expressly permitted by the MSA and Bankcard Addendum, First Data then established the Reserve Account for the Associations' actual and projected assessments by "withholding a percentage each day from the funds First Data collected for Schnucks from the payment card transactions [First Data] processed at one [Schnucks'] store location." *Id.* at ¶¶ 30-31.[5]

The dollar amount held in the Reserve Account to cover the Associations' fees, fines, and assessments well exceeds $500,000. *Id.* at ¶ 33. As set forth above, the $500,000 limit on liability mentioned in Section 5.4 of the MSA expressly does not apply to the monies held in the Reserve Account because these monies are, as admitted by Plaintiff, exclusively to pay the

---

[5]      To date, Visa has yet to finalize its assessment for Schnucks' data breach. *See* Complaint, Doc. #9, at ¶¶ 29-30.

Associations' fines, fees, and assessments. Exhibit A, MSA at § 5.4; Exhibit B, Bankcard Addendum at § 13.3; Complaint, Doc. #9, at ¶ 30.

### D.    Procedural Background

Plaintiff filed a Complaint on November 4, 2013 asserting causes of action for Breach of Contract and Declaratory Judgment.  Defendants filed their Answer, Affirmative Defenses, and Counterclaim on January 21, 2014.  Defendants' Counterclaim is for a Declaratory Judgment, asserting that the MSA's limitation of liability provision does not apply to Defendants' assessment against Plaintiff through the Reserve Account.   Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, Defendants now move for judgment on the pleadings on all claims in the Complaint and their Counterclaim.

## III.    LEGAL STANDARD

Under Rule 12(c), the court "accept[s] all facts pled by the nonmoving party as true and draw[s] all reasonable inferences from the facts in favor of the nonmovant." *Unite Here Local 74 v. Pinnacle Entertainment, Inc*., 2011 WL 65934, *2-3 (E.D. Mo. Jan. 10, 2011) (*quoting Waldron v. Boeing Co*., 388 F.3d 591, 593 (8th Cir. 2004)).  "[J]udgment on the pleadings is . . . properly granted [where] the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Id*. (*quoting U.S. v. Any and All Radio Station Transmission Equip*., 207 F.3d 458, 462 (8th Cir. 2000)).  The proper interpretation of an unambiguous contract is an appropriate matter for a court to consider on such a motion. *See Express Scripts, Inc. v. Maury County*, 2010 WL 1141342, *3 (E.D. Mo. Mar. 22, 2010) (contract interpretation is a legal matter properly resolved on a motion).  Here, based on the plain language of the parties' written agreements and Plaintiff's admissions,

Defendants are entitled to judgment as a matter of law pursuant to Federal Rule of Civil Procedure 12(c) on the Complaint and their Counterclaim.

## IV.   ARGUMENT

Defendants are entitled to judgment on the pleadings because the plain and unambiguous language of the MSA and its incorporated agreements, together with the admissions in Plaintiff's Complaint and Answer to Defendants' Counterclaim, establish that Plaintiff is liable for *all* of the financial responsibility – without limitation or exception – imposed on Defendants by the Associations relating to the cyber-attack on Schnucks' payment card processing system and the resulting data security breach.

### A.      Unambiguous Contract Provisions Are Enforced in Accordance with Their Plain Language

The MSA and, by incorporation, the Bankcard Addendum and Operating Procedures, are all governed by Missouri law.  Exhibit A at § 11.  Under Missouri law, there is no more well-settled principle than the enforcement of an unambiguous contract according to its plain language.  *See e.g., Turner v. Sch. Dist. of Clayton*, 318 S.W.3d 660, 670 (Mo. 2010) (en banc) (per curiam) ("An unambiguous contract must be enforced according to its terms").  Indeed, "[t]he cardinal principle for contract interpretation is to ascertain the intention of the parties and to give effect to that intent." *Butler v. Mitchell–Hugeback, Inc.*, 895 S.W.2d 15, 21 (Mo. 1995) (en banc).  "In determining the intent of the parties to a contract, [courts] review the terms of a contract as a whole, not in isolation." *Tuttle v. Muenks*, 21 S.W.3d 6, 11 (Mo. App. W.D. 2000).

