UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SCHNUCK MARKETS, INC., : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> FIRST DATA MERCHANT DATA : <br> SERVICES CORP., and : <br> CITICORP PAYMENT SERVICES, INC., : <br> : <br> Defendants. : | Case No.  4:13-CV-2226-JAR <br><br> The Honorable John A. Ross |

**MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS AND IN OPPOSITION
TO PLAINTIFF'S CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendants/Counterclaim-Plaintiffs First Data Merchant Services Corp. ("First Data") and Citicorp Payment Services, Inc. ("Citicorp") (collectively, the "Defendants"), submit this Memorandum in further support of their Motion for Judgment on the Pleadings and in opposition to Plaintiff/Counterclaim-Defendant Schnuck Markets, Inc.'s ("Schnucks" or "Plaintiff") Cross-Motion for Judgment on the Pleadings.

**I.      INTRODUCTION**

Plaintiff is responsible for all financial liability imposed by Visa and MasterCard (the "Associations") on Defendants in connection with the March 2013 cyber-attack against Schnucks' payment card processing system.  Schnucks' liability flows directly from the parties' Master Services Agreement which, together with its integrated tri-partite agreements (collectively, the "MSA"), establishes explicit contractual requirements for Schnucks to pay the entire financial liability imposed by the Associations for Schnucks' data compromise event.

Schnucks seeks to escape its unconditional liability by pointing to a "limitation of liability" provision that purports to limit Schnucks' liability to $500,000. However, the limitation of liability provision specifically excludes (*i.e.*, does not apply to) assessments by the Associations arising out of Schnucks' data breach. That is, the limitation of liability clause explicitly states that all "fees, fines or penalties" (and "Third Party Fees") assessed by the Associations may be recovered from Schnucks without limitation.

Reading the MSA as a whole and in context (as Missouri law requires) demonstrates that the limitation on liability does not apply to the Associations' assessments on Defendants arising out of Schnucks' data compromise event. Schnucks' opposition and cross-motion contravene this Missouri legal requirement, and instead dissect one sentence of the limitation of liability clause to fabricate a distinction between "fees, fines, and penalties" versus so-called issuer reimbursement losses (*aka* assessments by the Associations to reimburse banks that issued payment cards affected by Schnucks' data breach). The contract, however, draws no such distinction. The MSA unambiguously exempts from the limitation of liability *all* assessments by the Associations related to Schnucks' data breach. Moreover, the MSA specifically authorizes Defendants to fund a special account (the "Reserve Account") to satisfy Schnucks' contractual obligation to pay this financial responsibility.

Plaintiff must indemnify Defendants for the entire financial responsibility imposed by the Associations for Schnucks' data breach. As detailed in Defendants' moving papers and below, the Court should grant Defendants' Motion for Judgment on the Pleadings and deny Plaintiff's Cross-Motion.

II.     **ARGUMENT**

    A.     **The Written Exception to the Limitation of Liability Clause Must Be Interpreted Within the Context of the MSA as a Whole**

Under Missouri law, courts interpret contracts by looking to the intent of the parties and giving effect to that intent. *Butler v. Mitchell–Hugeback, Inc.*, 895 S.W.2d 15, 21 (Mo. 1995) (en banc). To that end, the intent of a contract cannot be determined by isolating, out of context, certain words or clauses, as Schnucks attempts to do. Rather, the contract must be read as a whole and interpreted contextually. *See e.g., Tuttle v. Muenks*, 21 S.W.3d 6, 11 (Mo. App. W.D. 2000) ("In determining the intent of the parties to a contract, [courts] review the terms of a contract as a whole, not in isolation"); *Rathbun v. CATO Corp.*, 93 S.W.3d 771, 778 (Mo. App. S.D. 2002) (stating that Missouri courts read and interpret contract language in light of the context of the agreement "as a whole," not in a "vacuum").

