# EXHIBIT A

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| SCHNUCK MARKETS, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No.  4:13-CV-2226-JAR |
| v. | : | |
| | : | The Honorable John A. Ross |
| FIRST DATA MERCHANT DATA | : | |
| SERVICES CORP., and | : | |
| CITICORP PAYMENT SERVICES, INC., | : | |
| | : | |
| Defendants. | : | |

**SUR-REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS AND OPPOSITION
TO PLAINTIFF'S CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendants/Counterclaim-Plaintiffs First Data Merchant Services Corp. ("First Data")

and Citicorp Payment Services, Inc. ("Citicorp") (collectively, the "Defendants") submit this

Sur-Reply Memorandum in accordance with Local Rule 7-4.01(C) to address

Plaintiff/Counterclaim-Defendant Schnuck Markets, Inc.'s ("Schnucks" or "Plaintiff") improper

reliance on regulations created after the execution of the parties' contract.  As set forth more

fully below, this Court should disregard Plaintiff's arguments relying on the *current* Visa Global

Compromised Account Recovery ("GCAR") operating program.  The Court should also reject

the Plaintiff's out of context reliance on certain provisions of GCAR and the corresponding

MasterCard Account Data Compromise Recovery ("ADCR") operating program.[1]

---

[1]    The Visa GCAR and MasterCard ADCR programs contain a process used to determine
an acquiring bank's financial responsibility arising out of a merchant's data compromise event.
As detailed below, the acquiring bank's financial responsibility here is assessed through fines or
penalties that fall within the exception to the limitation of liability under Section 5.4 of the MSA.

## I.    INTRODUCTION

Plaintiff's Cross-Motion for Judgment on the Pleadings relies on the *current version* of Visa's International Operating Regulations ("VIOR") (including Visa's *current* GCAR program) and MasterCard's ADCR to interpret the exception to the limitation of liability found in Section 5.4 of the MSA. *See* Plaintiff's Brief, Doc. # 44, at 9-10, 15-18; Plaintiff's Reply Brief, Doc. # 52, at 6-7. The Court should disregard Plaintiff's improper reliance for two glaring reasons: First, neither the *current* VIOR nor Visa's *current* GCAR operating program existed when the parties negotiated and executed the MSA. Accordingly, the *current* program cannot legitimately be used to interpret the parties' intent when they drafted Section 5.4 of the MSA. Second, Plaintiff improperly relies on the language from the GCAR and ADCR programs in a self-serving and out of context manner, rendering that reliance meaningless.

## II.    ARGUMENT

### A.    Plaintiff improperly relies upon the Visa GCAR program to argue the parties' "intent" in drafting the MSA because it did not exist at the time of contract formation.

The cardinal principal of contract interpretation under Missouri law is to ascertain and give effect to the intention of the parties at the time of contract formation. *Butler v. Mitchell–Hugeback, Inc.*, 895 S.W.2d 15, 21 (Mo. banc 1995). Here, the intent of the parties must be measured at the time of contract formation; namely, October 6, 2011 – the effective date of the contract. *See* Complaint, Doc. # 9, at ¶ 16.

Defendants recently ascertained that Plaintiff's Cross-Motion for Judgment on the Pleadings relies on parsed language from the Visa operating regulations and program procedures that *were not in effect* when the parties signed the MSA. Specifically, Plaintiff repeatedly relies on the VIOR (dated October 15, 2012) and GCAR operating program. *See* Plaintiff's Brief, Doc.

