UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SCHNUCK MARKETS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 4:13CV2226 JAR |
| FIRST DATA MERCHANT DATA SERVICES CORP., and CITICORP PAYMENT SERVICES, INC. | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF SCHNUCK MARKETS, INC.'S MOTION FOR LEAVE TO FILE A RESPONSE TO DEFENDANTS' SUR-REPLY MEMORANDUM

Plaintiff/Counterclaim-Defendant Schnuck Markets, Inc. ("Schnucks"), by and through their counsel of record, move this Court pursuant to Local Rule 7-4.01(C) for leave to file a response to Defendants/Counterclaim-Plaintiffs First Data Merchant Services Corp. and Citicorp Payment Services, Inc. (collectively, the "Defendants") Sur-Reply Memorandum (Doc. # 53).

Schnucks respectfully requests leave to file a response to Defendants' Sur-Reply Memorandum to address new arguments that Defendants raise for the first time in their Sur-Reply.

A copy of Schnucks' proposed response memorandum is annexed to this Motion as Exhibit A. If the Motion is granted, Schnucks will file and serve the memorandum in accordance with the procedures established by the Court.

In support of the instant Motion, Schnucks state as follows:

1. Defendants filed their Motion for Judgment on the Pleadings (Doc. #37) on May 19, 2014.

2. Schnucks filed a Partial Cross-Motion for Judgment on the Pleadings and Opposition to Defendants' Motion for Judgment on the Pleadings (Doc. # 43) on June 9, 2014.

3. The parties subsequently exchanged reply memoranda in support/opposition concerning their respective Motions. (Doc. # 49 and # 52).

4. Defendants filed a Motion for Leave to File a Sur-Reply Memorandum on July 18, 2014 (Doc. #53).

5. On July 21, 2014, the Court granted Defendants' Motion for Leave and the Sur-Reply was filed that day (Doc. # 54 and # 55).

6. Defendants make two arguments for the first time in their Sur-Reply: (1) that Schnucks relied on certain Visa regulations and operating program (GCAR) that were not in effect when the parties entered into the subject contract; and (2) that Schnucks provided the Court with only certain, self-serving, provisions from the operating programs.

7. Schnucks seeks leave to file a response to these new arguments that Defendants raise for the first time in their Sur-Reply.

8. Defendants' new arguments, which could have been made in their prior briefs but were not, do not withstand minimal scrutiny. Defendants' Sur-Reply is full of mischaracterizations, omissions, and conclusory assertions that, without prejudice, cannot be left unaddressed.

9. To be fair, Defendants make two correct statements in the Sur-Reply, one is that Visa changed the name of its issuer loss liability program from ADCR to GCAR in 2012 and the other is that Visa's rules contain a general fines and penalties section. Defendants did not and cannot, however, show that either supports their attempt to rewrite the contract after the fact to make Third Party Fees or fees, fines, and penalties mean the same thing as liability for issuing bank losses. Rather, to get from the two statements to their result-driven, non-textual interpretation, Defendants make the following mischaracterizations, omissions, and conclusory assertions:

(a) After explaining why the limitation of liability exception does not apply to liability for issuer losses, Schnucks' prior briefs listed three examples of how Defendants could have written the contract differently if they wanted the exception to mean what they now claim it

2

means. Defendants mischaracterize one-half of one of those examples (they ignore the other half of the example because MasterCard's ADCR program did not have a name change) as the primary premise of Schnucks' argument so they can incorrectly criticize Schnucks' argument for being based on a program they contend did not exist at the time the contract was signed.

(b) Defendants fail to acknowledge that the change from ADCR to GCAR was just a name change—when Visa's program was named ADCR in 2011 it still defined how Visa would determine the amount of issuing bank losses for which acquirers could be liable. Schnucks should have used the former Visa program name in its example, but the example is still valid. There are no material differences between the Visa ADCR program and GCAR program. Beyond the failed attempt to create a "gotcha" moment, Defendants' Sur-Reply does not offer a rebuttal on the merits to this example or the other two.

(c) Defendants mischaracterize a general fines and penalties section in Visa's rules as a "preamble" to the 2011 ADCR program even though it stands as its own section, is not called a preamble, is separated from the ADCR rules by over 700 pages, states that it functions in addition to other enforcement provisions, and language in the ADCR rule shows that it is not subject to the general fines and penalties section.

(d) Defendants' mislabeled the Visa general fines and penalties section "as a preamble to the ADCR program" so they could make a disjointed, incomplete, and flawed argument that the exception applies by deceptively implying a relationship (that does not actually exist in the rules) between Visa recovering actual issuer losses under the ADCR program and Visa's general ability to assess a fine or penalty for not complying with a Visa rule.

(e) Defendants summarily contend that reading the GCAR and ADCR rules "in context" shows that they are only process and procedure rules and, thus, "simply cannot" define the nature of the liability imposed. Defendants are wrong—the GCAR and ADCR rules create and define the liability of acquirers for issuer losses, in addition to identifying how the liability is calculated. Without the GCAR and ADCR rules, there would be no basis in the Visa or MasterCard rules for acquirer liability for issuer losses. Moreover, Visa and MasterCard distribute the amount they

3

collect under those programs to affected issuers, which is in contrast to the fines and penalties that Visa and MasterCard retain for themselves.

10. Leave to file the proposed response memorandum should be granted in order to allow Schnucks to address Defendants' new arguments raised for the first time in their Sur-Reply.

11. Defendants, who were granted leave to raise new arguments, will not be prejudiced by Schnucks' leave to reply. On the other hand, not affording Schnucks' leave to reply will result in prejudice.

WHEREFORE, for all of the aforementioned reasons, Plaintiff Schnuck Markets, Inc. respectfully requests that this Honorable Court grant its Motion for Leave to file a response memorandum in the form of the proposed memorandum annexed hereto as Exhibit A.

Dated: July 25, 2014

Respectfully submitted,

By: /s/ *Kevin F. Hormuth*
Kevin F. Hormuth, No. 48165 MO
David P. Niemeier, No. 50969 MO
GREENSFELDER, HEMKER & GALE, PC
10 South Broadway, Suite 2000
St. Louis, MO  63102
kfh@greensfelder.com
dpn@greensfelder.com
Telephone: 314.241.9090
Facsimile: 314.345.5466

Craig A. Hoffman (*pro hac vice*)
cahoffman@bakerlaw.com
Telephone:  513.929.3491
Facsimile:  513.929.0303

*Attorneys for Plaintiff Schnuck Markets, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on the 25th of July, 2014, the foregoing *Motion for Leave to File a Response to Defendants' Sur-Reply Memorandum* was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By:       /s/ *Kevin F. Hormuth*           
Kevin F. Hormuth