UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SCHNUCK MARKETS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:13-cv-2226-JAR |
| | ) |
| FIRST DATA MERCHANT DATA | ) |
| SERVICES CORP. AND CITICORP | ) |
| PAYMENT SERVICES, INC., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS FIRST DATA MERCHANT SERVICES
CORP.'S AND CITICORP PAYMENT SERVICES, INC.'S MOTION
FOR PARTIAL RECONSIDERATION OF ORDER GRANTING PLAINTIFF'S
PARTIAL CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS OR,
IN THE ALTERNATIVE, MOTION FOR LEAVE TO AMEND PLEADINGS**

Defendants First Data Merchant Services Corp. ("First Data") and Citicorp Payment Services, Inc. ("Citicorp") (collectively, "Defendants") hereby respectfully move, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, for partial reconsideration of the Court's January 15, 2015 Memorandum and Order [Doc. No. 69] (the "Order"), entered on the parties' cross-motions for judgment on the pleadings, *solely regarding the Court's granting of Plaintiff Schnuck Markets, Inc.'s ("Plaintiff") Cross-Motion for Judgment on the Pleadings [Doc. No. 43] ("Plaintiff's Motion")*. In the alternative, Defendants move for leave to amend their pleadings pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure. In support of the instant Motion, Defendants state as follows:

WEIL:\95241346\3\45382.0009

1.      On November 4, 2013, Plaintiff filed the Complaint [Doc. No. 9] against Defendants asserting causes of action for breach of contract and declaratory judgment.

2.      On January 21, 2014, Defendants filed their Answer, Affirmative Defenses, and Counterclaim [Doc. No. 20].

3.      The parties' dispute stems from a data breach of Plaintiff's payment and card processing systems between late 2012 and early 2013.  After investigation, an independent forensic examiner selected by Plaintiff determined that Plaintiff's failure to comply with payment and card industry data security standards ("PCI DSS") led to the breach.

4.      The parties' Agreement, comprised of the October 2011 Master Services Agreement between First Data and Plaintiffs (the "MSA"), the October 2011 Citi Merchant Services Bankcard Addendum to Master Services Agreement (the "Bankcard Addendum"), and the Operating Procedures, contemplates that the risks and liabilities associated with a data breach ultimately would be passed from the banks that issued the impacted Visa and MasterCard credit and debit cards to Plaintiff – the party responsible for, and in the best position to have prevented, the breach.

5.      The parties filed cross-motions for judgment on the pleadings, with each side requesting declaratory judgment concerning the applicability of the provisions of § 5.4 of the MSA to the liabilities arising from Plaintiff's data breach.

6.      Defendants sought a declaration that the express carve-out in the last sentence of the limitation of liability provisions of § 5.4 of the MSA – prescribing unlimited liability to Plaintiff with respect to, *inter alia*, third party fees, charges, fines and penalties – applied to assessments made by Visa and MasterCard due to Plaintiff's failure to comply with PCI DSS requirements and the resulting data breach.  *See* Memorandum in Support of the Motion for

2

Judgment on the Pleadings of First Data and Merchant Services Corp. and Citicorp Payment Services, Inc. [Doc. No. 38] at 15.

7. Plaintiff sought a declaration that its liability for its data breach under the Agreement was limited only to $500,000 under another provision of § 5.4, and that the maximum amount Defendants could hold in a reserve account due to the breach was limited to the amount of any current or anticipated fines or fees by Visa and MasterCard. *See* Plaintiff/Counterclaim Defendant Schnuck Markets, Inc.'s (1) Memorandum in Opposition to Defendant/Counterclaim Plaintiffs' Motion for Judgment on the Pleadings; and (2) Memorandum in Support of its Partial Cross-Motion for Judgment on the Pleadings [Doc. No. 44] at 4.

8. On January 15, 2015, the Court entered the Order granting Plaintiff's Motion and denying Defendants' motion for judgment on the pleadings.

9. Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, Defendants now move for reconsideration of the Order, *only* as to the Court's grant of Plaintiff's Motion. Under Rule 54(b), courts have discretion in deciding whether to reconsider an interlocutory order to correct any clearly or manifestly erroneous findings of fact or conclusions of law. Here, the Order's (i) failure to view the pleadings in Defendants' favor, (ii) reliance on extrinsic evidence, and (iii) violation of fundamental contract construction principles constitute manifest errors of law and fact warranting reconsideration.

