# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| SCHNUCK MARKETS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:13-cv-2226-JAR |
| | ) |
| FIRST DATA MERCHANT DATA | ) |
| SERVICES CORP. AND CITICORP | ) |
| PAYMENT SERVICES, INC., | ) |
| | ) |
| Defendants. | ) |

**FIRST DATA MERCHANT SERVICES CORP.'S AND CITICORP
PAYMENT SERVICES, INC.'S MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR PARTIAL RECONSIDERATION OF ORDER GRANTING
PLAINTIFF'S PARTIAL CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS
<u>OR, IN THE ALTERNATIVE, MOTION FOR LEAVE TO AMEND PLEADINGS</u>**

First Data Merchant Services Corp. ("First Data") and Citicorp Payment Services, Inc. ("Citicorp") (collectively, "Defendants") hereby respectfully submit this memorandum of law in support of their Motion, filed pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, for partial reconsideration of the Court's Memorandum and Order [Doc. No. 69] (the "Order"), entered on the parties' cross-motions for judgment on the pleadings, *solely regarding the Court's granting of Plaintiff Schnuck Markets, Inc.'s ("Plaintiff") Cross-Motion for Judgment on the Pleadings [Doc. No. 43] ("Plaintiff's Motion")*.[1] In the alternative, Defendants respectfully seek leave to amend their pleadings pursuant to Federal Rule of Civil Procedure 15(a)(2).

## PRELIMINARY STATEMENT

The parties' dispute stems from a data breach of Plaintiff's payment card processing systems between late 2012 and early 2013, in which its customers' Visa and MasterCard accounts were compromised. After investigation, an independent forensic examiner selected by Plaintiff determined that Plaintiff's failure to comply with payment card industry data security standards ("PCI DSS") led to the breach. In these circumstances, the parties' Agreement[2] contemplates the risks and liabilities associated with such a breach would be passed, in accordance with the Association Rules,[3] from the banks that issued the impacted Visa and MasterCard credit and debit cards, ultimately, to Plaintiff – the party responsible for, and in the best position to have prevented, the breach.

---

[1] In the Order, the Court granted Plaintiff's Motion and denied Defendants First Data Merchant Services Corp. and Citicorp Payment Services, Inc.'s Motion for Judgment on the Pleadings [Doc. No. 37]. In the instant Motion, Defendants seek reconsideration *only* of the Court's grant of Plaintiff's Motion, not the Court's denial of Defendants' motion for judgment on the pleadings.

[2] The "Agreement" is comprised of the October 2011 Master Services Agreement between First Data and Plaintiffs (the "MSA"), the October 2011 Citi Merchant Services Bankcard Addendum to Master Services Agreement (the "Bankcard Addendum") and the Operating Procedures.

[3] *See* Bankcard Addendum, Annex 1 at 1.2 (defining "Association Rules" as "the rules, regulations, releases, interpretations and other requirements (whether contractual or otherwise) imposed or adopted by any Association").

1

The parties filed cross-motions for judgment on the pleadings, with each side requesting declaratory judgment concerning the applicability of the provisions of § 5.4 of the MSA to the liabilities arising from Plaintiff's data breach.  Defendants sought a declaration that the express carve-out in the last sentence of the limitation of liability provisions of § 5.4 of the MSA – prescribing unlimited liability to Plaintiff with respect to, *inter alia*, third party fees, charges, fines and penalties – applied to assessments made by Visa and MasterCard due to Plaintiff's failure to comply with PCI DSS requirements and the resulting data breach.  In contrast, Plaintiff sought a declaration that its liability for its data breach under the Agreement was limited only to $500,000 under another provision of § 5.4, and that the maximum amount Defendants could hold in a reserve account due to the breach was limited to the amount of any current or anticipated fines or fees by Visa and MasterCard.  Even though the Court was presented with competing motions for judgment on the pleadings regarding the proper interpretation of the Agreement, it still was obliged to evaluate and rule upon each motion *independently*, applying well-established legal standards to determine whether the stringent requirements for judgment on the pleadings had been satisfied *as to each separate motion*.  However, by attempting to address both motions in a single Order, the Court's analysis of Plaintiff's Motion led to a misapplication of the governing legal standards in at least three critical ways:

*First*, the Court did not accept as true the allegations of Defendants' Answer and did not draw all reasonable inferences from the pleadings in Defendants' favor.  The Court overlooked entirely Defendants' explicit allegations concerning Plaintiff's negligence in connection with its data breach, as well as numerous allegations within the pleadings concerning Plaintiff's PCI DSS non-compliance and the circumstances in which the $3 million limitation of liability provision within § 5.4 of the MSA applies.

