UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SCHNUCK MARKETS, INC., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:13CV2226 JAR |
| FIRST DATA MERCHANT DATA SERVICES CORP., and CITICORP PAYMENT SERVICES, INC. | ) |
| Defendants. | ) |

**PLAINTIFF SCHNUCK MARKETS, INC.'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION OF ORDER GRANTING PLAINTIFF'S CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, MOTION FOR LEAVE TO AMEND PLEADINGS**

Defendants' Reconsideration Motion is a typical, baseless attempt by a non-prevailing to change an outcome it disagrees with. Defendants hired new counsel to distance themselves from failed arguments and to assert new arguments that could have been, but were not made previously, and re-argue positions that were already rejected by the Court. This request for a "do-over" falls far short of identifying exceptional circumstances justifying reconsideration.

## INTRODUCTION

Defendants moved for judgment on the pleadings and then Schnucks filed a partial cross-motion. Each side sought judgment on the application of the limitation of liability provisions in § 5.4 of the parties' Agreement to Schnucks' indemnity obligations to Defendants. Each side asserted: (1) § 5.4 was unambiguous; and (2) the Agreement consisted of three documents that incorporated the operating regulations of Visa and MasterCard. Based on the pleadings and contract, this Court concluded that "Schnucks' obligation to indemnify Defendants for liability

for losses incurred by issuing banks is limited to $500,000." To reach that conclusion, the Court made specific findings that the two exceptions in § 5.4 were not applicable to issuer losses.

Defendants' Reconsideration Motion erroneously claims that the Court misapplied the law by: (1) ignoring whether the $3 million limitation applied; (2) relying on extrinsic evidence because Defendants now claim the card association regulations are not incorporated in the parties' Agreement; and (3) interpreting § 5.4 in a way that leads to a commercially unreasonable result because the parties' Agreement does not state that Defendants are an insurer of Schnucks.

Defendants never assert that the $3 million limitation applies to liability for issuer losses. They only claim that this Court did not consider the "circumstances" of its application. This argument fails because: (1) they never made the argument before but could have; (2) Schnucks showed that the $3 million limitation only applied to non-compliance fines and twice pointed out that Defendants did not claim that it applied; and (3) the Court found that § 25 (the section for which liability for violations is limited to $3 million) applies to non-compliance fines. Accordingly, this Court's ultimate finding remains the same even if allegations of negligence or non-compliance resulting in fines are accepted as true. And, thus, it would be futile for Defendants to amend their pleadings to allege that the $3 million limitation applied.

Not only are Defendants wrong when they now contend that the operating regulations are extrinsic evidence erroneously considered, it is a purported error they invited. Defendants' judicially admitted that the operating regulations were incorporated, and their Rule 12(c) motion and other memoranda explicitly stated that they were incorporated. Defendants cannot now reverse their position and use a purported error they manufactured to seek reconsideration. They offer no explanation for their reversal, nor have they sought leave to amend their answer. Moreover, under Missouri law, the operating regulations are incorporated in the Agreement and

any reliance by this Court was proper. Also, this Court's ultimate conclusion rests on a number of separate grounds, any one of which would be sufficient to support this Court's holding. Last, the exhibits proffered by Defendants as evidence they would have offered if this Court had converted Schnucks' motion to a summary judgment motion are of no consequence. Because the Agreement is not ambiguous, Defendants cannot rely on extrinsic evidence. The proffered evidence does not and cannot change the fact that the operating regulations impose liability to reimburse issuers for their losses, regardless of how any entity refers to them in extrinsic evidence.

Defendants' argument that this Court misinterpreted § 5.4 in a way that leads to a commercially unreasonable outcome is not an appropriate basis for a Rule 54(b) motion—it is a mix of arguments that were already made or could have been made but were not. Further, the commercial unreasonability argument has two primary flaws: (1) limitation of liability clauses could never be enforced if they could be negated by an unsupported assertion that the outcome was commercially unreasonable; and (2) it is an improper, back-door attempt to inject their after-the-fact, subjective intent to the interpretation of an unambiguous contract provision.

Defendants should not be given a "do-over" just because they decided to change counsel, change strategy, or because the stakes have changed now that Visa decided not to assess liability for issuer losses (and they now believe a $3 million limit is an acceptable outcome).