Missouri courts also do not re-write the provisions of an unambiguous contract or limit its effect through strained construction.  *Rias v. Safeco Ins. Co. of America*, 594 F.Supp.2d 1090, 1095 (E.D. Mo. 2009) ("Under Missouri law, a court must not alter or construct a new contract

through interpretation").   Rather, the plain language is enforced, even if that imposes consequences of a party's own bad bargain.  *Lion Oil Co. v. Tosco Corp.*, 90 F.3d 268, 270-71 (8ᵗʰ Cir. 1996) ("The fact that hindsight may have proven the Agreement to be a bad business decision . . . does not negate its validity").

A determination of whether a contractual provision is ambiguous is a question of law:

> A contract is ambiguous if its terms are reasonably open to more than one meaning, or the meaning of the language used is uncertain.  In other words, a [contract] is ambiguous when the meaning of the relevant language . . . is duplicitous, indistinct, or uncertain.  A contractual provision is not ambiguous just because the parties disagree over its meaning, or because the provision or term is undefined.

*Rias*, 594 F.Supp.2d at 1095 (internal citations omitted).  *See also*, *Rathbun v. CATO Corp.*, 93 S.W.3d 771, 778 (Mo. App. S.D. 2002) ("The test [for ambiguity] is whether the disputed language, in the context of the entire agreement, is reasonably susceptible to more than one construction, giving the words their plain and ordinary meaning as understood by a reasonable person . . . contract language is not interpreted in a vacuum, but by reference to the contract as a whole").

These proceedings are well-positioned for a legal determination.  *See Cavalier Homes of Alabama, Inc. v. Sec. Pac. Hous. Servs., Inc.*, 5 F.Supp.2d 712, 716 (E.D. Mo. 1997) (granting judgment on the pleadings on a breach of contract claim based on the unambiguous language of the contract at issue).  A harmonious and plain language reading of parties' written agreements establishes that Schnucks is liable for all financial responsibility – without limitation – associated with the cyber-attack and data breach.

10

**B.      The Parties' Contract Unambiguously**
**Requires Plaintiff to Pay the Associations'**
**<u>Financial Assessment in Full and Without Limitation</u>**

As a result of the Schnucks' cyber-attack and the consequential impact to its debit and

credit card using consumers, MasterCard has assessed and Visa will assess certain financial

responsibilities against Defendants (because the acquiring bank/payment card processor are

responsible to the Associations for the acts and omissions of Schnucks).  *See* Complaint, Doc.

#9, at ¶ 14 (Plaintiff acknowledges that the acquiring bank "becomes responsible to Visa and

MasterCard for ensuring that the merchant follows each network's operating regulations, as well

as any consequences of non-compliance"); *see also id*. at ¶¶ 28-30 (discussing the Associations'

assessments against Citicorp in connection with Plaintiff's data breach).  In turn, the MSA, the

Bankcard Addendum, and the Operating Procedures collectively and unambiguously transfer that

financial responsibility to Schnucks.  *Id*. at ¶ 18 (acknowledging Plaintiff's obligation to

"indemnify and hold harmless Defendants" for the financial consequences of a data breach).

**1.      Plaintiff's liability for financial**
**responsibility arising out of the Attack**

The plain language of the MSA, Bankcard Addendum, and Operating Procedures

unambiguously makes Schnucks liable for all of the actual and anticipated financial

responsibility assessed by the Associations against Defendants in connection with the cyber-

attack and Schnucks' data breach.   Specifically, Section 4.9 of the Operating Procedures

expressly provides that Schnucks must pay Defendants for "all related expenses" imposed by

Visa and MasterCard in connection with a data compromise event:

> If you [Schnucks] or a Merchant Provider (or other Person used by you) are
> determined by any Card Organization [Visa and MasterCard], regardless of any
> forensic analysis or report, to be the likely source of any loss, disclosure, theft or
> compromise of Cardholder data or Card transaction information, or caused

Cardholder data to be put at risk (together, 'Compromised Data Events') and regardless of your belief that you have complied with the Card Organization Rules or any other security precautions and are not responsible for the Compromised Data Event, **you must promptly pay us for all related expenses, claims, assessments, fines, losses, costs and penalties and Issuer reimbursements imposed by the Card Organizations against us** (together, 'Data Compromise Losses').