Here, the *extent* of Plaintiff's liability – as opposed to the *fact* of Plaintiff's liability which is undisputed – turns on the following explicit exception to the contract's limitation on liability: "This Section 5.4 limitation of liability **shall not apply to [Schnucks'] liability** for Chargebacks, Servicers' fees, **Third Party Fees**, **and fees, fines or [penalties] by the [credit card Associations]** or any other card or debit card provided under this MSA or any addenda." Exhibit A to Defendants' Motion, Doc. # 37, MSA at § 5.4 (emphasis added). Employing the cardinal principles of Missouri contract interpretation, the terms "Third Party Fees" *and* "fees, fines or penalties" unambiguously apply to all of the assessments of financial responsibility

3

imposed by the Associations in connection with Schnucks' data breach.[1]  As discussed in the next sections, these terms include the assessments that Schnucks primarily complains about here: assessments for the purpose of reimbursing issuing banks whose credit and debit card using consumers have suffered losses as a result (*aka* "issuer reimbursement fees").

### 1. The MSA defines "Third Party Fees" to include "issuer reimbursement fees" assessed by the Associations

As discussed above, one kind of fee that the $500,000 limitation on liability does not apply to is "Third Party Fees" charged by the Associations.  Exhibit A, MSA at § 5.4.  "Third Party Fees" are defined as follows:

> **CUSTOMER [Schnucks] shall at all times be responsible for, payment for all fees and charges** (including increases[,] additions, or modification made thereto), **without limitation, of any Credit Card Association [Visa and MasterCard]**, Network, card-issuing organization, telecommunications provider, federal, state or local governmental authority (each a 'Third Party') **including, without limitation** any switch fee, **issuer[] reimbursement fee**,[2] adjustment fee, interchange fee, **assessment fee** or access fee, (collectively, 'Third Party Fees').

Exhibit B to Defendants' Motion, Doc. # 37, Bankcard Addendum at § 13.3 (emphasis added).

Thus, "issuer reimbursement fees" are specifically called out as one type of fee that is included in "Third Party Fees," and thus *ex*cluded from the $500,000 limitation on liability.  Indeed, Plaintiff admits that virtually *all* of the actual and anticipated assessments imposed by

---

[1]   In their moving papers, Defendants inserted, parenthesized, bracketed, or italicized certain terms and concepts from the MSA to provide proper context.  *See e.g.,* Defendants' Brief, Doc. # 38, at 2.  Plaintiff now attempts to portray Defendants' analysis as an improper attempt to "rewrite" the parties' contract.  Plaintiff's Brief, Doc. # 44, at 2.  However, it is beyond dispute that contextual contract interpretation is a core principle of Missouri law.

[2]   Section 13.3 of the Bankcard Addendum includes an apparently inadvertent comma within the term "issuer reimbursement fees."  *See* Exhibit B at § 13.3.

the Associations are for "the reimbursement of losses claimed by issuing banks." *See* Defendants' Brief, Doc. # 38, at 14-15; Complaint, Doc. # 9, at ¶ 30. Given that the plain language of "Third Party Fees" includes both issuer reimbursement and assessment fees, Plaintiff admits that the assessments fall almost exclusively within this definition. As to the remainder of the assessments, Schnucks does not dispute that they are also included in the Section 5.4 "exception" to the limitation on liability. *See* Plaintiff's Brief, Doc. # 44, at 2. Thus, Schnucks is, indisputably, responsible for all Third Party Fees, and Defendants properly funded the Reserve Account to cover all of these assessments. *See* Defendants' Brief, Doc. # 38, at 14.

Plaintiff nevertheless argues – bizarrely in Defendants' view – that the "Third Party Fees" assessed following the data breach have nothing to do with Schnucks' data breach. *See* Plaintiff's Brief, Doc. # 44, at 15 (Third Party Fees have "[nothing] to do with monetary amounts charged by Visa or MasterCard as a result of an account data compromise event"). This argument fails because Plaintiff judicially admits in the Complaint that issuing bank reimbursements were indeed assessed as a result of the data breach. *See* Complaint, Doc. # 9, at ¶¶ 28-31 (outlining the Associations' assessments for the reimbursements to issuing banks after Schnucks' data breach).[3]

---

[3] For example, the Complaint alleges that "[a]pproximately 97% of the actual and projected amount of the assessments by the [Associations] was for *reimbursement of losses claimed by issuing banks* [as a result of the data breach]." Complaint, Doc. # 9, at ¶ 30 (emphasis added).