2

# 44, at 9, *n.* 6 (October 15, 2012 effective date for VIOR). Given the effective date for the VIOR that Plaintiff relies upon, that reliance is flawed.[2]

Plaintiff's arguments are largely premised on Defendants' supposed failure to consider the language of the GCAR program when the parties drafted the exception to the limitation of liability contained in Section 5.4 of the MSA. *See e.g.*, Plaintiff's Brief, Doc. # 44, at 18 (arguing that "[Defendants] could have inserted assessments according to the GCAR. . . regulations" in to the written exception). Simply stated, it would have been *impossible* for Defendants to have deployed language from the GCAR program into the MSA because it did not exist at the time the contract was drafted. *See Principal Mutual Life Ins. Co. v. Karney*, 5 F.Supp.2d 720, 729 (E.D. Mo. 1998) (stating that the focus for intent must be on "the circumstances surrounding the formulation and execution of the contract"). Accordingly, the Court should disregard Plaintiff's reliance on the current day program because that could not have framed the parties' intent when they drafted the contract. *See Butler*, 895 S.W.2d at 21 (discussing the important role of the parties' intent to contract interpretation under Missouri law).

The effect, if any, of Visa's regulations and operating program on the parties' contractual intent can only be ascertained by viewing them as of October 6, 2011. The then non-existent GCAR provision that Plaintiff now relies upon replaced Visa's ADCR program in October 2012. Exhibit 1 (Visa April 2011 Operating Regulations). Importantly, the applicable 2011 Visa ADCR program was subject to a preamble reference to the terms "fines" and "penalties" that Visa used to characterize Visa's authority to impose *all assessments* (such as financial

---

[2]    Plaintiff's reliance on the Visa GCAR program is also glaring because, at the time of contract formation, the Visa program was known as ADCR.

3

responsibility for a data breach) on an acquiring bank based on its merchant's conduct. The preamble provides:

> **Operating Regulations Compliance and Enforcement**
> **Fines and Penalties – General**
> **Visa Right to Fine**
>
> The Visa International Operating Regulations contain <u>enforcement mechanisms that Visa may use for violations of the Visa International Operating Regulations</u>. The Operating Regulations also specify the procedure for the allegation and investigation of violations and the rules and schedules for <u>fines and penalties</u>.
>
> <u>Visa may levy fines and penalties as specified in the Visa International Operating Regulations. Visa officers will enforce these fines and penalties</u>.
>
> These procedures and <u>fines</u> are in addition to enforcement rights available to Visa under other provisions of the Visa International Operating Regulations, the applicable Certificate of Incorporation and Bylaws, or through other legal or administrative procedures.

*Id.* at 59 (underlined emphasis added).[3] Visa's use of the terms "fines and penalties" as a preamble to the ADCR program illuminates the intent behind the parties' use of "fees, fines or penalties" assessed by Visa and MasterCard (collectively, the "Associations") as an exclusion from the Section 5.4 limitation on liability. *See* Exhibit A to Defendants' Motion, Doc. # 37, MSA at § 5.4. In other words, the parties intended that any and all assessments by the Associations in enforcing their rules and regulations, as the Associations themselves described them as "fines and penalties", are Schnucks' responsibility without limitation.

---

[3]     The distinction between the 2011 Visa ADCR and 2012 GCAR program is also apparent from the structural change in the VIOR from 2011 to 2012. In the 2011 VIOR, the ADCR program fell under the general "Counterfeit Losses" provisions. *See* Exhibit 1 at 758-59. In October 2012, the new GCAR operating program fell under its own data breach heading.

4

**B.    Plaintiff's out of context reliance on the GCAR and**
**ADCR operating programs renders that reliance meaningless.**

The Court should also disregard Plaintiff's reliance on language in the respective Visa

GCAR and MasterCard ADCR operating programs in general because Plaintiff cherry-picked

provisions for a self-serving purpose in violation of Missouri's principals concerning contract

interpretation. *Tuttle v. Muenks*, 21 S.W.3d 6, 11 (Mo. App. W.D. 2000) (under Missouri law,

contracts must read as a whole and interpreted in context); *see* Plaintiff's Brief, Doc. # 44, at 9,

*n*. 6 and *n*. 7 (purporting to provide the "relevant portions" of the VIOR and MasterCard Security

Rules and Procedures and ADCR).  When read in proper context, the Visa ADCR (or current

GCAR) and/or MasterCard's ADCR are only operating programs and procedures that the