10. First, in deciding a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), courts are required to accept as true all facts pleaded by the non-moving party and grant all reasonable inferences in favor of the non-moving party.

11. Here, the Order overlooked express allegations in Defendants' pleadings (*see* Order at 6, 16) regarding Plaintiff's negligence and its own actions or inactions as the cause of

3

Plaintiff's claimed damages in Defendants' Ninth and Tenth Affirmative Defenses. *See* Answer of Defendants First Data Merchant Services Corp. and Citicorp Payment Services, Inc. With Affirmative Defenses and Counterclaim [Doc. No. 20] at 9.

12.   The order also overlooked express allegations from Plaintiff's *own Complaint* which raised the $3,000,000 limitation of liability due to PCI DSS non-compliance. *See, e.g.*, Complaint [Doc. No. 9] ¶¶ 27-28 (alleging MasterCard assessed case management fee against Plaintiff, which occurs "[if] the Networks believe a merchant was not fully compliant with PCI DSS at the time of the event"); *id.* ¶¶ 20-22 (alleging that breaches of Section 25 of the Bankcard Addendum, related to PCI DSS non-compliance, were captured by the higher limitation of liability in Section 5.4 of the MSA).

13.   Despite the allegations in the pleadings regarding Plaintiff's negligence and PCI DSS non-compliance, and the circumstances in which the $3,000,000 limitation of liability in the Agreement applies, the Order concluded that Plaintiff's PCI DSS non-compliance or negligence was not asserted. The failure to accept as true all facts alleged by Defendants and draw all reasonable inferences from the parties' pleadings in Defendants' favor necessitates reconsideration.

14.   Second, when considering a motion for judgment on the pleadings, courts must ignore materials outside the pleadings.

15.   In the Order, the Court placed heavy reliance on the Association Rules[1] (*see* Order at 2, 9), which are neither part of the pleadings nor part of the Agreement. These extrinsic materials were included with briefing on Plaintiff's Motion and are not part of any party's

---

[1] *See* Bankcard Addendum, Annex 1 at 1.2 (defining "Association Rules" as "the rules, regulations, releases, interpretations and other requirements (whether contractual or otherwise) imposed or adopted by any Association").

4

pleadings in this case, are not exhibits to any party's pleadings, are not part of the record in this case, and are not a matter of public record.

16. The Court's reliance on the Association Rules also violated the fundamental contract construction principle that courts should not go beyond the four corners of an unambiguous contract to construe its terms. Here, the MSA, Bankcard Addendum, and Operating Procedures constitute the entire agreement between the parties. Order at 2; MSA ¶ 17; Bankcard Addendum § 26.3. The Association Rules are not incorporated in the Agreement.

17. Moreover, the version of the Association Rules excerpted by Plaintiff in its briefing were not in existence at the time of contracting and, thus, could not have any relevance to the Court's effort to discern the parties' intent. Under Missouri law, a court must ascertain and give effect to the intention of the parties *at the time of contract formation* – here, October, 2011.

18. Because matters outside of the pleadings were presented to and considered by the Court, Federal Rule of Civil Procedure 12(d) required that the Court convert Plaintiff's Motion into one for summary judgment and provide Defendants with an opportunity to present facts and evidence outside the pleadings that would have been relevant to resolution of Plaintiff's Motion.

19. For example, Defendants would have presented the Court with, among other things: (i) the invoice Citicorp received from MasterCard, which expressly denominated the various assessments resulting from Plaintiff's data breach as "charges";[2] (ii) correspondence from Plaintiff to MasterCard, in which Plaintiff repeatedly characterized as a "penalty"

---

[2] *See* Nov. 3, 2013 MasterCard International Invoice to Citicorp, a copy of which is attached hereto as Exhibit "A." Defendants have redacted competitively sensitive and confidential financial information from Exhibit A and are filing concurrently herewith an unredacted copy of Exhibit A, which will be hand-delivered to the Court for its information and consideration, with their Motion to File Confidential Information Under Seal (the "Motion to File Under Seal").

5

MasterCard's liability assessments issued as a result of Plaintiff's data breach;[3] (iii) letters evidencing Plaintiff's PCI DSS non-compliance;[4] and (iv) documents concerning Plaintiff's successful invocation of the catastrophic loss waiver provision of the Association Rules, whereby Plaintiff avoided millions of dollars in assessments from Visa as a result of its data breach.[5]

20. The Court's decision to rely on Plaintiff's extrinsic evidence in ruling on Plaintiff's Motion was manifest error and warrants reconsideration of the Order.