2

*Second*, the Court considered documents outside of the pleadings, thereby converting Plaintiff's Motion into a motion for summary judgment under Rule 56(c), without permitting Defendants to present competing evidence. If Defendants had been provided with an opportunity to present the Court with such evidence, they would have put forth various documents that support their construction of the Agreement, creating disputed issues of material fact which would have defeated Plaintiff's Motion.

*Finally*, the Court's decision to consider Plaintiff's extrinsic evidence to discern the parties' intent, rather than give meaning to the Agreement's express language, also violated fundamental contract construction principles and led to a result that fails to comport with basic standards of commercial reasonableness. Indeed, the Order concluded that Defendants, entities that merely facilitate Plaintiff's credit and debit card transactions, assumed *virtually unlimited* exposure to third parties due to Plaintiff's failure to properly secure its customers' credit and debit card account data – in effect, making Defendants insurers of the liabilities created by Plaintiff's data security non-compliance and any resulting data compromise events. There is no indication, either within or outside the four corners of the Agreement, that Defendants undertook to insure Plaintiff's data security protection.

For the reasons set forth more specifically below, Defendants respectfully request that the Court reconsider and vacate its ruling on Plaintiff's Motion or, in the alternative, that Defendants be granted leave to amend their pleadings.

## ARGUMENT

### I. THE COURT SHOULD RECONSIDER ITS ORDER GRANTING PLAINTIFF'S MOTION

Federal Rule of Civil Procedure 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties ... may be revised at any time before the entry of a judgment

adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). District courts have "considerable discretion in deciding whether to reconsider an interlocutory order under 54(b)," *Westinghouse Elec. Co. v. U.S.*, 2009 WL 881605, at *4 (E.D. Mo. Mar. 30, 2009), and "may amend or reconsider any ruling under Rule 54(b) to correct any clearly or manifestly erroneous findings of facts or conclusions of law." *Prosser v. Nagaldinne*, 2013 WL 308770, at *1 (E.D. Mo. Jan. 25, 2013) (citation omitted). As courts within this Circuit have routinely recognized, reconsideration should be granted "to prevent the judgment from becoming a vehicle of injustice." *Harley v. Zoesch,* 413 F.3d 866 (8th Cir. 2005) (quotation omitted); *Westinghouse*, 2009 WL 881605, at *4 (same).

Here, the Order's (i) failure to view the pleadings in Defendants' favor, (ii) reliance on extrinsic evidence, and (iii) violation of fundamental contract construction principles constitute manifest errors of law and fact warranting reconsideration to prevent the Order from becoming such a vehicle of injustice.

> **A. The Parties' Pleadings, When Viewed in Defendants' Favor, Allege Plaintiff's Negligence and PCI DSS Non-Compliance, Which Should Have <u>Resulted in Denial of Plaintiff's Motion</u>**

In deciding a motion for judgment on the pleadings under Rule 12(c), courts are to "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." *U.S. v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000). As this Court recognized, "[t]his is a strict standard," Order at 5, and "[j]udgment on the pleadings is not properly granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *XTRA Lease LLC v. Pacer Int'l, Inc.*, 2011 WL

4

250674, at *1 (E.D. Mo. Jan. 25, 2011) (quotation omitted).[4]  Here, the Court's Order overlooked express allegations of Defendants' pleadings and did not draw reasonable inferences from the pleadings in Defendants' favor.

For example, the Order states that Defendants did "not allege that Schnucks was either negligent or PCI DSS non-compliant," Order at 16, and that "[t]he application of the exception creating a separate $3,000,000 limitation for fines for PCI DSS non-compliance has not been raised by either side," *id*. at 6.  But Defendants explicitly raised Plaintiff's negligence as well as Plaintiff's own actions or inactions as the cause of Plaintiff's claimed damages in Defendants' Ninth and Tenth Affirmative Defenses.  *See* Answer of Defendants First Data Merchant Services Corp. and Citicorp Payment Services, Inc. With Affirmative Defenses and Counterclaim [Doc. No. 20] at 9.[5]  Likewise, Plaintiff's *own Complaint* raised the $3,000,000 limitation of liability due to PCI DSS non-compliance.  *See, e.g.*, Complaint [Doc. No. 9] ¶¶ 27-28 (alleging MasterCard assessed case management fee against Plaintiff, which occurs "[if] the Networks believe a merchant was not fully compliant with PCI DSS at the time of the event"); *id*. ¶¶ 20-22 (alleging that breaches of Section 25 of the Bankcard Addendum, related to PCI DSS non-