## ARGUMENT

I.     **DEFENDANTS' MOTION FOR RECONSIDERATION SHOULD BE DENIED**

Federal Rule of Civil Procedure 54(b) provides, in pertinent part, that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties ... may be revised at any time before the entry of a

3

judgment adjudicating all the claims and all the parties' rights and liabilities." FED. R. CIV. P. 54(b).  Although this Court "has the power to revisit prior decisions of its own ... in any circumstance, [it] should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983)).  A Rule 54(b) motion may not "serve as a vehicle to identify facts or raise legal arguments which could have been, but were not, raised or adduced during the pendency of the motion of which reconsideration was sought." *Prosser v. Nagaldinne,* 2013 WL 308770, at *1 (E.D. Mo. Jan. 25, 2013) (quotation and citation omitted).

      **A.**      **This Court's Memorandum and Order is Well-Reasoned.**

This Court, applying Rule 12(c), properly held that,"[a]fter careful review of the parties' Agreement as a whole, and following well-established principles of contract interpretation, … the exception for 'third party fees' and 'fees, fines and penalties,' was not intended to apply to liability for issuer losses assessed by the Association." (Doc. No. 69 at 15.)  This Court found that this result was clear for several reasons: (1) "the exception lists specific fees, fines, and penalties that are excluded from the limitation of liability clause, but does not list anything equivalent to issuer losses" and Defendants could have, but did not, include the term "Data Compromise Losses" – a term that encompasses all forms of liability for a data breach – in the limitation of liability clause (*id.*); (2) "the plain reading of 'fee' is an amount paid or charged for a service" and "[t]he term 'Third Party Fees,' as defined in the Bankcard Addendum, refers to fees charged by third parties in connection with Defendants' processing *services,* such as 'interchange fees' and 'access fees', as opposed to liability for actual issuer *losses* (*id.* at 15-16 (internal citations omitted; emphasis in original); and (3) "the ordinary meaning of the terms

4

'fines' and 'penalties' is a sum imposed as punishment" and Defendants failed to show that issuer loss reimbursements are assessed by Associations in a punitive context following a data compromise event (*id.* at 16).

## B. The $3 million Limitation Does Not Apply to Liability for Issuer Losses.

The first purported error Defendants identify, like the second, is one of their own making. This argument fails from the start because Defendants only argue that this Court did not consider the "circumstances" of the application of the $3 million limitation. They do not actually assert that the $3 million limitation applies to liability for issuer losses, nor do they explain how accepting as true allegations of negligence or non-compliance changes the outcome.

Defendants' argument is premised only on two sentences in the Court's order: (1) "Furthermore, Defendants do not allege that Schnucks was either negligent or PCI DSS non-compliant."; and (2) "The application of the exception creating a separate $3 million limitation for fines for PCI DSS non-compliance has not been raised by either side." (Doc. No. 69 at 6,16.) Defendants claim that they did allege Schnucks' was negligent and that Schnucks' Complaint mentioned the $3,000,000 limitation of liability due to PCI DSS non-compliance. (Doc. No. 85 at 5 (citations omitted).) Myriad reasons exist to show that these arguments do not warrant reconsideration and it would be futile to permit Defendants leave to amend their pleadings to now assert that the $3 million limitation applies to liability for issuer losses.

Neither Defendants' Counterclaim nor any of their Rule 12(c) briefs ever asserted that the $3 million limitation applied to liability for issuer losses. (Doc. No. 20, 38, 49, 55.) Schnucks twice noted that Defendants had not made this argument and explained that the $3 million limit only applied to liability for non-compliance fines. (Doc. No. 44 at 2 n.1; Doc. No. 52 at 3 n.2.) Because Defendants could have asserted the applicability of the $3 million limitation in their

5

counterclaim, motions or memoranda, but failed to do so, they may not use it now as a vehicle to argue for reconsideration.  *See, e.g., Prosser,* 2013 WL 308770, at *1 (rejecting argument that should have made at the time of summary judgment); *Evans v. Contract Callers, Inc.*, 2012 WL 234653, at *2 (E.D. Mo. Jan.25, 2012) (denying motion for reconsideration, in part, because party submitted new evidence that was available during briefing of underlying motion).

Prior to reaching the conclusion that the unlimited liability exception did not apply to liability for issuer losses, this Court found that "§ 25 relates to an obligation to pay a fine for PCI DSS non-compliance, which can occur even in the absence of a data compromise event."  The $3 million limitation in § 5.4 applies to liability for violating § 25.[1]  Accordingly, this Court's determination that § 25 only applies to liability for non-compliance fines shows that the $3 million limitation would not apply to liability for issuer losses.