Exhibit C at § 4.9 (emphasis added).  *See also id*. at § 10.2 (authorizing Defendants to assess against Plaintiff all "fees, charges, fines, penalties . . . or other assessments including any fees levied against [Defendants] or any amount for which [Schnucks is] obligated to indemnify [Defendants]"); Exhibit B, Bankcard Addendum at §§ 13.3, 13.5, 25 (establishing Schnucks' liability to pay for all assessments – that is, all fees, fines, or penalties – imposed by Visa and MasterCard against Defendants in connection with a data compromise event).  Accordingly, Schnucks is liable for all "related expenses, claims, assessments, fines, losses, costs and penalties and Issuer reimbursements" imposed by the Associations for Schnucks' data compromise. Exhibit C at § 4.9.

Given that Plaintiff is indisputably liable for all expenses and assessments in connection with Schnucks' data security breach, Defendants properly exercised their rights under the Bankcard Addendum and Operation Procedures to establish the Reserve Account at a sum sufficient to cover "the amount of any current and anticipated [credit card] Association fees or fines."  *See* Exhibit B at § 22.1(v); Exhibit C at § 10.2; Complaint, Doc. #9, at ¶ 19 (acknowledging that Defendants may "hold in reserve funds owed to Schnucks from payment card transactions under certain scenarios to offset indemnity obligations of Schnucks").  Thus, the only remaining dispositive issue in this case is whether the dollar amount of Plaintiff's admitted financial responsibility is subject to a limitation in the parties' agreements.

**2.      The MSA does not limit Plaintiff's financial responsibility to Defendants for its data security breach and resulting pecuniary harm**

While Schnucks acknowledges its liability for the financial responsibility being assessed against Defendants by Visa and MasterCard, Schnucks tortures the MSA's language to conclusorily assert that this liability is limited to the $500,000 figure mentioned in Section 5.4. Complaint, Doc. #9, at ¶¶ 20, 37.[6]  Plaintiff ignores the express language of Section 5.4 of the MSA that unambiguously sets forth an exception to that limitation on liability for: (1) Third Party Fees charged by Visa or MasterCard to Defendants as a result of a data compromise event, including fees related to fraud reimbursement and recovery; and/or (2) fees (including reimbursements and assessments), fines or penalties charged by Visa or MasterCard based on Schnucks' failure to comply with the applicable Payment Card Industry Data Security (PCIDSS) requirements (*i.e.*, for not being "PCI compliant").  Exhibit A at § 5.4 ("This Section 5.4 limitation of liability shall not apply to Customer's liability for Chargebacks, Servicers' fees, Third Party Fees, and fees, fines or [penalties] by the Association or any other card or debit card provided under this MSA or any addenda").  The exception to Section 5.4 must be enforced as written, together with all other applicable provisions of the MSA, Bankcard Addendum, and Operating Procedures.  *See e.g., Turner*, 318 S.W.3d at 670 (requiring the enforcement of unambiguous contracts in accordance with their written terms); *Tuttle*, 21 S.W.3d at 11 (noting that the terms of a written contract must be read in context and as a whole).

This Section 5.4 exception to the limitation on liability is in keeping with the plain language of the Bankcard Addendum and mirrors the financial responsibility properly assessed

---

[6]      Unlike factual allegations, Plaintiff's conclusions of law are not entitled to any judicial deference. *Tootie's 225, LLC v. Oliver*, 2012 WL 1596880, *1 (E.D. Mo. May 7, 2012).

against Plaintiff by Defendants through the Reserve Account.  *See* Exhibit B, Bankcard Addendum at § 13.3 (quoted above at pg. 5).  "Third Party Fees" are defined by the Bankcard Addendum as fees assessed by the credit card Associations against Defendants – including, notably, "*reimbursement fee[s] . . . [and] assessment fee*[s]"  *Id*. (emphasis added)   These Third Party Fees are unambiguously *excluded* from the limitation on liability clause in Section 5.4 of the MSA.