Schnucks also implies that the term "issuer reimbursement fees" (a specific kind of Third Party Fee) also does not relate to a data compromise event (*aka* data breach) because it is *also* used in the context of "Chargebacks." (Plaintiff's Brief, Doc. # 44, at 16).[4] Schnucks' untenable interpretation syllogism appears to be that, because "issuer reimbursement fees" are used by MasterCard in the context of "Chargebacks," and a "Chargeback" *may* occur without a data breach, those fees are not related to a data breach, even though those fees are also included in "Third Party Fees," and even though those fees were, in fact, assessed as a result of Schnucks' data breach (as admitted in the Complaint). The frivolity of Schnucks' argument (that issuer reimbursement fees are unrelated to data breaches) is demonstrated further by the fact that the term "issuer reimbursements" specifically appears in the Operating Procedures as one of the assessments that arise out of a data compromise event. Exhibit C to Defendants' Motion, Doc. # 37, Operating Procedures at § 4.9.

Plaintiff's opposition and cross-motion offer no reason why the contract should not be enforced as written. *See, e.g.*, *Turner v. Sch. Dist. of Clayton*, 318 S.W.3d 660, 670 (Mo. 2010) (en banc) (per curiam) (requiring the enforcement of unambiguous contracts in accordance with

---

[4] Plaintiff's attempt to link "issuer reimbursement fees" and "Chargebacks" is a red herring. First, Plaintiff cites to instances from the MasterCard Rules where issuer reimbursement fees are used "in the context of" Chargebacks – but fails to provide a corresponding example for Visa. Plaintiff's Brief, Doc. # 44, at 16. Thus, it is far from "abundantly clear" that the MSA exclusively uses the term "issuer reimbursement fees" in the limited way that Plaintiff suggests. Indeed, based on the plain language of the MSA, Chargebacks are not issuer reimbursement fees at all. Rather, Chargebacks are disputes over transaction amounts submitted by a merchant – in other words, the reversal of a dollar amount. Exhibit B, Bankcard Addendum at § 14. *See also* VISA WEBSITE, *Dispute Resolution*, http://usa.visa.com/merchants/merchant-support/dispute-resolution/index.jsp (last visited Jun. 26, 2014). There is nothing in the plain language of the MSA describing "Chargebacks" as "fees."

their written terms). The exception to the limitation of Schnucks' liability expressly applies to Third Party Fees and, therefore, applies to the Associations' issuer reimbursement assessments.

### 2. "Fees," "fines," and "penalties" are also used in the parties' contract to refer to assessments by the Associations for PCI non-compliance and data breaches

In addition to exempting Third Party Fees from the limitation on liability provision, "fees, fines or penalties" assessed by the Associations are also excluded from that limitation on liability. Exhibit A, MSA at § 5.4. As with Third Party Fees, Missouri law requires that the meaning of "fees, fines, and penalties" be ascertained by *reading the contract as a whole and viewing the terms in their proper context*. *Tuttle*, 21 S.W.3d at 11; *Rathbun*, 93 S.W.3d at 778.

The terms "fees," "fines," and "penalties" are used throughout the MSA to mean assessments by "Third Parties" – the Associations – related to data compromise events, as well as assessments that can be levied by the Associations in response to specific instances of misfeasance or Schnucks' failure to be data security compliant under the payment card industry ("PCI") requirements.[5] For example:

- Schnucks agrees to pay for "any **fines, fees, or penalties** imposed by [the Associations] with respect to [Schnucks'] negligent acts or omissions." *See* Exhibit B, Bankcard Addendum at § 13.5 (emphasis added); and

- Schnucks is solely and exclusively liable for "**any and all fines** levied [by the Associations] for [Schnucks'] non-compliance" with PCI data security requirements. *See* Exhibit B, Bankcard Addendum at § 25 (emphasis added).