Associations use to calculate the fines and penalties levied against an acquiring bank as a result

of its' merchant's violations of the various security rules.  They are not characterizations of the

*nature* of the financial responsibility itself, as Plaintiff suggests in its Cross-Motion. *See e.g.*

Plaintiff's Reply Brief, Doc. # 52, at 6-7.[4]

---

[4]    Plaintiff's Reply Brief misinterprets the decision in *Genesco, Inc. v. Visa U.S.A., Inc.*,
2013 WL 3790647 (M.D. Tenn. July 18, 2013) as standing for the proposition that the fines at
issue here are not "fees, fines or penalties", because Visa itself considers its assessments against
acquiring banks following data compromise events to be "valid liquidated damages and not an
unenforceable penalty."  Doc. # 52 at 4, *n*. 3.  This is simply not the case because that court
actually repeatedly refers to those assessments as "fines."  *See e.g.*, *Genesco*, 2013 WL 3790647
at *1 (discussing "Visa's fines and assessments against the [acquiring] banks").  The issue of
liquidated damages in *Genesco* only arose in the limited context of California law, which
requires that the fines be an accurate valuation of the "liquidated damages" suffered by the credit
card Associations – not merely an arbitrary penalty.  *Id.* at *10 (stating that the characterization
of Visa's assessments as liquidated damages "is predicated upon the allegations that the amounts
do not represent the actual damages Visa incurred by reason of the Acquiring Banks' alleged
failures to cause Genesco's alleged noncompliance with PCI DSS requirements").  California
law is not at issue here, making Plaintiff's citation to *Genesco* misplaced.

By reading the GCAR and ADCR provisions out of context, Plaintiff improperly places the onus on Defendants to have included that specific language into the Section 5.4 exception to the limitation of liability. *See* Plaintiff's Reply Brief, Doc. # 52, at 6-7. When, however, the GCAR and ADCR are read in context, it is apparent that these provisions merely detail the processes and procedures that the Associations use to assess financial responsibility (*i.e.* fines and penalties) for a data breach. *See generally* Exhibit 1 (establishing the framework for Visa's right to enforce assessments related to a data breach). A process and procedure simply cannot define the *nature* of the financial responsibility that the Associations impose as a result of a data compromise event. As such, the Court should disregard Plaintiff's slanted reading of the operating programs, deny the Cross-Motion, and grant Defendants' Motion for Judgment on the Pleadings.

## III.    <u>CONCLUSION</u>

Based upon the forgoing, this Court should: disregard Plaintiff's arguments concerning the Visa GCAR and MasterCard ADCR operating regulation programs; grant Defendants' Motion for Judgment on the Pleadings; and deny Plaintiff's Cross-Motion.

Respectfully Submitted,

FOX ROTHSCHILD LLP

Dated: July 18, 2014

By:   _/s/ Joshua Horn_____
Joshua Horn (admitted *pro hac vice*)
Amy C. Purcell (admitted *pro hac vice*)
FOX ROTHSCHILD LLP
2000 Market Street, 10th Floor
Philadelphia, PA 19103
215-299-2000
Fax: 215-299-2150
Email: jhorn@foxrothschild.com
Email: apurcell@foxrothschild.com

ATTORNEYS FOR DEFENDANTS AND
COUNTERCLAIM PLAINTIFFS FIRST DATA
MERCHANT SERVICES CORP. AND CITICORP
PAYMENT SERVICES, INC.

**Lucy T. Unger**, #36848
**Patrick I. Chavez**, #47732MO
Bank of America Tower
100 North Broadway, 21st Floor
St. Louis, Missouri 63102
314/345-5000
314/345-5055 (FAX)
lunger@wvslaw.com
pchavez@wvslaw.com

**Nicholas T. Solosky** (admitted *pro hac vice*)
FOX ROTHSCHILD LLP
1030 15th Street, N.W.
Suite 380 East
Washington, DC 20005
202-461-3100
Fax: 202-461-3102
Email: nsolosky@foxrothschild.com

7