21. Finally, it is a fundamental contract construction principle that all terms of a contract should be given effect. Here, the Court ignored explicit terms in the Agreement which resulted in a construction that yields a commercially unreasonable result.

22. For example, in interpreting the last sentence of § 5.4 of the MSA, which excludes "THIRD PARTY FEES" from the limitation of liability provision, the Court ignored

---

[3] *See* Aug. 15, 2013 Letter from C. Hoffman to MasterCard Worldwide, a copy of which is attached hereto as Exhibit "B." Defendants have redacted confidential financial information from Exhibit B and are filing concurrently herewith an unredacted copy of Exhibit B, which will be hand-delivered to the Court for its information and consideration, with their Motion to File Under Seal.

[4] *See, e.g.*, July 17, 2013 Letter from P. DeMars (MasterCard) to T. Oricoli (Citicorp), a copy of which is being filed under seal and hand-delivered to the Court for its information and consideration, as Exhibit "C," at 1 ("MasterCard has determined that Citicorp Payment Services, Inc. is responsible for its merchant's [Schnuck's] violation of one or more requirement of the PCI Data Security Standard."); July 18, 2013 Letter from L. Sablich (First Data) to D. Nilhaus (Schnucks), a copy of which is attached hereto as Exhibit "D," at 1 ("As you are aware, the PCI Forensic Investigation (PFI) Report dated May 29, 2013, completed by Mandiant, found conclusive evidence of a breach of the cardholder environment at Schnuck Markets Inc. ('Schnucks') and found that Schnucks was non-compliant with the Payment Card Industry Data Security (PCIDSS) requirements."). Defendants have redacted confidential financial information from Exhibit D and are filing concurrently herewith an unredacted copy of Exhibit D, which will be hand-delivered to the Court for its information and consideration, with their Motion to File Under Seal.

[5] *See* Nov. 2011 Visa GCAR Guide, a copy of which is attached hereto as Exhibit "E," at 33; Dec. 29, 2014 Letter from M. Laubsted (Visa) to K. Mattea (Citicorp), a copy of which is being filed under seal and hand-delivered to the Court for its information and consideration, as Exhibit "F" ("Because this matter qualifies under the catastrophic loss waiver provision of GCAR, the Review Team has determined there will be no assessment for this data breach event under the GCAR program.").

6

explicit language within the definition of "Third Party Fees," defined in Section 13.3 of the Bankcard Addendum, including the following bolded terms:

> ***all*** fees and ***charges*** (including increases[,] additions, or modification made thereto), ***without limitation***, of any Credit Card Association, Networks, card-issuing organization, telecommunications provider, federal, state, or local governmental authority (each a "Third Party") including, ***without limitation*** any switch fee, issuer[] reimbursement fee, adjustment fee, interchange fee, assessment fee or access fee ….

Bankcard Addendum § 13.3 (emphasis added).

23.     Although the Order quoted the full text of § 13.3 in a footnote, it never again mentioned the parties' inclusion of the expansive terms "all" or "without limitation" in the definition of "Third Party Fees," nor did it seek to give effect to those terms.  Worse yet, the Order did not *even attempt* to ascribe meaning to the term "charges" – the plain meaning of which includes, among others, "expense," "cost," "the price demanded for something," "a debit to an account," and "a financial liability."[6]

24.     Likewise, the Order adopted an unduly narrow construction of the term "fees," which it found was limited only to payments for services. *See* Order at 15-17.  While the term "fees" may be associated with payments for services, "fee" also is defined by Merriam-Webster more broadly as "an amount of money that must be paid," or "a fixed charge." *See, e.g.*, http://www.merriam-webster.com/dictionary/fee (last visited February 9, 2015).  Accordingly, the term "fee" was, at the very least, reasonably susceptible to more than one meaning, thereby necessitating denial of Plaintiff's Motion.

25.     Courts reject an interpretation of a contract which yields unreasonable results, when a reasonable construction can be adopted.  Here, the construction of the Agreement

---

[6] *See, e.g.*, http://www.merriam-webster.com/dictionary/charge (last visited Feb. 10, 2015); http://www.collinsdictionary.com/dictionary/english/charge (last visited Feb. 10, 2015); http://www.oxforddictionaries.com/us/definition/american_english/charge (last visited Feb. 10, 2015).