---

[4] The parties' filing of cross-motions for judgment on the pleadings did not change this bedrock principle: in ruling on Plaintiff's Motion, *all* facts and reasonable inferences therefrom were to be viewed *in Defendants' favor*.  *See Crosby v. Reg'l Transp. Auth.*, 2010 WL 2350707, at *1 (N.D. Ill. June 11, 2010) ("Cross-motions for judgment on the pleadings are assessed independently—denial of one does not necessarily constitute the grant of the other."); *see also Wermager v. Cormorant Township Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983); *Dearman v. Dial Corp.*, 2010 WL 254928, at *2 (E.D. Mo. Jan. 19, 2010).

[5] *See also* Memorandum in Further Support of Defendants' Motion for Judgment on the Pleadings and in Opposition to Plaintiff's Cross-Motion for Judgment on the Pleadings [Doc. No. 49] at 9 ("[T]he term 'fees' also applies to an assessment imposed by a third party on Defendants related to *Plaintiff Schnucks' negligent act* or omission, such as *non-compliance with security standards that result in a data breach*.  That is precisely how and why the Associations' fees arise in this case – as assessments imposed on Defendants related to *Schnucks' PCI non-compliance and resulting data breach*."); Defendants First Data Merchant Services Corp. and Citicorp Payment Services, Inc.'s Opposition to Plaintiff's Motion to Stay Discovery [Doc. No. 61] (the "Motion to Stay Opposition") at 3 (explaining that Defendants' motion for judgment on the pleadings was brought "based on Plaintiff's attempt to avoid its clear financial responsibility for the consequences of *Schnucks' data breach when it was not security compliant*") (emphases added).

5

compliance, were captured by the higher limitation of liability in Section 5.4 of the MSA).[6] Not only does the Order cite Plaintiff's allegations on the issue, *see* Order at 2-3, 6 n.5, it also specifically acknowledges that, "*[a]ccording to Defendants*, these provisions [of the Agreement] demonstrate that the Associations' fees arise as assessments imposed on Defendants *in connection with Schnucks' PCI non-compliance and resulting data breach*," *id.* at 12 (emphasis added).

Although the record is replete with factual allegations from the pleadings concerning Plaintiff's negligence and PCI DSS non-compliance and the circumstances in which the $3 million limitation of liability provision applies, the Order concluded that Plaintiff's PCI DSS non-compliance or negligence was not asserted and "that Schnucks' maximum liability under the terms of the Agreement … as a result of the data security breach is $500,000.00 …." Order at 17. The failure to accept as true all facts alleged by Defendants and draw all reasonable inferences from the pleadings in Defendants' favor alone necessitates reconsideration.[7]

### B. The Court Went Beyond the Pleadings and the Four Corners of the Parties' Agreement in Granting Plaintiff's Motion

When considering a motion for judgment on the pleadings, courts "generally must ignore materials outside the pleadings" and only may consider "materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)

---

[6] *See also* Plaintiff's Motion at ¶ 22 n.4 (admitting MasterCard "case management fee" and Visa "non-compliance fine" were not subject to $500,000 limitation); Memorandum in Further Support of Plaintiff's Partial Cross-Motion for Judgment on the Pleadings ("Plaintiff's Reply") [Doc. No. 52] at 10 ("In fact, Visa assessed a non-compliance fine and MasterCard assessed a case management fee. Schnucks acknowledges that the exception applies to that fine and fee, and those two amounts are not in dispute.").

[7] *See, e.g.*, *XTRA Lease LLC*, 2011 WL 250674, at *2-3 (denying plaintiff's motion for judgment on the pleadings because facts alleged in defendant's answer and affirmative defenses, accepted as true by court, created genuine issue of material fact); *Gerlinger v. Amazon.com, Inc.*, 311 F. Supp. 2d 838, 843 (N.D. Cal. 2004) ("A plaintiff is not entitled to judgment on the pleadings if the defendant's answer raises issues of fact or an affirmative defense, which, if proved, would defeat plaintiff's recovery.").

6

("matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint" are matters outside the pleadings that may be considered) (quotation omitted).