A non-compliance fine is the only liability imposed by § 25 of the Bankcard Addendum:

> … *CUSTOMER [Schnucks] understands and acknowledges that it is solely the responsibility of CUSTOMER [Schnucks]* to maintain compliance with all Association PCI Data Security procedures and regulations, and *to pay any and all fines levied by the applicable Association for its non-compliance*….

(Doc. No. 37-2. (emphasis added).)  Because "fine" was not a defined term, this Court determined "the ordinary meaning of the term[] 'fine[]' is a sum imposed as punishment."  (Doc. No. 69 at 16 (citation omitted).)  Liability for losses to reimburse issuers for actual fraud and operating expenses does not meet the ordinary meaning of a fine.  Consequently, the $3 million limitation of liability exception is inapplicable to issuer losses.  Thus, this Court has already addressed the "circumstances" of the application of the $3 million limitation, there is no basis for

---

[1] Section 5.4 of the MSA provides: "NOTWITHSTANDING THE FOREGOING, CUSTOMER [Schnucks], FDMS AND ITS AFFILIATES' CUMULATIVE LIABILTY [sic] FOR ITS BREACH UNDER SECTION 25 (DATA SECURITY) SHALL NOT EXCEED $3,000,000."  (Doc. No. 37-1.)

reconsideration, and it would be futile for Defendants to amend their pleadings to assert that it applied.

Finally, the "Furthermore …" sentence Defendants rely on was not a sole or dispositive basis identified by this Court.  Rather, this Court identified several reasons in support of its conclusion that the unlimited liability exception for "Third Party Fees" and "fees, fines and penalties," was not intended to apply to liability for issuer losses assessed by the Association. (Doc. No. 69 at 15-16.)  The "Furthermore …" sentence only appeared as part of the discussion of the last of this Court's reasons when this Court was explaining why Defendants had failed to show that issuer loss reimbursements are assessed by Associations in a punitive context following a data compromise event.  (*Id.* at 16.)  Defendants cited two provisions to support this aspect of its argument—Sections 13.5 and 25 of the Bankcard Addendum (Doc. No. 37-2.)  This Court correctly determined that neither one of those provisions supports Defendants' interpretation of the Agreement.  (Doc. No. 69 at 16.)  After rejecting Defendants' interpretation, this Court added: "Furthermore, Defendants do not allege that Schnucks was either negligent or PCI DSS non-compliant." (*Id.*).  Again, this sentence was not dispositive.  Because of the independent grounds and because the $3 million limitation does not apply to liability for issuer losses, Defendants' Reconsideration Motion should be denied.

        **C.**      **This Court Did Not Improperly Consider Extrinsic Evidence.**

Schnucks alleged in its Complaint that the operating regulations of the Associations were incorporated as part of the Agreement.  (Doc. No. 9 at ¶ 17.)  Defendants admitted this allegation in their Answer.  (Doc. No. 20 at ¶ 17.)  Then, when they moved for judgment on the pleadings, they explicitly stated that the MSA incorporates the operating regulations.  (Doc. No. 38 at 6.) Schnucks' partial cross-motion for judgment on the pleadings made the same assertion, and

7

Defendants never opposed this assertion. (Doc. No. 44, at 5.) In fact, Defendants' relied upon and attached the 2011 Visa operating regulations to its Sur-Reply. (Doc. No. 55, 55-1.)

Despite their admission, their affirmative argument of incorporation, the lack of opposition to the same argument by Schnucks, and their continued reliance on the operating regulations (even in the Reconsideration Motion) to support their interpretation, Defendants now argue that the operating regulations are not incorporated as part of the Agreement. Defendants' unexplained reversal is simply an attempt to manufacture a basis for claiming that this Court committed manifest error by relying on the operating regulations and, by doing so, converted the motion for judgment on the pleadings into a motion for summary judgment without allowing Defendants to present competing evidence. (Doc. No. 85, at 6-10.) There are four separate and independent reasons to reject this argument.