The Complaint admits that the Reserve Account is exclusively comprised of funds recouped by Defendants from Plaintiff's payment card transaction flow in order to cover Third Party Fees assessed by the Associations.   Complaint, Doc. #9, at ¶ 30 ("Based on the *MasterCard assessment* and its projection of the *Visa assessment*, First Data informed Schnucks that it was going to establish a *reserve fund in the full amount of the projected assessments by the [Associations]*."); *see also id*. at ¶ 28 (discussing MasterCard's decision to assess "the case management fee and the amount of the monitoring/card replacement and fraud loss reimbursement . . . against Citicorp") and ¶ 31 (describing Defendants' method of funding the Reserve Account from Schnucks' "payment card transactions").   Plaintiff even admits that "[a]pproximately 97% of the actual and projected amount of the assessments by the [Associations] was for the *reimbursement* of losses claimed by issuing banks" (*i.e.*, banks that issued debit or credit cards impacted by Schnucks' data breach).  *Id*. at ¶ 30 (emphasis added). As discussed above, "*reimbursement fee[s]*" are specifically identified in the Bankcard Addendum as a type of Third Party Fee excluded from Section 5.4 of the MSA.  *See* Exhibit B, Bankcard Addendum at § 13.3.   Defendants therefore properly recovered from Plaintiff the actual and potential financial liability arising out of Schnucks' data breach in the full amount of the combined actual and potential liability to the Associations.  *See Id*. at § 22.

Apparently aware of its untenable position under the plain language of the parties' written agreements, Plaintiff attempts to concoct a false distinction between "fees, fines, and penalties" assessed by the Associations versus assessments by the Associations "for the purpose of reimbursing issuing banks."  Complaint, Doc. #9, at ¶ 21; *see also id.* at ¶ 23 ("[T]he last sentence of Section 5.4 . . . is inapplicable to losses assessed by the [Associations]").  The plain language of the agreements, however, makes no such distinction.  As detailed above, the MSA's limitation of liability provision does not apply to "Third Party Fees" – which are defined as including all fees assessed by the Associations, including, specifically, "reimbursement fee[s]." Exhibit A at § 5.4; Exhibit B at § 13.3; Exhibit C at § 4.9 (providing that Schnucks is responsible for "Issuer reimbursements imposed" by the Associations).  Schnucks has no plausible argument whatsoever to avoid the application of the Section 5.4 exception to the limitation on liability.

V.      **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court grant their Motion for Judgment on the Pleadings; dismiss Plaintiff's Complaint with prejudice; and grant judgment to Defendants on their Counterclaim by issuing a declaratory judgment stating that the limitation of liability set forth in Section 5.4 of the MSA does not apply to: (i) fees charged by MasterCard or Visa to Defendants as a result of a cyber-attack experienced by Schnucks including, but not limited to, Servicers' fees, Third-Party Fees, and fees related to fraud reimbursement and recovery; and/or (ii) fees, fines or penalties charged by Visa or MasterCard for Schnucks' failure to comply with the Payment Card Industry Data Security (PCIDSS) requirements.

Respectfully Submitted,

FOX ROTHSCHILD LLP

Dated:  May 19, 2014

By:      */s/ Joshua Horn*
Joshua Horn (admitted *pro hac vice*)
Amy C. Purcell (admitted *pro hac vice*)
FOX ROTHSCHILD LLP
2000 Market Street, 10th Floor
Philadelphia, PA 19103
215-299-2000
Fax: 215-299-2150
Email: jhorn@foxrothschild.com
Email: apurcell@foxrothschild.com

ATTORNEYS FOR DEFENDANTS AND
COUNTERCLAIM PLAINTIFFS FIRST DATA
MERCHANT SERVICES CORP. AND CITICORP
PAYMENT SERVICES, INC.

**Lucy T. Unger**, #36848
**Patrick I. Chavez**, #47732MO
Bank of America Tower
100 North Broadway, 21st Floor
St. Louis, Missouri 63102
314/345-5000
314/345-5055 (FAX)
lunger@wvslaw.com
pchavez@wvslaw.com

**Nicholas T. Solosky** (admitted *pro hac vice*)
FOX ROTHSCHILD LLP
1030 15th Street, N.W.
Suite 380 East
Washington, DC 20005
202-461-3100
Fax: 202-461-3102
Email: nsolosky@foxrothschild.com