---

[5] Indeed, to accept Plaintiff's proposed interpretation (*i.e.*, that Schnucks' liability is limited with respect to the consequences of a data breach *caused* by Schnucks' *own failure* to follow data security protocols) is akin to rewarding Schnucks for not being PCI compliant. Courts across the country have rejected this position in similar cases. *See e.g.*, "Data Breach: From Notification to Prevention using PCI DSS," Abraham Shaw, 43 *Columbia J. L. & Soc. Probs.* 517, 548-550 (Summer 2010) (discussing the 2008 TJX settlement with financial institutions and suggesting that the burden for these losses should stay with the merchant, because the merchant is in the best position to prevent them in the first place).

The applicable Operating Procedures then explicitly repeat what is already crystal clear from the foregoing provisions:  Schnucks is responsible to pay for all assessments by the Associations related to a "Data Compromise Event."  *See* Exhibit C, Operating Procedures at § 4.9.  Accordingly, the fully integrated agreement includes within "fees," "fines," and/or "penalties" the assessments by the Associations arising out of Schnucks' PCI non-compliance and resulting data breach.  The $500,000 limitation's exception in Section 5.4 – which covers "fees," "fines," and "penalties," as well as "Third Party Fees" as discussed above – applies to *all* of the Associations' assessments for Schnucks' data breach.  These assessments are simply not subject to the limitation on liability.

Plaintiff argues that, because "the stand-alone terms of fees, fines, and penalties are not defined in the contract, they should be given their ordinary meaning."  Plaintiff's Brief, Doc. # 44, at 13-17.  Plaintiff then proceeds to ignore all of the provisions of the MSA, the Bankcard Addendum, and the Operating Procedures, quoted and discussed above, to reckon that "fees" can *only* mean "a sum paid or charged for a service."  *Id.* at 17 (citations omitted).  In like fashion, Plaintiff surmises that "fines" and "penalties" are collectively limited to sums "imposed as punishment."  *Id*. (citations omitted).  After wholly ignoring all other contract provisions, and asking the Court to simply *assume* that issuer reimbursements could never be characterized as sums "charged for a service" (fee) or "imposed as a punishment" (fine or penalty), Plaintiff insupportably concludes that "liability for losses to reimburse issuers for actual fraud and operating expense losses does not meet the ordinary meaning of a fee, fine, or penalty."  *Id.*

Schnucks, of course, fails to read the plain language of the contractual definition of Third Party *Fees*, which includes "all *fees and charges* . . . without limitation, of [the Associations]."  Exhibit B, Bankcard Addendum at § 13.3 (emphasis added).  The term "Third Party Fees" on its

8

face therefore encompasses not only fees, but also "charges" assessed by the Associations against Defendants, "without limitation." *Id*. Thus, even if Plaintiff's proffered "plain meaning" definition of "fees" were accurate, the inclusion of the words *charges* and "without limitation" create additional explicitness for the inclusion of issuer reimbursements in "Third Party Fees" that are exempt from the limitation on liability.

Further, according to the Bankcard Addendum to the MSA, "fees" also specifically includes sums "imposed on [Defendants] . . . [resulting from the] "negligent acts or omissions of [Schnucks]." Exhibit B at § 13.5. Thus, the term "fees" also applies to an assessment imposed by a third party on Defendants related to Plaintiff Schnucks' negligent act or omission, such as non-compliance with security standards that result in a data breach. That is *precisely* how and why the Associations' fees arise in this case – as assessments imposed on Defendants related to Schnucks' PCI non-compliance and resulting data breach. "Fees" is simply not a term limited in the vacuumed manner that Plaintiff suggests.

The same is true regarding the so-called "ordinary meanings" of "fines" and "penalties" that Plaintiff proffers. The fully integrated MSA provides that fines and penalties can be assessed by the Associations in connection with Schnucks' PCI non-compliance and resulting data breaches. *See e.g.*, Exhibit B, Bankcard Addendum at § 25; Exhibit C, Operating Procedures at § 4.9. There is nothing in the plain language of the contract that distinguishes fines or penalties (which are excluded from the limitation of liability provision) from reimbursements to the issuing banks assessed because of Schnucks' data compromise event. To the contrary, as mentioned above, Plaintiff's Complaint recognizes and admits that issuer reimbursements are assessed by the Associations in a punitive context following a data compromise event. *See* Complaint at ¶ 27 ("If the [Associations] believe a merchant *was not*

9

*fully [PCI] compliant at the time of the [data compromise] event . . . [and the event] includes data from the magnetic strip of payment cards, [the Associations] both issue assessments against the merchant's acquirer for the stated purpose of reimbursing banks that issued payment cards . . .").* These assessments are "fees, fines or penalties" that, under the plain language of the MSA, are excluded from the limitation on Plaintiff's liability.