7

reflected in the Order yields a commercially unreasonable result, in effect making Defendants an insurer of Plaintiff for any damages, regardless of the cause, as to Plaintiff's PCI DSS non-compliance and resulting data breaches. Because Defendants did not intend to act as an insurer for Plaintiff's data breaches under the Agreement, and such a result would be commercially unreasonable, reconsideration and vacatur of the Order is warranted.

26. In the alternative, Defendants request the opportunity to amend their pleadings pursuant to Federal Rules of Civil Procedure 15(a)(2) and 16(b)(4). Courts freely give leave to amend and where, as here, there is scheduling order, good cause must be shown.

27. Defendants request for leave to amend is not attributable to a lack of diligence in attempting to meet the Court's deadlines established in the Case Management Order [Doc. No. 34]. The possibility of needing amendment arose following the Order's conclusion that Defendants did "not allege that Schnucks was either negligent or PCI DSS non-compliant" or the proper application of the $3 million limitation of liability provision under § 5.4 of the MSA, (Order at 16) and amendment would be designed to cure any such pleading deficiencies and provide clarity to the allegations in Defendants' Counterclaim.

28. Plaintiff would not be unduly prejudiced by amendment of Defendants' pleadings because (i) Defendants have not previously amended their pleadings, (ii) discovery has yet to begin, (iii) the facts that would be alleged stem from the same facts set forth in Defendants' original pleadings (and such facts are within Plaintiff's knowledge), and (iv) amendment will further clarify the issues for both the Court and the parties.

29. Defendants have submitted concurrently herewith a Memorandum of Law in Support of its Motion for Partial Reconsideration of the Court's Order or, in the Alternative,

Motion for Leave to Amend Pleadings (the "Memorandum"), which it adopts and incorporates by reference here.

30. Defendants have submitted concurrently herewith a Request for Oral Argument, requesting a hearing on this motion.

31. Defendants' counsel met and conferred with Plaintiff's counsel in good faith about the filing of the instant Motion, which Plaintiff's counsel has advised they will oppose.

## CONCLUSION

WHEREFORE, for all the aforementioned reasons, as well as those set forth in the accompanying Memorandum, Defendants First Data Merchant Services Corp. and Citicorp Payment Services, Inc. respectfully request that this Honorable Court grant their Motion for Partial Reconsideration of Order Granting Plaintiff's Partial Cross-Motion for Judgment on the Pleadings or, in the Alternative, Motion for Leave to Amend Pleadings.

Dated: February 12, 2015                    Respectfully submitted,


      /s/  Edward Soto
Edward Soto (*pro hac vice*)
edward.soto@weil.com
P. Christine Deruelle, Esq. (*pro hac vice*)
christine.deruelle@weil.com
**WEIL, GOTSHAL & MANGES LLP**
1395 Brickell Avenue, Suite 1200
Miami, Florida  33131
Telephone:     (305) 577-3100
Facsimile:     (305) 374-7159

Jonathan D. Polkes (*pro hac vice*)
jonathan.polkes@weil.com
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York  10153
Telephone:     (212) 310-8881
Facsimile:     (212) 310-8007

9

>Lucy T. Unger (No. 36848)
>lunger@wvslaw.com
>Lisa Larkin (No. 46796MO)
>llarkin@wvslaw.com
>Bank of America Tower
>100 North Broadway, 21st Floor
>St. Louis, Missouri, 63102
>Telephone:     (314) 345-5000
>Facsimile:     (314) 345-5055
>
>*Counsel for Defendants/Counterclaim-Plaintiffs First Data Merchant Data Services Corporation and Citicorp Payment Services Incorporated*

10

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing was filed electronically with the Clerk of the Court of the United States District Court for the Eastern District of Missouri using CM/ECF on February 12, 2015 and, as such, was served on all parties of record by operation of the CM/ECF system.

By: */s/  P. Christine Deruelle*
P. Christine Deruelle (*pro hac vice*)
christine.deruelle@weil.com
**WEIL, GOTSHAL & MANGES LLP**
1395 Brickell Avenue, Suite 1200
Miami, Florida  33131
Telephone:     (305) 577-3100
Facsimile:      (305) 374-7159

*Counsel for Defendants/Counterclaim-Plaintiffs First Data Merchant Data Services Corporation and Citicorp Payment Services Incorporated*