In ruling on Plaintiff's Motion, the Court placed heavy reliance on the Association Rules, *see* Order at 2, 9, which are neither part of the pleadings nor part of the Agreement.[8] These extrinsic materials were included with briefing on Plaintiff's Motion and included various excerpts of Visa International Operating Regulations (dated 15 October 2012) ("VIOR"), MasterCard Worldwide Security Rules and Procedure: Merchant Edition (dated 22 February 2013) ("MasterCard Merchant Rules"), MasterCard Worldwide Account Data Compromise User Guide (dated 11 July 2012), MasterCard Account Data Compromise Recovery ("ADCR") and Visa Global Compromised Account Recovery ("GCAR"). Plaintiff used these materials – all created by third parties outside of the context of the parties' Agreement here[9] – as support for its interpretation of the purportedly unambiguous language of the Agreement.[10] The Association Rules, however, are not part of any party's pleadings in this case, are not exhibits to any party's

---

[8] Although Plaintiff alleged and Defendants admitted (incorrectly) that the operating regulations of Visa and MasterCard are expressly incorporated by reference as part of the Agreement, this is contradicted by the explicit terms of the Agreement itself, which must be accepted as true in the event of a conflict between it and the parties' pleadings. *See, e.g.*, *Creelgroup, Inc. v. NGS Am., Inc.*, 518 F. App'x 343, 347 (6th Cir. 2013) ("[W]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations."); *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir.1991) (same).

[9] Although Plaintiff and the Court placed heavy emphasis on the term "losses" in the Association Rules, this term, in context, refers to the monetization of the liabilities created by a merchant's or acquirer's data breach vis-à-vis the impacted issuer banks, *see* MasterCard Merchant Rules [Doc. No. 44-3] at 7, and says nothing about whether these amounts are "fees," "charges," "reimbursements," etc. as they are recovered and passed along from merchant to servicer, servicer to acquirer, acquirer to Visa/MasterCard and, ultimately, Visa/MasterCard to issuer banks.

[10] *See* Plaintiff's Motion [Doc. No. 44] at 9-10, 15-18; Plaintiff's Reply [Doc. No. 52] at 6-7; Plaintiff Schnuck Markets, Inc.'s Response to Defendants' Sur-Reply Memorandum [Doc. No. 56] at 2-3. Plaintiff's reliance on extrinsic evidence throughout its briefing undermines its argument that the Agreement could be construed in accordance with its purportedly plain and unambiguous terms.

7

pleadings, are not part of the record in this case, and are not a matter of public record.[11] Therefore, the Court's consideration of and reliance upon the Association Rules in granting Plaintiff's Motion was manifest error.

Not only was the Court's reliance on the Association Rules improper under Rule 12(c), such reliance also violated the fundamental contract construction principle that courts should not go beyond the four corners of an unambiguous contract (as the Court assumed it was, *see* Order at 4)[12] to construe its terms.  *See, e.g.*, *Eisenberg v. Redd*, 38 S.W.3d 409, 411 (Mo. 2001).  Here, as the Court accurately noted in the Order:  "The MSA, Bankcard Addendum, and Operating Procedures (collectively referred to as the 'Agreement') *constitute the entire agreement between the parties*."  Order at 2; *see also* MSA ¶ 17 ("This MSA and any Addenda hereto *constitute the entire agreement between the parties* with respect to the subject matter hereof …."); Bankcard Addendum § 26.3 ("This Bankcard Addendum, along with the Master Services Bankcard Addendum and any Schedules and the Operating Procedures, *constitutes the entire agreement between the parties* with respect to the subject matter.") (emphasis added).  While the Association Rules are *referenced* in the Agreement, and Plaintiff had an obligation to comply with them, *see, e.g.*, Bankcard Addendum ¶ 4, this did not operate to incorporate the Association Rules into the Agreement.[13]

---

[11] In contrast, in setting forth the materials that properly *could* be considered in ruling on the parties' motions, the Court was careful to explain that "the MSA, Bankcard Addendum, and Operating Procedures are all attached to the pleadings."  Order at 5.

[12] Although Defendants argued that the language of the Agreement implicated by *their* motion (*i.e.*, the last sentence of § 5.4) was not ambiguous, they did *not* agree that the language implicated by Plaintiff's Motion was unambiguous.  *See, e.g.*, Motion to Stay Opposition [Doc. No. 61] at 3.

[13] *See, e.g.*, *Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 436 (Mo. 2003) (mere reference to construction contract did not incorporate contract into guaranty); *Northrop Grumman Info. Tech., Inc. v. U.S.*, 535 F.3d 1339, 1345 (Fed. Cir. 2008) (to incorporate extrinsic material by reference, contract language must explicitly or precisely identify material and clearly communicate purpose of reference is to incorporate it into contract, not merely acknowledge its relevance).