*First*, Defendants judicially admitted that the operating regulations were incorporated into the Agreement in their Answer and memoranda. (Doc. No. 20 at ¶ 17; Doc. No. 38 at 6.) As a rule, "admissions in the pleadings ... are in the nature of judicial admissions binding upon the parties, unless withdrawn or amended." *Missouri Housing Development Comm'n v. Brice*, 919 F.2d 1306, 1314-15 (8th Cir.1990) (internal quotation and citation omitted) (defendants' admission in their answer that they had signed a guaranty agreement was binding even when defendants' later attempted to repudiate the admission). Here, Defendants are bound by their judicial admissions in their Answer that the operating regulations are incorporated into the Agreement. They cannot use a reversal of their position to manufacture a basis to claim error.

*Second,* Defendants could have and (if they intended to, were required to) have made this argument in prior briefing, but they failed to do so. *See Prosser*, 2013 WL 308770, at *1. Abandoning an unsuccessful strategy for a new approach is not a basis for a Rule 54(b) motion.

*Third*, even without Defendants' judicial admission, the Court could have properly determined under Missouri law that the Association Rules are incorporated into the Agreement. The Bankcard Addendum obligates Schnucks to comply with the Association Rules as they may be amended from time to time. (Doc. No. 37-2 at §§ 4, 25.) It also states that the respective rights and obligations of Defendants, as between them, "shall be governed by the agreements between them and/or their parent entities and Bankcard Association Rules" and that Defendant Citicorp's obligations "shall be limited to the sponsorship and settlement of certain Card transactions submitted in accordance with the terms and conditions of this Bankcard Addendum and the Bankcard Association Rules." (*Id.* at intro. paras.) And it further provides: "SERVICERS [Defendants] represent and warrant that SERVICERS will provide the services in accordance with the applicable association rules and applicable law." (*Id.* at § 15.2.) Additionally, the Operating Procedures are essentially a summary of common Association Rules paired with a caveat that the merchant should "consult the Card Organization Rules for complete information and to ensure full compliance with them." (Doc. No. 37-3 at 3.)

Missouri courts have consistently held that a collateral document is incorporated into an agreement by requiring compliance with the collateral document.[2] Examples include courts finding: (1) that the following provision incorporated the bank's rules and regulations into the agreement: "We jointly and severally agree to the rules and regulations as set forth in the savings passbook issued to us[;]"[3] (2) that call reports used to determine additional rent to be paid were incorporated by the following specific reference: "total deposits of the lessee, as

---

[2] To the extent Defendants argue that the operating regulations are not incorporated because they are not one of the documents listed in paragraph 17 of the MSA and section 26.3 of the Bankcard Addendum, such an argument would ignore the terms of the parties' Agreement and controlling Missouri case law.

[3] *Welch v. N. Hills Bank*, 442 S.W.2d 98, 100-101 (Mo. App. W.D. 1969).

9

determined by averaging the last four quarterly calls of regulatory agencies[;]"[4] (3) that the Medicaid provider agreements at issue were contracts which incorporated by reference regulations regarding reimbursement despite the fact that the agreement did not state that the regulations were incorporated;[5] and (4) that an insurance policy limiting liability up to the requirements of the state financial responsibility law incorporated the state financial responsibility law into the contract.[6] And the sole Missouri case cited by Defendants for this issue does not preclude a finding of incorporation by requiring compliance with a collateral document.[7]

Here, compliance with the Association Rules is a critical component of the Agreement. Moreover, without the Association Rules, there would be no obligations owed by acquirers to reimburse issuers for their losses from an account data compromise event. By requiring compliance with the Association Rules, the Agreement incorporated those Rules.

*Fourth*, the Court did not to rely on the Association Rules in interpreting the parties' Agreement. The only reference to the Association Rules in this Court's analysis (Doc. No. 69 at 14-17), is to the fact that "[t]he term 'issuer reimbursement fees' does not appear in the MasterCard operating regulations, but solely in the context of an excessive chargeback, not an account data compromise event, and not an assessment for the purpose of reimbursing issuing

---

[4] *Republic Nat'l Life Ins. Co. v. Mo. State Bank & Trust Co*, 661 S.W.2d 803, 808 (Mo. App. E.D. 1983).

[5] *Midwest Division-OPRMC, LLC v. Department of Social Services*, 241 S.W.3d 371, 377-380 (Mo. App. W.D. 2007).

[6] *Trantham v. Old Republic Ins. Co.*, 797 S.W.2d 771, 774 (1990).