> **B.   To Be Effective, the Exception to the
> Limitation of Liability Provision Need Not "List"
> By Name Each "Form of Monetary Amount," as Plaintiff Contends.**

Plaintiff argues that, because the Paragraph 5.4 exception to the limitation on liability does not specifically list, by name, "all forms of monetary amounts" related to a data compromise event, then that exception is completely inert and ineffective. Plaintiff's Brief, Doc. # 44, at 17-18. Plaintiff thus unabashedly offers an interpretation to render the exception devoid of meaning and leading to an absurd result, wholly outside of the parties' intent that is evidenced by the written terms of the contract. *See Avemco Ins. Co. v. Auburn Flying Service, Inc.* 242 F.3d 819, 830 (8th Cir. 2001) ("[W]hile terms in a contract ordinarily should be given their plain, natural and ordinary meaning, that rule does not operate if it leads to an unreasonable or absurd result or if it defeats the parties intention and purpose in entering into the contract"); *State ex rel. Missouri Highway and Transp. Com'n v. Maryville Land Partnership*, 62 S.W.3d 485, 491-92 (Mo. App. E.D. 2001) (contract interpretation should avoid a result that renders terms and provisions meaningless).

Plaintiff cites no Missouri authority, nor is there any, for the proposition that an exclusion to a limitation on liability clause must specifically list each conceivable source of liability it seeks to exclude. Schnucks' contention simply does not comport with Missouri's principles of contract interpretation, which require contracts to be interpreted *as a whole and in context*, and

then enforced as written.  *See* Defendants' Brief, Doc. # 38, at 9-10 (citations omitted).  The MSA's exception does not need to identify, by name, the operating regulation programs (GCAR and ADCR) – or any other possible "source of liability" – because it intentionally uses broad, unambiguous, and defined terms, such as "Third Party Fees," and "fees, fines or penalties" to detail the exception to the limitation on liability.  The parties' agreement – when read as a whole and in context – demonstrates as a matter of law that "Third Party Fees" and "fees, fines or penalties" encompass the Associations' assessments resulting from Schnucks' data breach.  Accordingly, the Court should grant Defendants' Motion for Judgment on the Pleadings.

### III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their Motion for Judgment on the Pleadings; deny Plaintiff's Cross-Motion for Judgment on the Pleadings; dismiss Plaintiff's Complaint with prejudice; and grant judgment to Defendants on their Counterclaim by issuing the requested declaratory judgment.

                                              Respectfully Submitted,

                                              **FOX ROTHSCHILD LLP**

Dated:  June 26, 2014                  By:     */s/ Joshua Horn*
                                                Joshua Horn (admitted *pro hac vice*)
                                                Amy C. Purcell (admitted *pro hac vice*)
                                                FOX ROTHSCHILD LLP
                                                2000 Market Street, 10th Floor
                                                Philadelphia, PA 19103
                                                215-299-2000
                                                Fax: 215-299-2150
                                                Email: jhorn@foxrothschild.com
                                                Email: apurcell@foxrothschild.com

                                                ATTORNEYS FOR DEFENDANTS AND
                                                COUNTERCLAIM PLAINTIFFS FIRST DATA
                                                MERCHANT SERVICES CORP. AND CITICORP
                                                PAYMENT SERVICES, INC.

**Lucy T. Unger**, #36848
**Patrick I. Chavez**, #47732MO
Bank of America Tower
100 North Broadway, 21st Floor
St. Louis, Missouri 63102
314/345-5000
314/345-5055 (FAX)
lunger@wvslaw.com
pchavez@wvslaw.com

**Nicholas T. Solosky** (admitted *pro hac vice*)
FOX ROTHSCHILD LLP
1030 15th Street, N.W.
Suite 380 East
Washington, DC 20005
202-461-3100
Fax: 202-461-3102
Email: nsolosky@foxrothschild.com