Moreover, the versions of the Association Rules excerpted by Plaintiff in its briefing were not in existence at the time of contracting and, thus, could not have any relevance to the Court's effort to discern the parties' intent. Under Missouri law, a court must ascertain and give effect to the intention of the parties *at the time of contract formation* – here, October, 2011. *See Butler v. Mitchell-Hugeback, Inc.*, 895 S.W. 2d 15, 21 (Mo. 1995) (*en banc*); *Bailey v. Federated Mut. Ins. Co.*, 152 S.W.3d 355, 357 (Mo. Ct. App. 2004) ("The cardinal rule for the courts in interpreting a contract … is to effectuate the parties' *intent at the time of contracting*.") (emphasis added). Thus, Plaintiff's parsed and selective language from Association Rules post-dating the parties' execution of the Agreement was not proper evidence of the parties' intent and should not have been considered in resolving Plaintiff's Motion.

Because matters outside of the pleadings were presented to and considered by the Court, Rule 12(d) required that the Court convert Plaintiff's Motion into one for summary judgment and provide Defendants with an opportunity to present facts and evidence outside the pleadings that would have been relevant to resolution of Plaintiff's Motion. *See* Fed. R. Civ. P. Rule 12(d); *Surgical Synergies, Inc. v. Genesee Assocs., Inc.*, 432 F.3d 870, 873 (8th Cir. 2005) ("Where the district court considers matters outside the pleadings, a motion for judgment on the pleadings shall be treated as one for summary judgment.") (quotation omitted). For example, Defendants would have presented the Court with, among other things: (i) the invoice Citicorp received from MasterCard, which expressly denominated the various assessments resulting from Plaintiff's data breach as "charges";[14] (ii) correspondence from Plaintiff to MasterCard, in which Plaintiff repeatedly characterized as a "penalty" MasterCard's liability assessments issued as a result of

---

[14] *See* Defendants First Data Merchant Services Corp.'s and Citicorp Payment Services, Inc.'s Motion for Partial Reconsideration of Order Granting Plaintiff's Partial Cross-Motion for Judgment on the Pleadings or, in the Alternative, Motion for Leave to Amend Pleadings, Exhibit A (Nov. 3, 2013 MasterCard International Invoice to Citicorp), at 2-4.

9

Plaintiff's data breach;[15] (iii) letters evidencing Plaintiff's PCI DSS non-compliance;[16] and (iv) documents concerning Plaintiff's successful invocation of the catastrophic loss waiver provision of the Association Rules, whereby Plaintiff avoided millions of dollars in assessments from Visa – amounts it seeks to impose as liabilities upon Defendants through this lawsuit – as a result of its data breach.[17]

Defendants should have been permitted to present this and other evidence for consideration by the Court in ruling on Plaintiff's Motion. Because Defendants were not given such an opportunity, the Court's decision to rely on Plaintiff's proffered extrinsic evidence in ruling on Plaintiffs' Motion was manifest error and warrants vacatur of the Order.

      C.      **The Court's Errors of Law in Construing the Agreement Led to a Commercially Unreasonable Result, Which the Law Seeks to Avoid**

The Order also ignored explicit terms in the Agreement that should have been given effect under basic contract construction principles. *See e.g.*, *Bruce v. Landmark Cent. Bank & Trust Co.*, 592 S.W.2d 198, 200 (Mo. Ct. App. 1979) ("All terms of the contract should be given

---

[15] *See id.*, Exhibit B (Aug. 15, 2013 Letter from C. Hoffman to MasterCard Worldwide).

[16] *See, e.g.*, *id.*, Exhibit C (July 17, 2013 Letter from P. DeMars (MasterCard) to T. Oricoli (Citicorp)), at 1 ("MasterCard has determined that Citicorp Payment Services, Inc. is responsible for its merchant's [Schnuck's] violation of one or more requirement of the PCI Data Security Standard."); *id.*, Exhibit D (July 18, 2013 Letter from L. Sablich (First Data) to D. Nilhas (Schnucks)), at 1 ("As you are aware, the PCI Forensic Investigation (PFI) Report dated May 29, 2013, completed by Mandiant, found conclusive evidence of a breach of the cardholder environment at Schnuck Markets Inc. ('Schnucks') and found that Schnucks was non-compliant with the Payment Card Industry Data Security (PCIDSS) requirements.").