[7] Defendants' reliance on *Dunn Industrial Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421 (Mo. banc 2003) is overstated. The Missouri Supreme Court determined whether the guarantor of a construction contract was bound to an arbitration provision in the construction contract when the guaranty referred to an attached construction contract. *Id.* at 435-436. The Court held that, based on the facts of the case, that "[m]ere reference to the construction contract in the guaranty [was] insufficient to establish that [the guarantor] bound itself to the arbitration provision of the construction contract." *Id.* However, as the court in *Ditto, Inc. v. Davids*, -- S.W.3d --, 2014 WL 5840728, at *8 (Mo. App. W.D. Nov. 12, 2014) stated: "The Supreme Court [in *Dunn Industrial Group, Inc.*] did not hold, however, that reference to a separate agreement in a contract can never support reading the agreements together."

banks." (*Id.* at 16 (citing MasterCard Rules at §§ 8.3.3, 8.3.3.1, 8.3.4).) The reliance on MasterCard Rules was solely to rebut Defendants' own argument. Because the Association Rules were not used to interpret the Agreement, Defendants' argument should be rejected.

Defendants also assert that the version of the Association Rules cited by Plaintiff in its briefing were not in existence at the time of contract and, therefore, could not have any relevance to the Court's effort to discern the parties' intent. (Doc. No. 85 at 9.) This argument was already raised by Defendants in their Sur-Reply Memorandum (Doc. No. 55) and rejected by this Court because: (1) there is no meaningful distinction between the 2011 VISA ADCR program and the 2012 Visa GCAR program; and (2) the Agreement contemplates that changes would be made to the Association Rules. (Doc. No. 69 at 8 n.7) Where, as here, Defendants are simply reasserting an argument already made to the Court in prior briefing, their Reconsideration Motion should be denied. *See, e.g., Broadway v. Norris*, 193 F.3d 987, 990 (8th Cir.1999) ("[A motion for reconsideration] is not a vehicle for simple reargument on the merits.").

Additionally, Defendants skip a step when they claim that if the Court had converted Schnucks motion to a summary judgment motion they would have offered extrinsic evidence to support their construction of the Agreement. Defendants ignore the fact that they are precluded from offering extrinsic evidence because they asserted that § 5.4 is unambiguous. Consequently, the four documents Defendants claim they would have proffered are of no consequence. Indeed, Defendants fail to explain how the word choices Defendants made in 2013 to describe liability for issuer losses as charges or fines: (1) shows the intent of the parties; or (2) can supersede the actual language of the GCAR and ADCR regulations that actually create and impose the issuer liability. Last, it is a gross mischaracterization for Defendants to assert that Schnucks "repeatedly characterized as a 'penalty' MasterCard's liability assessments"—Schnucks

11

argument was that if MasterCard ignored the substantial evidence that only half of the cards identified by MasterCard as at risk were subject to attack, their assessment would not be based on actual damages to issuers arising from the incident and, therefore, would not constitute a valid liquidated damages clause and would instead amount to an unenforceable penalty provision.

    **D.    This Court Did Not Commit Any Errors of Law in Construing the Agreement and the Court's Decision Leads to a Commercially Reasonable Result.**

Defendants' Reconsideration Motion contains a collection of arguments regarding the interpretation of the unlimited liability exception that were already made or could have been. None of them (new or old) show an erroneous interpretation of the parties' Agreement.

Defendants assert that the Court did not give effect to the terms "all" or "without limitation" in the definition of "Third Party Fees" and "did not even attempt to ascribe meaning to the term 'charges.'" (Doc. No. 85 at 11.) Where, as here, Defendants are simply reasserting an argument already made to this Court in prior briefing, their Reconsideration Motion should be denied. *See Broadway*, 193 F.3d at 990. Further, this Court held that "[t]he term 'Third Party Fees', as defined in the Bankcard Addendum, refers to fees charged by third parties in connection with Defendants' processing *services*, such as 'interchange fees' and 'access fees' (see Doc. No. 44-1), as opposed to liability for actual issuer *losses*." (Doc. No. 69 at 16.) This is true regardless of whether the definition of "Third Party Fees" uses the terms "all," "without limitation," and "charges."