[17] *See id.*, Exhibit E (Oct. 2011 Visa GCAR Guide), at 33; *id.*, Exhibit F (Dec. 29, 2014 Letter from M. Laubsted (Visa) to K. Mattea (Citicorp)) ("Because this matter qualifies under the catastrophic loss waiver provision of GCAR, the Review Team has determined there will be no assessment for this data breach event under the GCAR program."). To the extent a data breach creates significant exposure to a merchant like Plaintiff, the Association Rules enable invocation of a "catastrophic loss" cap or waiver, determined by reference to the merchant's financial condition, that limits the amount of assessments that must be made in connection with the data breach. Such provisions make clear that the financial liabilities created by a merchant's data breach remain with the merchant, as it is the merchant – *not* the servicer or acquirer – that caused the breach, was in the best position to have avoided the breach, and whose financial condition is considered in connection with Visa's or MasterCard's decision to waive assessments stemming from the breach.

10

effect."). Critically, in interpreting the last sentence of § 5.4 of the MSA, which excludes "THIRD PARTY FEES" from the limitation of liability provision, the Court ignored explicit language within the definition of "Third Party Fees," defined in Section 13.3 of the Bankcard Addendum as:

> ***all*** fees and ***charges*** (including increases[,] additions, or modification made thereto), ***without limitation***, of any Credit Card Association, Network, card-issuing organization, telecommunications provider, federal, state, or local governmental authority (each a "Third Party") including, ***without limitation*** any switch fee, issuer[] reimbursement fee, adjustment fee, interchange fee, assessment fee or access fee ….

Bankcard Addendum § 13.3 (emphasis added). Although the Order quoted the full text of § 13.3 in a footnote, it never again mentioned the parties' inclusion of the expansive terms "all"[18] or "without limitation"[19] in the definition of "Third Party Fees," nor did it seek to give effect to those terms. Worse yet, the Order did not *even attempt* to ascribe meaning to the term "charges" – the plain meaning of which includes, among others, "expense," "cost," "the price demanded for something," "a debit to an account," and "a financial liability."[20] The Order instead sought only to give meaning to the term "fees," without regard for the other material terms used to define "Third Party Fees," as used in § 5.4 of the MSA. *See* Order at 15-17. By not giving effect to

---

[18] The term "all" is interpreted broadly and comprehensively to mean "any." *See, e.g.*, *Tambe v. Bowen,* 839 F.2d 108, 110 (2d Cir.1988); *Edwards v. McMahon,* 834 F.2d 796, 799 (9th Cir.1987); *Prince v. Div. of Family Servs.*, 886 S.W.2d 68, 72 (Mo. Ct. App. 1994).

[19] When contracting parties provide lists of examples of a term following "including, without limitation," they do so to ascribe a broad meaning to the term. *See, e.g.*, *Havens Steel Co. v. Randolph Eng'g Co.*, 613 F. Supp. 514, 542 (W.D. Mo. 1985) *aff'd*, 813 F.2d 186 (8th Cir. 1987) (noting "broad terms" by virtue of "included but not limited to" language); *In re Tucker*, 441 B.R. 638, 645 (Bankr. W.D. Mo. 2010).

[20] *See, e.g.*, http://www.merriam-webster.com/dictionary/charge (last visited Feb. 10, 2015); http://www.collinsdictionary.com/dictionary/english/charge (last visited Feb. 10, 2015); http://www.oxforddictionaries.com/us/definition/american_english/charge (last visited Feb. 10, 2015). Further, as noted in Pt. I.B *supra*, "charge" is precisely the term that was used by MasterCard in its invoice to Citicorp to capture its assessments stemming from Plaintiff's data breach. Similarly, the "Reserve Account" established by Defendants to hold funds used to satisfy "current and anticipated Association fees or fines," Bankcard Addendum § 22.1, is defined as "a fund … to protect against … Chargebacks, adjustments, fees and other *charges* due to or incurred by SERVICERS." *See* MSA, Annex 1 at 1.18 (emphasis added).

these terms, the Order violated a cardinal principle of contract construction, *see Bruce*, 592 S.W.2d at 200, thereby warranting reconsideration and vacatur.