Defendants also argue that "the Order adopted an unduly narrow construction of the term 'fees', which it found was limited only to payment for services." (Doc. No. 85 at 12.) And that the term "fee" was susceptible to more than one meaning, thereby necessitating denial of Schnucks' motion, because it is also defined as "an amount of money that must be paid," or "a

12

fixed charge." (*Id*.)  Defendants could have raised this argument in response to the underlying motion, but they failed to do so, and may not now use it to argue for reconsideration.  *See Prosser,* 2013 WL 308770, at *1.[8]  Further, the definition of "Third Party Fees," as this Court held, makes no reference to (1) anything equivalent to issuer losses, (2) the Association Rules that create liability for issuer losses, or (3) a data compromise event.  (Doc. No. 69 at 15.)

Finally, Defendants argue that "the construction of the Agreement reflected in the Order yields a commercially unreasonable result, in effect, mak[ing] [Defendants] an insurer of [Plaintiff] for any damage done, regardless of cause, as to Plaintiff's PCI DSS non-compliance and resulting data breaches."  (Doc. No. 85 at 13 (internal quotations and citation omitted).)  Defendants made a very similar argument in one of its memoranda.  (Doc. No. 47 at 7 n.5 ("Indeed, to accept Plaintiff's proposed interpretation (*i.e.*, that Schnucks' liability is limited with respect to the consequences of a data breach *caused* by Schnucks' *own failure* to follow data security protocols) is akin to rewarding Schnucks for not being PCI compliant.")  Given that Defendants are simply reasserting an argument already made to the Court in prior briefing, their Reconsideration Motion should be denied.  *See Broadway*, 193 F.3d at 990.  Further, the Order yields a commercially reasonable result—Schnucks' obligation to indemnify Defendants for losses incurred by issuing banks is limited to $500,000.  By contrast, this Court stated:

> If the Court were to adopt Defendants' interpretation of the terms 'Third Party Fees' and 'fees, fines or penalties' apply to liability for issuer losses, then Schnucks would be responsible for all financial liability imposed on Defendants by the Associations relating to the cyber attack and data breach, and, for that matter, any loss of any kind.  As a result, the limitation of liability would have no meaning.  The Court rejects such an interpretation.

---

[8] To the extent Defendants did raise this argument, their Reconsideration Motion should be denied because they are simply reasserting an argument already made to this Court in prior briefing.  *See Broadway*, 193 F.3d at 990.

13

(Doc. No. 69 at 17.)  Moreover, if a party could negate a limitation of liability clause when it did not like the consequences of its application by simply alleging the outcome was commercially unreasonable, such clauses could never be enforced.

## II.     DEFENDANTS SHOULD NOT BE GRANTED LEAVE TO AMEND

Where, as here, Defendants failed to move to amend their pleadings in the time permitted by the Case Management Order (Doc. No. 34 at 1 (permitting amendment of pleadings up until June 9, 2014)), Defendants need to satisfy the good cause standard for leave to amend under Rule 16(b), not the liberal standard of Rule 15(a).  *Sherman v. Winco Fireworks, Inc.,* 532 F.3d 709, 716 (8th Cir. 2008).[9]  "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Id*. (quoting *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006)).  "While the prejudice to the nonmovant resulting from modification of the scheduling order may also be a relevant factor, generally, we will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines."  *Sherman*, 532 F.3d at 717.[10]  "Where there has been 'no change in the law, no newly discovered facts, or any other changed circumstance ... after the scheduling deadline for amending pleadings,' then [the Court]

---

[9] Some courts, including this Court, have indicated that where a party seeks leave to amend a complaint after the deadline in the applicable case management order has passed, the Rule 16(b) good-cause standard applies first, then the "when justice so requires" standard of Rule 15(a) applies. *See, e.g., Jo Ann Howard & Associates, P.C. v. Cassity,* 2014 WL 6607077, at *4 (E.D. Mo. Nov. 19, 2014).  Other Courts have only applied the Rule 16(b) good-cause standard.  *See, e.g., Whitehead v. Garrett*, 2012 WL 13703, at *4 (E.D. Mo. Jan. 4, 2012).  While this Court need not apply Rule 15(a), to the extent the Court does, Defendants' motion should be denied as futile.

The text of Federal Rule 15(a)(2) makes it clear that permission to amend a pleading is not to be given automatically but is allowed only "when justice so requires."  A district court appropriately denies a movant leave to amend if "there are compelling reasons such as undue delay, bad faith or dilatory motive, … or futility of the amendment." *Sherman*, 532 F.3d at 715 (quoting *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005).  Leave to amend is properly denied when the proposed amendment would be futile. *See Zutz v. Nelson*, 601 F.3d 842, 852 (8th Cir.2010).  As explained *infra* in Section I.A., amending the pleadings would be futile because the $3 million exception to the limitation of liability is inapplicable to issuer losses.