Likewise, the Order adopted an unduly narrow construction of the term "fees," which it found was limited only to payments for services. *See* Order at 15-17. While the term "fees" may be associated with payments for services,[21] "fee" also is defined by Merriam-Webster more broadly as "an amount of money that must be paid," or "a fixed charge." *See e.g.*, http://www.merriam-webster.com/dictionary/fee (last visited February 9, 2015).[22] Accordingly, the term "fee" was, at the very least, reasonably susceptible to more than one meaning, thereby necessitating denial of Plaintiff's Motion. *See Boyer v. Sinclair & Rush, Inc.*, 67 S.W.3d 627, 631 (Mo. Ct. App. 2002) ("In determining whether contract language is ambiguous, [courts] look at the context of the entire agreement and determine if the language, given its plain and ordinary meaning as understood by a reasonable person, is reasonably susceptible to more than one construction.").[23]

---

[21] Even under the Court's narrow interpretation of "fees" as relating only to services, the liabilities at issue still would be Plaintiff's responsibility, because the MSA, or Master *Services* Agreement, specifically states that "THIS MSA AND ANY ADDENDA IS [SIC] AN AGREEMENT FOR SERVICES." MSA § 5.2.

[22] Furthermore, Schedule A, cited by the Court in support of its interpretation that "fees" were limited to amounts charged in connection with Defendants' processing services, Order at 16, specifically states that "[t]he fees and charges set forth on this Schedule A are *in addition to all other Third Party fees* and *all fees due and payable to Servicers and/or any applicable Third Party*." Schedule A, Fee Schedule [Doc. No. 44-1], General Pricing Information for Credit Transactions (emphasis added).

[23] Indeed, this alternative reading of the term "fees" would enable a harmonious reading of the provisions of the Agreement and enforcement of all terms – including, notably, the last sentence of § 5.4 of the MSA, §§ 13.3 and 13.5 of the Bankcard Addendum and § 4.9 of the Operating Procedures – in the manner intended, consistent with the law's preference for "[a] construction which attributes a reasonable meaning to all the provisions of the agreement" over "one which leaves some of them without function or sense," Order at 11 n.9 (quotation omitted). *See* MSA § 5.4 ("THIS SECTION 5.4 LIMITATION OF LIABILITY SHALL NOT APPLY TO CUSTOMER'S LIABILTIY FOR … *THIRD PARTY FEES, AND FEES, FINES OR PENALTIES BY THE ASSOCIATION* OR ANY OTHER CARD OR DEBIT CARD PROVIDED UNDER THIS MSA OR ANY ADDENDA."); Bankcard Addendum § 13.3 ("CUSTOMER [Plaintiff] shall *at all times* be responsible for, payment of *all fees and charges … without limitation*, of any Credit Card Association, Network, card-issuing organization…."); Bankcard Addendum § 13.5

All told, the construction of the Agreement reflected in the Order yields a commercially unreasonable result, "in effect, mak[ing] [Defendants] an insurer of [Plaintiff] for any damage done, regardless of the cause," as to Plaintiff's PCI DSS non-compliance and resulting data breaches. *Newton v. Dickerson, Inc.*, 30 Va. Cir. 462, at *2 (Va. 1969). The law abhors contract interpretations that reach a commercially unreasonable result. *See Jim Carlson Constr., Inc. v. Bailey*, 769 S.W.2d 480, 482 (Mo. App. 1989) (courts reject "an interpretation of a contract or agreement which evolves unreasonable results, when a probable and reasonable construction can be adopted"); *XCO Int'l Inc. v. Pac. Scientific Co.*, 369 F.3d 998, 1005 (7th Cir. 2004) (Posner, J.) (explaining that contracting parties unlikely to include provisions in contract that would put them out of business or "commit corporate suicide").[24]  As Judge Posner explained:

> Agreements, especially commercial arrangements, are designed to make sense. If one reading produces a plausible result for which parties might be expected to bargain, that reading has a strong presumption in its favor as against another reading producing an unlikely result (*e.g.*, windfall gains, conditions that cannot be satisfied, dubious incentives).

*Utica Mut. Ins. Co. v. Vigo Coal Co.*, 393 F.3d 707, 711 (7th Cir. 2004) (Posner, J.).

Because Defendants did not intend to act as an insurer for Plaintiff's data breaches under the Agreement, and such a result would be commercially unreasonable, reconsideration and vacatur of the Order is warranted.

---

("CUSTOMER agrees to pay SERVICERS any fines, fees, or penalties imposed on SERVICERS by any Association resulting from Chargebacks and *any other fines, fees or penalties imposed by an Association* with respect to negligent acts or omissions of CUSTOMER"); Operating Procedures § 4.9 ("If you or a Merchant Provider … are determined by any Card Organization … to be the likely source of any loss, disclosure, theft or compromise of Cardholder data or Card transaction information … you must promptly pay [Defendants] for *all related expenses, claims, assessments, fines, losses, costs, and penalties and Issuer reimbursements* imposed by the Card Organizations against [Defendants]." (emphases added).