[10] As explained in this section, because good cause for allowing the proposed amendment has not been established, the Court does not need to consider the possibility of prejudice to Schnucks.  *See, e.g., Sherman,* 532 F.3d at 717; *Bradford v. DANA Corp*., 249 F.3d 807, 809 (8th Cir. 2001); *Brandon v. City of Moline Acres*, 2011 WL 1085530, at *2 (E.D. Mo. Mar. 23, 2011) .

may conclude that the moving party has failed to show good cause." *Hartis v. Chicago Title Ins. Co.,* 694 F.3d 935, 948 (8th Cir. 2012) (quoting *Sherman*, 532 F.3d at 718).

Defendants have not been diligent in seeking to amend their pleadings. The motion to amend comes over eight months after the Case Management Order's deadline and Defendants knew of the allegations and arguments that they now seek to assert when they filed their counterclaim, motions, and memoranda.[11] Further, Defendants have not alleged a change in the law, the discovery of new facts, or some other change in circumstances.[12] Instead, they maintain that "the possibility of needing amendment was brought to light by the Order's conclusion that Defendants 'did not allege that Schnucks was either negligent or PCI DSS non-compliant' or the proper application of the $3 million limitation of liability provision under § 5.4 of the MSA." (Doc. No. 85 (citing Doc. No. 69 at 16.).) Defendants are responsible for pleading their case adequately, without the Court's assistance. While Defendants fail to state with particularity their amendments (other than to cure any pleading deficiencies), it appears the amendments would make purely legal and factual changes in the pleadings that could have been asserted within the time allowed for amending the pleadings. No good cause has been shown.[13]

## CONCLUSION

For the foregoing reasons, the Reconsideration Motion should be denied.

---

[11] *See, e.g., Barstad v. Murray County*, 420 F.3d 880, 883 (8th Cir. 2005) (affirming the district court's denial of leave to amend the Barstads' complaint under Rule 16(b) because the Barstads had eight months to request an amendment of the scheduling order and "knew of the claims they sought to add when they filed the original complaint"); *Freeman v. Busch*, 349 F.3d 582, 589 (8th Cir.2003) (affirming district court's denial of plaintiff's motion to amend complaint where motion was filed ten months after district court entered scheduling order and where plaintiff provided no reason why the allegations could not have been alleged earlier).

[12] *See Sherman*, 532 F.3d at 718 ("Here, no change in the law, no newly discovered facts, or any other changed circumstance made the preemption defense more viable after the scheduling deadline for amending pleadings.").

[13] *See, e.g.*, *Wolff Shoe Co. v. Mosinger Co., LLC*, 2012 WL 2899325, at *1 (E.D. Mo. July 16, 2012) ("Good cause for a belated amendment requires a showing that, despite the diligence of the movant, the belated amendment could not reasonably have been offered sooner."); *SmithCo Mfg. Inc. v. Haldex Brake Products Corp*, 267 F.R.D. 250, 254 (N.D. Iowa  2010) ("[g]ood cause is not established when, after the deadline for filing motions to amend pleadings, a party simply rethinks its position and decides to plead its case differently").

Dated: February 27, 2015

Respectfully submitted,

By: /s/ Kevin F. Hormuth
Kevin F. Hormuth, No. 48165 MO
David P. Niemeier, No. 50969 MO
GREENSFELDER, HEMKER & GALE, PC
10 South Broadway, Suite 2000
St. Louis, MO  63102
kfh@greensfelder.com
dpn@greensfelder.com
Telephone: 314.241.9090
Facsimile: 314.345.5466

Craig A. Hoffman (*pro hac vice*)
cahoffman@bakerlaw.com
Telephone:  513.929.3491
Facsimile:  513.929.0303

*Attorneys for Plaintiff Schnuck Markets, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on the 27th of February, 2015, the foregoing *Opposition to Defendants First Data Merchant Service Corp.'s and Citicorp Payment Services Inc.'s Motion for Partial Reconsideration of Order Granting Plaintiff's Cross-Motion for Judgment on the Pleadings or, in the Alternative, Motion for Leave to Amend Pleadings* was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

By:       /s/ Kevin F. Hormuth
          Kevin F. Hormuth