[24] *See also CP III Rincon Towers, Inc. v. Cohen*, 13 F. Supp. 3d 307, 323 (S.D.N.Y. 2014) (courts should avoid reading contracts in "a commercially unreasonable or absurd manner"); *C.A. Acquisition Newco, LLC v. DHL Exp. (USA), Inc.*, 696 F.3d 109, 113 (1st Cir. 2012) ("In the commercial context, courts should avoid interpreting contracts to be 'commercially unreasonable.'").

13

## II.   IN THE ALTERNATIVE, THE COURT SHOULD GRANT DEFENDANTS LEAVE TO AMEND THEIR PLEADINGS

Although Defendants believed their pleadings adequately alleged, *inter alia*, Plaintiff's data breach and negligence in connection with such breach, *see* Pt. I.A *supra*, they respectfully request the opportunity to amend their pleadings to further clarify and expand upon these allegations to the extent necessary.

Under Rule 15(a)(2), "[t]he court should freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2).[25] Further, in circumstances where, as here, there is a scheduling order establishing a deadline for amendment of pleadings, good cause must be shown.[26] In determining whether "good cause" exists, the "primary measure … is the movant's diligence in attempting to meet the order's requirements."[27] As the Eighth Circuit has warned, district courts are "not at liberty to ignore the Rule 15(a)(2) considerations that favor affording parties an opportunity to test their claim on the merits." *Public Pension Fund Grp. v. KV Pharm. Co.*, 679 F.3d 972, 987 (8th Cir. 2012) (quotation omitted) (concluding district court abused its discretion in denying post-judgment motion to amend pleadings). Thus, "denial of leave to amend pleadings is appropriate only if 'there are compelling reasons such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the nonmoving party, or futility of the amendment.'"[28]

---

[25] *See also Russ v. Diddle*, 1988 WL 15028, *15 (W.D. Mo. Feb. 23, 1988) (noting that Rule 15 should be applied with "extreme liberality," and that "[i]n exercising its discretion, a court must be guided by the underlying purpose of Rule 15, that of facilitating decision on the merits of the case rather than on the pleadings or technicalities").

[26] *See id.*; *see also* Fed. R. Civ. P. 16(b)(4).

[27] *Henson v. Casey's Gen. Stores, Inc.*, 2014 WL 1648812, at *1 (E.D. Mo. Apr. 23, 2014) (citing *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008)).

[28] *Henson*, 2014 WL 1648812, at *1 (citing *Sherman*, 532 F.3d at 715).

14

The instant request is not attributable to a lack of diligence in attempting to meet the Court's deadlines established in the Case Management Order [Doc. No. 34]; rather, the possibility of needing amendment was brought to light by the Order's conclusion that Defendants did "not allege that Schnucks was either negligent or PCI DSS non-compliant" or the proper application of the $3 million limitation of liability provision under § 5.4 of the MSA, Order at 16, and amendment would be designed to cure any such pleading deficiencies.  Further, Plaintiff would not be unduly prejudiced by amendment of Defendants' pleadings because (i) Defendants have not previously amended their pleadings, (ii) discovery has yet to begin, (iii) the facts that would be alleged stem from the same facts set forth in Defendants' original pleadings (and such facts are within Plaintiff's knowledge), and (iv) amendment will further clarify the issues for both the Court and the parties.[29]

Thus, Defendants should be permitted to amend their pleadings because good cause exists and justice requires that leave to amend be freely given in these circumstances.

## CONCLUSION

The Court should reconsider its Order to the extent it granted Plaintiff's Motion, as the Court:  (i) did not accept as true all facts alleged by Defendants or draw reasonable inferences from the parties' pleadings in Defendants' favor; (ii) went beyond the pleadings, without converting Plaintiff's Motion into one for summary judgment and without allowing Defendants to provide their own extrinsic evidence, in issuing its ruling; and (iii) violated fundamental contract construction principles and construed the parties' Agreement in a commercially unreasonable manner.  In the alternative, Defendants should be permitted leave to amend their pleadings to cure any potential deficiencies.

---

[29] *See Henson*, 2014 WL 1648812, at *3 (granting leave to amend where discovery remained open and an additional claim asserted by a party was based on facts similar to the original complaint).

15