# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| SCHNUCK MARKETS, INC., | ) |
| Plaintiff, | ) |
| v. | ) No. 4:13-cv-2226-JAR |
| FIRST DATA MERCHANT DATA SERVICES CORP. AND CITICORP PAYMENT SERVICES, INC., | ) |
| Defendants. | ) |

**DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR PARTIAL RECONSIDERATION OF ORDER GRANTING PLAINTIFF'S PARTIAL CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS OR, <u>IN THE ALTERNATIVE, MOTION FOR LEAVE TO AMEND PLEADINGS</u>**

First Data Merchant Services Corp. ("First Data") and Citicorp Payment Services, Inc. ("Citicorp") (collectively, "Defendants") hereby respectfully submit this reply memorandum in further support of their Motion for Partial Reconsideration of Order Granting Plaintiff's Partial Cross-Motion for Judgment on the Pleadings or, in the Alternative, Motion for Leave to Amend Pleadings [Doc. No. 84] and memorandum of law in support [Doc. No. 85] (the "Motion").[1]

## PRELIMINARY STATEMENT

In granting Plaintiff the extraordinary remedy of judgment on the pleadings, the Order imposed a harsh result that both eviscerated Defendants' declaratory relief claim and deprived Defendants of the opportunity for any discovery or to defend against Plaintiff's declaratory relief claim on the merits.[2] Far from offering any reasonable justification for this draconian outcome, Plaintiff's Opposition[3] constructs an insurmountable "heads I win, tails you lose" standard in which reconsideration could *never* be obtained. Plaintiff essentially argues Defendants can neither raise arguments they previously asserted nor arguments they did not previously assert. But the purpose of reconsideration is to correct manifestly erroneous findings of fact or conclusions of law, even if it means revisiting arguments raised in prior briefing that may have been overlooked (here, possibly due to the unusual procedural posture in which the issues were decided), or addressing new issues that previously could not have been raised. Beyond its artificially narrow construction of the governing standard, Plaintiff's Opposition fails to refute the propriety of reconsideration, as set forth below.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

[2] As noted in Defendants' Motion, they do not seek reconsideration of the Order's denial of their motion for judgment on the pleadings. *See* Mot. at 1, n.1.

[3] *See* Plaintiff Schnuck Markets, Inc.'s Memorandum in Opposition to Defendants' Motion for Partial Reconsideration of Order Granting Plaintiff's Cross-Motion for Judgment on the Pleadings or, in the Alternative, Motion for Leave to Amend Pleadings [Doc. No. 93] ("Opposition").

*First*, the Opposition ignores the fact that the Order does not address the applicability of the $3 million limitation of liability provision to Plaintiff's claims because it did not accept as true the allegations in Defendants' pleadings and failed to draw all reasonable inferences from the pleadings in Defendants' favor. Plaintiff does not dispute the Order fails to acknowledge Defendants' affirmative defenses concerning Plaintiff's negligence and its actions or inaction as the basis for its alleged harm, nor does Plaintiff dispute its PCI DSS non-compliance was raised by the pleadings; nevertheless, Plaintiff asserts the Court already addressed the application of the $3 million limitation of liability to its claims. *See* Opp. at 6. A review of the Order, however, reveals no such ruling, because the Court reasoned that "[t]he application of the exception creating a separate $3,000,000 limitation … has not been raised by either side." Order at 6.

*Second*, the Opposition first seeks to excuse, and then to disclaim entirely, the Order's reliance on materials outside of the pleadings and the four corners of the Agreement in ruling on Plaintiff's Motion. In particular, Plaintiff contends that, notwithstanding its reliance on the Association Rules in interpreting a provision it maintained was unambiguous, Defendants cannot offer contrary extrinsic evidence. But under Rule 12(d), Plaintiff's proffer of the Association Rules in support of its motion for judgment on the pleadings triggered Defendants' entitlement to offer extrinsic evidence. Plaintiff also argues Defendants' mistaken admission that the Association Rules are incorporated into the Agreement is a binding judicial admission; however, whether a document is incorporated into an agreement is a *legal question* and, unlike admissions of fact, *cannot* be judicially admitted. Likewise, Plaintiff's argument that the Association Rules are incorporated into the Agreement is contrary to well-established Missouri law. And Plaintiff's position that the Court did not rely on the Association Rules in interpreting the Agreement is belied by the Order itself, which is replete with reliance upon the Association Rules.

2

*Third*, Plaintiff has no response regarding the Order's failure to ascribe meaning to critical terms of the Agreement and, instead, engages in circular reasoning concerning the commercial reasonableness of the Court's reading of the limitation of liability provision.

*Finally*, Plaintiff urges Defendants have not demonstrated good cause to amend their pleadings and, in any event, amendment would be futile.  Good cause exists where, as here, there has been a change in circumstances and Defendants have been diligent in meeting the Court's deadlines in the case, which still is in its infancy (*i.e.*, the parties only have filed pleadings and motions for judgment on the pleadings, after which the case was stayed without the parties' exchange of a shred of discovery).  Defendants sought leave to amend as soon as the Court entered its Order suggesting that their pleadings did not contain certain allegations, the presence and consideration of which clearly would have impacted the outcome on Plaintiff's Motion.  In these circumstances, good cause exists and amendment would not be futile.

For the reasons set forth herein and in the Motion, the Order should be reconsidered and vacated or, alternatively, Defendants should be granted leave to amend their pleadings.

## ARGUMENT

**I.    RECONSIDERATION WOULD NEVER BE PERMITTED UNDER PLAINTIFF'S STANDARD**

Plaintiff repeatedly states in its Opposition that Defendants cannot seek reconsideration of the Order either because Defendants previously raised arguments or because they could have raised arguments but did not.  *See* Opp. at 1-3, 5-6, 8, 11-13.  This conception of reconsideration always would lead to the result a party opposing reconsideration desires:  no reconsideration.  The cases cited by Plaintiff, *see id.* at 4, 11, do not aid its cause; they either state a general articulation of the law of the case doctrine,[4] involve reconsideration under Rule 60(b),[5] or hold

---

[4] *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (court did not exceed power in revisiting "clearly wrong" prior decision).

3

that reconsideration was proper.[6] While Plaintiff effectively seeks to write reconsideration under Rule 54(b) out of the Federal Rules, its misguided notions simply are not the law.

The Order – which granted "a drastic remedy that courts should otherwise use sparingly"[7] – contains "erroneous findings of facts or conclusions of law" that Rule 54(b) allows the Court "considerable discretion" to correct "at any time before the entry of a judgment adjudicating all the claims." Mot. at 3-4. Defendants seek reconsideration of the Order based on (i) facts and legal principles that were misconstrued or misapplied, or (ii) facts that were not available to Defendants at that time.[8] Because the Order, as it currently stands, would become "a vehicle of injustice," and Defendants properly have sought reconsideration under Rule 54(b) to correct manifest errors of law and fact, reconsideration of the Order is warranted. *See* Mot. at 4.

## II. THE APPLICABILITY OF THE $3 MILLION LIMITATION OF LIABILITY PROVISION WAS NOT ADDRESSED BY THE COURT IN THE ORDER

Looking to avoid having this case decided on the merits, Plaintiff asserts that Defendants' request for reconsideration based on the Order's failure to consider the applicability of the $3 million limitation fails because Defendants "do not actually assert" it applies and do not explain

---

[5] *See Broadway v. Norris*, 193 F.3d 987, 990 (8th Cir. 1999) (affirming denial of reconsideration of defendant's motion to dismiss under Rule 60(b), since defendant could re-raise defenses in summary judgment). Reconsideration of an interlocutory order under Rule 54(b), pursuant to which Defendants filed their Motion, is subject to a less stringent standard than under Rule 60(b). *See Davenport v. Charter Commc'ns, LLC*, 2013 WL 992328, at *2 (E.D. Mo. Mar. 13, 2013); *Heubel Material Handling, Inc. v. Universal Underwriters Ins. Co.*, 2011 WL 1458654, at *2 (W.D. Mo. Apr. 15, 2011).

[6] *See Prosser v. Nagaldinne*, 2013 WL 308770, at *3 (E.D. Mo. Jan. 25, 2013) (Ross, J.) (granting reconsideration of earlier summary judgment order to correct error of law); *Evans v. Contract Callers, Inc.*, 2012 WL 234653, at *4-*6 (E.D. Mo. Jan. 25, 2012) (granting reconsideration of class certification order due to error of fact).

[7] *Aberkalns v. Blake*, 633 F. Supp. 2d 1231, 1233 (D. Colo. 2009); *see also PaineWebber Inc. v. Int'l Mobile Machs. Corp.*, 1992 WL 75068, at *2 (S.D.N.Y. Mar. 30, 1992) (judgment on pleadings is "a[n] extraordinary remedy which can be granted only in the unusual circumstance where the pleadings clearly demonstrate that one party is entitled to judgment as a matter of law"); *Cable Exp., Inc. v. Charter Commc'ns Holding Co., LLC*, 2006 WL 1851230, at *1 (W.D. Mich. June 29, 2006) ("Judgment on the pleadings is rare given the standards applicable to such motions …").

[8] *See, e.g.*, Mot. at 10 (discussing December 29, 2014 Letter from M. Laubsted (Visa) to K. Mattea (Citicorp), evidencing Plaintiff's successful invocation of Visa's catastrophic loss provision to avoid responsibility for the millions of dollars of assessments for which it seeks to hold Defendants liable in this case).

4

how allegations of Plaintiff's negligence or PCI DSS non-compliance change the outcome. Opp. at 5. Both contentions are incorrect. As Defendants made clear in their Motion, the Order's failure to consider the $3 million limitation of liability provision's applicability – occasioned by the failure to accept as true Defendants' allegations regarding Plaintiff's negligence and PCI DSS non-compliance and draw all reasonable inferences from the pleadings in Defendants favor, as required by Rule 12(c) – is a manifest error of law warranting reconsideration. *See* Mot. at 3-5.[9] Had the Order applied the proper Rule 12(c) standard, the Court would have had to decide whether Plaintiff's negligence and PCI DSS non-compliance – which constitute breaches of § 25 of the Bankcard Addendum – rendered the $3 million, rather than $500,000, limitation of liability provision applicable. *See* Mot. at 5. Because the Order did not undertake such an analysis, reconsideration is warranted on this basis alone.[10]

Further, although Plaintiff acknowledges that "[t]he $3 million limitation in § 5.4 applies to liability for violating § 25," Opp. at 6, its argument that the Court "determin[ed] that § 25 only applies to liability for non-compliance fines" and that "[a] non-compliance fine is the only liability imposed by § 25 of the Bankcard Addendum," Opp. at 6, is not supported by the Order.[11] Indeed, the Order specifically *does not* include an analysis of § 25 because it

---

[9] Notably, Plaintiff does not dispute the following material points in the Motion: (i) Defendants specifically alleged in their pleadings that Plaintiff's negligence and actions or inactions caused its alleged damages, *see* Mot. at 5; (ii) Defendants argued in their briefing on Plaintiff's Motion that the assessments imposed by the Associations were "related to Plaintiff Schnuck's negligent act or omission," namely, its "PCI non-compliance and resulting data breach," *id.*; (iii) Plaintiff's own allegations and arguments "raised the $3,000,000 limitation of liability due to PCI DSS non-compliance," *id.* at 5-6; and (iv) the Order expressly acknowledged Defendants' argument that the Associations' assessments arose in connection with Plaintiff's PCI non-compliance and resulting data breach, *see id.*

[10] Plaintiff's acknowledgement that these issues are addressed in "only [] two sentences in the Court's Order," Opp. at 5, illustrates the point precisely: the Order did not accept as true all of Defendants' allegations as the non-moving party and, in so doing, neglected to consider whether the $3 million limitation of liability provision applied.

[11] Plaintiff does not offer an explanation as to why it asserts the MasterCard case management *fee* falls within the $3 million limitation, *see* Opp. at 5, which, according to Plaintiff, only applies to "fines," *id.* at 6. Notably, both Visa and the district court in *Genesco* – a case cited by Plaintiff in its briefing on judgment on the pleadings – refer to the liabilities Plaintiff seeks to impose on Defendants as a result of its data breach only as "fines" and "assessments." *See, e.g.*, Jan. 30, 2015 Visa Defendants' Memorandum of Law in Support of Their Motion No. 1 for Summary

mistakenly concluded that "Defendants do not allege that Schnucks was either negligent or PCI DSS non-compliant." Order at 16. An actual analysis of the applicability of the $3 million limitation of liability provision would, at a minimum, entail consideration of: (i) the provision of § 5.4 of the MSA that limits a party's liability to $3 million for breach of § 25 of the Bankcard Addendum; (ii) § 25 of the Bankcard Addendum, which explicitly requires Plaintiff "to follow the Operating Procedures"; and (iii) whether Plaintiff's negligence and/or PCI DSS non-compliance violated the Operating Procedures, including § 4, which addresses data security.

Further, contrary to Plaintiff's assertion, *see* Opp. at 6, in circumstances where, as here, Plaintiff breaches its obligation in § 25 to follow the Operating Procedures, there is nothing within § 25 that limits Plaintiff's liability to "non-compliance fines" assessed by an Association. Indeed, the Operating Procedures – one of three documents that comprise the Agreement, *see* n.14 *infra* – expressly prescribe a panoply of fees, costs, penalties, expenses, and other obligations in a wide variety of circumstances of merchant non-compliance. In fact, where there is a "Compromised Data Event" – like that created by Plaintiff's PCI DSS non-compliance – the Operating Procedures expressly provide the merchant "must promptly pay [Defendants] for all related expenses, claims, assessments, fines, losses, costs, and penalties and Issuer reimbursements imposed by the Card Organizations against [Defendants]," along with "all expenses and claims made by Issuers against [Defendants] alleging [Plaintiff's] responsibility for the Compromised Data Events …." Operating Procedures § 4.9.

The Order did *not* undertake this analysis and the Court did *not* decide whether Plaintiff's failure to follow § 4 of the Operating Procedures breached § 25 of the Bankcard Addendum, triggering the $3 million limitation of liability provision of § 5.4. Instead, the Order incorrectly

---

Judgment That the VIOR Assessments are Valid Liquidated Damages Under California Civil Code Section 1617 [Doc. No. 602], filed in *Genesco Inc. v. Visa U.S.A., et al.*, No. 3:13-cv-00202 (M.D. Tenn.) ("*Genesco*"), at 4, 8, 24; Jan. 17, 2014 Memorandum [Doc. No. 297], issued in *Genesco*, at 1-3, 8, 12, 28-29, 32, 35-39.

concluded, as a matter of law, that "Schnucks' maximum liability under the terms of the Agreement … as a result of the data security breach is $500,000.00." Order at 17. Reconsideration in these circumstances is both necessary and appropriate.

### III. THE ASSOCIATION RULES – WHICH ARE NOT PART OF THE PLEADINGS AND ARE NOT INCORPORATED AS PART OF THE AGREEMENT – WERE IMPROPERLY CONSIDERED IN RULING ON PLAINTIFF'S MOTION

To interpret the Agreement and reach the conclusion in the Order, the Court went beyond the pleadings and the four corners of the Agreement, placing heavy reliance on extrinsic evidence (the Association Rules), without providing Defendants an opportunity to present refuting evidence, as required under Rule 12(d).[12] Plaintiff argues the Court's reliance on the Association Rules was proper because (i) Defendants mistakenly admitted the Association Rules were incorporated into the Agreement, and (ii) the Association Rules are incorporated into the Agreement because the Agreement requires compliance with Association Rules. *See* Opp. at 8-10. Plaintiff further argues Defendants are precluded from proffering extrinsic evidence because they asserted § 5.4 was unambiguous and, in any event, Defendants' proffered extrinsic evidence is of no consequence. As set forth below, the Court's consideration of and reliance on the Association Rules was manifest error requiring reconsideration.

#### A. Defendants' Mistaken Admission That the Association Rules Are Incorporated Into the Agreement is Not a Binding Judicial Admission

*First*, Plaintiff argues Defendants' incorrect admission that the Association Rules are incorporated into the parties' Agreement is a binding judicial admission, making the Court's reliance on the Association Rules proper. *See* Opp. at 8. Whether the Association Rules are

---

[12] Plaintiff's argument that the Court did not actually rely on the Association Rules in interpreting the parties' Agreement, *see* Opp. at 10, is belied by the Order, which evinces *significant* reliance on the Association Rules in interpreting the parties' Agreement, including the various types of "fees" that may be imposed by the Associations, the "fines and penalties" that may be assessed by the Associations in various circumstances, and the nature and kinds of assessments the Associations may impose as a result of data breaches. *See* Order at 2, 7-9, 12-17.

7

incorporated by reference as part of the Agreement, however, is a legal question. *See, e.g.*, *Northrup Grumman Info. Tech., Inc. v. U.S.*, 535 F.3d 1339, 1343 (Fed. Cir. 2008) ("Incorporation by reference … is a question of law."). Unlike admissions of fact, admissions concerning legal questions are *not* binding judicial admissions. *See, e.g.*, *MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 341 (6th Cir. 1997) ("The scope of judicial admissions is restricted to matters of fact which otherwise would require evidentiary proof.").[13] "A party may not judicially admit a question of law." *Rodriguez v. CHRISTUS Spohn Health Sys. Corp.*, 874 F. Supp. 2d 635, 656 (S.D. Tex. 2012). Indeed, "[i]t is well established that judicial admissions on questions of law have no legal effect." *Dabertin v. HCR Manor Care, Inc.,* 68 F. Supp. 2d 998, 1000 (N.D. Ill.1999). The sole case Plaintiff cites in support of its argument, *see* Opp. at 8 (citing *Missouri Housing Dev. Comm'n v. Brice*, 919 F.2d 1306, 1314-15 (8th Cir. 1990)), does not alter this conclusion, because in that case, the court held that a party's admission that it had signed an agreement – a clear issue of fact – was a binding admission. *See* 919 F.2d at 1315.

Moreover, Plaintiff does not dispute the well-established rule that a contract attached to pleadings trumps inconsistent allegations in the pleadings. *See* Mot. at 7, n.8 (citing *Creelgroup, Inc. v. NGS Am., Inc.*, 518 F. App'x 343, 347 (6th Cir. 2013) ("[W]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.")). Here, the Agreement's merger clause providing that the MSA, Bankcard Addendum and Operating Procedures constitute the entire Agreement, *see* Pt. III.B & n.14 *infra*, trumps Plaintiff's inconsistent allegations and Defendants' mistaken admission.

---

[13] *See also Marr v. Commonwealth Land Title Ins. Co.*, 307 F. App'x 952, 957 (6th Cir. 2009); *Seeger v. AFNI, Inc.*, 2007 WL 1598618, at *9 (E.D. Wis. June 1, 2007) *aff'd*, 548 F.3d 1107 (7th Cir. 2008) ("[J]udicial admissions are only applicable to questions of fact, and not to questions of law."); *Catalogue Creatives, Inc. v. Pac. Spirit Corp.*, 2005 WL 1950231, at *2 (D. Or. Aug. 15, 2005) ("The judicial admissions doctrine is limited to admissions of fact and does not extend to questions of law.").

8

B.     **Requiring General Compliance with Applicable Association Rules Does Not Operate to Incorporate the Association Rules Into the Agreement**

*Next*, Plaintiff argues that the Court could have determined that the Association Rules are incorporated as part of the Agreement because the parties are generally required to comply with applicable Association Rules.  *See* Opp. at 9.  As a preliminary matter, this would run afoul of integration clauses in the MSA and Bankcard Addendum that expressly disclaim incorporation of documents other than the MSA, Bankcard Addendum, and Operating Procedures into the Agreement.[14]  The Supreme Court of Missouri recently emphasized the impact of such clauses:

> Merger clauses are express statements of the merger doctrine and *are intended to prevent extrinsic evidence of other agreements from influencing the interpretation of a final contract*, preserving the sanctity of written contracts.  Therefore, a written agreement *may not be varied or contradicted by evidence of extrinsic agreements*.  This rule is substantive, and not a mere rule of evidence and *any extrinsic evidence must be ignored*.

*Johnson v. JF Enters., LLC*, 400 S.W.3d 763, 768-69 (Mo. 2013) (*en banc*) (emphasis added).

Further, a compliance requirement alone does not negate the rule that a contract must explicitly identify what extrinsic material is being incorporated and clearly communicate that the purpose of the reference is to incorporate it into the contract.  *See* Mot. at 8, n.13 (citing, *e.g.*, *Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 436 (Mo. 2003)).[15]  Here, the

---

[14] *See* MSA [Doc. No. 37-1] § 17 ("This MSA and any Addenda hereto constitute the entire agreement between the parties with respect to the subject matter thereof"); Bankcard Addendum [Doc. No. 37-2] § 26.3 ("This Bankcard Addendum, along with the Master Services Bankcard Addendum, any Schedules and the Operating Procedures, constitutes the entire agreement between the parties with respect to the subject matter."); *see also* Order at 2.

[15] The cases cited by Plaintiff fail to support its argument and are inapposite to the issue of whether the Association Rules are incorporated into the Agreement here.  *See, e.g.*, *Ditto, Inc. v. Davids*, 2014 WL 5840728, at *8 (Mo. Ct. App. W.D. Nov. 12, 2014) (documents contemporaneously executed as part of same transaction may be construed together without express incorporation); *Welch v. North Hills Bank*, 442 S.W.2d 98, 101 (Mo. Ct. App. W.D. 1969) (language in signature card issued to customer by bank that included customer's agreement to bank's rules and regulations set forth in pass book issued to customer operated to incorporate rules and regulations into parties' contract); *Trantham v. Old Republic Ins. Co.*, 797 S.W.2d 771, 774 (Mo. Ct. App. E.D. 1990) (insurance policy incorporated Missouri financial responsibility law by reference when statute was specifically referenced as defining limits of coverage in rental agreement); *Midwest Div.-OPRMC, LLC v Dep't of Social Servs., Div. of Med. Servs.*, 241 S.W.3d 371, 380 (Mo. Ct. App. W.D. 2007) (Medicaid rules and regulations promulgated by defendant and expressly referenced as basis for payment in hospital provider agreement incorporated into provider agreement);

9

Agreement generally references compliance with "applicable" Association Rules: "[PLAINTIFF] agrees to follow the procedures in the Operating Procedures in connection with each Card transaction and to comply with all applicable Association Rules." Bankcard Addendum [Doc. No. 37-2] at § 4. But, in stark contrast with Plaintiff's obligation to follow the Operating Procedures, which expressly *are* part of the Agreement, *see* n.14 *supra*, the parties specifically *did not* incorporate the Association Rules, *see id.*[16] This is for good reason, as the Association Rules are (i) drafted and promulgated by third parties, (ii) embodied in numerous versions (*e.g.*, public, merchant, international), (iii) comprised of thousands upon thousands of pages spread across different sources, and (iv) relate to the rights and obligations of third parties and often have no bearing on Defendants' relationship with Plaintiff.

Moreover, even if the Association Rules were incorporated into the parties' Agreement (they are not), this does not mean that *all* Association Rules were incorporated. *See, e.g.*, *McWhorter v. Realty World-Star, Inc.*, 525 N.E.2d 1205, 1207-08 (Ill. App. Ct. 1988) (reference in contract to "certain specified provisions" of manual incorporated "only certain" provisions of manual, not manual in its entirety). For example, in *Homan v. Employers Reinsurance Corporation*, the Missouri Supreme Court reviewed the construction of a reinsurance contract that contained a clause making the contract "subject to" the terms and conditions of the original policy. 345 Mo. 650, 136 S.W.2d 289, 302 (1939). The Court held that this language did not "adopt[] into the reinsurance agreement all of the terms and conditions of the original policy, but only those provisions particularly applicable to the relationship between the parties to the

---

*Republic Nat'l Life Ins. Co. v. Mo. State Bank and Trust Co.*, 661 S.W.2d 803, 808 (Mo. Ct. App. E.D. 1983) (call reports of regulatory agencies expressly referenced in lease as basis for rent calculation incorporated into lease).

[16] Plaintiff provides no basis for its conclusory assertion that the Operating Procedures are "essentially a summary" of the Association Rules. *See* Opp. at 9. The Operating Procedures, by their terms, "describe the procedures and methods for submitting Credit Card transactions for payment, obtaining authorizations, responding to Chargebacks and Media Retrieval requests, and other aspects of the operations of our services." Operating Procedures [Doc. No. 37-3] at Part I(A).

10

reinsurance contract and which, under the terms of that contract, were intended to be a part thereof." *Id.* "[T]he provisions and conditions [] which could have no application as between the reinsured and the reinsurer and which were not intended to have any force or application as between the reinsured and the reinsurer would not apply to the reinsurance contract." *Id.*

Likewise, § 4 of the Bankcard Addendum provides that the parties must comply with "applicable" Association Rules, but does not identify which Association Rules are "applicable." While the parties clearly intended to require Plaintiff's compliance with Association Rules that relate to Plaintiff's duties and obligations under the Agreement, including, *e.g.*, compliance with PCI DSS data security standards,[17] there is no support for the conclusion that the parties intended to incorporate the provisions from the Association Rules proffered by Plaintiff and accepted by the Order regarding the relationship between issuer banks and acquirer banks in circumstances where there has been a data breach. *See* Order at 15. It was thus improper for the Order to look to those provisions of the Association Rules – which have nothing to do with the relationship between Plaintiff and Defendants – to interpret the Agreement. At the very least, the inclusion of the word "applicable" created an ambiguity that should have led to the denial of Plaintiff's Motion. *See Boyer v. Sinclair & Rush, Inc.*, 67 S.W.3d 627, 631 (Mo. Ct. App. E.D. 2002).

### C. Defendants Are Not Precluded From Offering Extrinsic Evidence to Rebut Plaintiff's Proffered Extrinsic Evidence

*Finally*, Plaintiff argues Defendants are precluded from offering extrinsic evidence regarding the proper interpretation of the Agreement because they purportedly asserted that § 5.4 of the MSA is unambiguous. *See* Opp. at 11-12.[18] This misses the mark. Plaintiff offered

---

[17] It is ironic that Plaintiff should direct the Court to those Association Rules – which were referenced in the Agreement to require Plaintiff to comply with applicable data security protocols – as a means to avoid liability occasioned by its own non-compliance with those same data security protocols.

[18] Contrary to Plaintiff's argument, *see* Opp. at 11, Defendants did not assert the entirety of § 5.4 was unambiguous in response to Plaintiff's Motion. *See* Mot. at 8, n.12. It was only in support of their own motion for judgment on

11

extrinsic evidence (excerpts of the Association Rules post-dating the execution of the parties' Agreement) – notwithstanding its stance the Agreement was unambiguous – and, under Rule 12(d), Defendants should have been given the opportunity to counter with their own extrinsic evidence. While Plaintiff downplays Defendants' proffered materials, arguing that it should not matter "how any entity refers to [the assessments at issue] in extrinsic evidence," Opp. at 3 – *at least not when it does not support Plaintiff's interpretation* – it is clear that (i) the invoice from MasterCard, one of the entities that promulgates the Association Rules, denominating the assessments as "charges," and (ii) Plaintiff's own characterization of the assessments as "penalties," are highly relevant to the Court's analysis. *See* Mot. at 9-10; *see also* n.11 *supra*.

## IV. PLAINTIFF'S ARGUMENT THAT THE ORDER REACHED A COMMERCIALLY REASONABLE RESULT IS CIRCULAR AND FAILS TO ADDRESS DEFENDANTS' CITED ERRORS OF LAW

In response to Defendants' arguments that reconsideration is warranted because the Order failed to give meaning to critical terms in the Agreement and produced a commercially unreasonable result, Plaintiff asserts only that Defendants did not raise the contract construction arguments in briefing on Plaintiff's Motion or, if they did, they should not be permitted to reassert those arguments, and that the result is commercially reasonable because that is what is set forth in the Order. *See, e.g.*, Opp. at 13 & n.8. Plaintiff's avoidance of the issues and circular reasoning fails to address the propriety of Defendants' request for reconsideration due to the oversights or errors of law and fact in the Order.

For example, Plaintiff contends that whether the defined term "Third Party Fees" used the terms "all," "without limitation," and "charges," is beside the point, as "Third Party Fees" only refers to "fees charged by third parties in connection with Defendants' processing services."

---

the pleadings that Defendants asserted the last sentence of § 5.4 was unambiguous. Plaintiff's argument, therefore, conflates the two motions and fails on its face.

12

Opp. at 12. But that argument is entirely circular: as Defendants' Motion demonstrates, had the Order given meaning and effect to the terms "all," "without limitation," and "charges," then it could not have focused solely on the term "fees" to rule, as a matter of law, that "Third Party Fees" – which is defined by reference to these other terms – only referred to services. *See* Mot. at 10-11. Plaintiff's defense of the Order's commercially unreasonably interpretation of the Agreement also is circular insofar as Plaintiff contends the Order's holding that Plaintiff's obligation to indemnify Defendants is limited to $500,000 is commercially reasonable because the Order says so. *See* Opp. at 13. To interpret the Agreement, as the Order does, to effectively make Defendants the insurer of Plaintiff's (inadequate) data security, when nothing in the parties' negotiations or the Agreement ever suggested this was the parties' intent, is a manifest error of law necessitating reconsideration. *See* Mot. at 13.[19]

## V. DEFENDANTS HAVE SATISFIED THE GOOD CAUSE STANDARD FOR LEAVE TO AMEND

As Plaintiff acknowledges, *see* Opp. at 14, "the primary measure of good cause" under Rule 16(b) "is the movant's diligence in attempting to meet the order's requirements." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008). "If a party has been diligent in meeting the scheduling order's deadlines," the court then decides if amendment is proper under Rule 15(a)'s liberal standard. *Jo Ann Howard & Assocs., P.C. v. Cassity*, 2014 WL 6607077, * 4 (E.D. Mo. Nov. 19, 2014). Good cause exists where there is a "change in circumstance, law, or

---

[19] Plaintiff's argument that limitation of liability clauses could never be enforced "if a party could negate [such a] clause when it did not like the consequences of its application by simply alleging the outcome was commercially unreasonable," Opp. at 14, misses the point. Reading the limitation of liability in § 5.4 as the Order does is commercially unreasonable no matter what the "outcome" is – whether Plaintiff's data breach resulted in $1 trillion worth of damages or $1. There is no reason why Defendants would undertake to insure Plaintiff, especially when they would have no means to ameliorate any of the risk. Indeed, a case Defendants cited in their Motion, *Jim Carlson Constr., Inc. v. Bailey*, 769 S.W.2d 480, 482 (Mo. Ct. App. W.D. 1989), which Plaintiff does not refute in its Opposition, is contrary to Plaintiff's stance: that courts should reject "an interpretation of a contract or agreement which evolves unreasonable *results*, when a probable and reasonable construction can be adopted." Mot. at 13. The interpretation of the Agreement advanced by Defendants is a much more "probable and reasonable" construction of the § 5.4 than the one proffered by Plaintiff in which Defendants act as its insurer.

13

newly discovered facts." *Id*.  Here, circumstances have changed in at least two ways that justify amendment:  (i) Plaintiff successfully invoked the catastrophic loss waiver to avoid millions of dollars of liability created by its PCI DSS non-compliance and data breach; and (ii) the Order raised the possibility that, notwithstanding the Answer's allegations, Defendants' pleadings did not sufficiently allege Plaintiff's negligence and PCI DSS non-compliance.  *See* Mot. at 10, 5-6.

Further, Defendants have been diligent in meeting the Court's deadlines in this case, which – despite Plaintiff's criticism that Defendants' request to amend "comes over eight months after the Case Management Order's deadline," Opp. at 15 – still is in its very preliminary stages. After the parties filed their pleadings and moved for judgment on the pleadings, the case was stayed at Plaintiff's request (over Defendants' objection, *see* Motion to Stay Opposition [Doc. No. 61]), and there has been no discovery to date and no prior amendment of pleadings.  As explained in a case cited in Plaintiff's Opposition, in circumstances where, as here, discovery has not yet begun and the proposed amendments are based on facts similar to the original complaint, there is no prejudice to the non-movant and amendment generally should be permitted.  *See Wolff Shoe Co. v. Mosinger Co.*, 2012 WL 2899325, at *2 (E.D. Mo. July 16, 2012).

Moreover, in circumstances where, as here, a court has issued a ruling on a motion challenging the sufficiency of the pleadings to dismiss a party's claims, courts routinely grant leave to amend.  *See, e.g.*, *Backes v. Walgreen, Co.*, 2014 WL 1655030, at *5 (W.D. Mo. Apr. 25, 2014) (granting defendants' motion for partial judgment on the pleadings and granting in part plaintiff's motion for leave to amend, even though the deadline for amendment had passed); *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 645 (6th Cir. 2003) (district court abused its discretion by not permitting leave to amend after granting judgment on pleadings).[20]

---

[20] *See also U.S. ex rel. Goldstein v. Fabricare Draperies, Inc.*, 84 F. App'x 341, 343 (4th Cir. 2004) (noting district court's grant of motion for leave to amend upon granting judgment on the pleadings); *Green v. Mastodon Ventures,*

14

All cases cited by Plaintiff, *see* Opp. at 14-15, are factually and procedurally inapposite and involve a party's egregious lack of diligence in meeting court deadlines, including requests for amendment made several years into the litigation, after multiple prior amendments, after the close of discovery, and following briefing on summary judgment.[21]

As noted in Defendants' Motion, the request for leave to amend also satisfies the liberal standard of Rule 15(a).  *See* Mot. at 14-15.  Although Plaintiff urges amendment would be futile, *see* Opp. at 14, n.9, as set forth in Pt. II *supra*, amendment of Defendants' pleadings to address, at a minimum, Plaintiff's negligence and PCI DSS compliance and the applicability of the $3 million limitation of liability provision clearly would not be futile.[22]

For all of these reasons, Defendants' motion for leave to amend should be granted.

## CONCLUSION

For the foregoing reasons and those set forth in the Motion, the Court should reconsider and vacate the Order or, in the alternative, grant Defendants leave to amend their pleadings.

---

*Inc.*, 2008 WL 4211122, at *2 (D.S.C. Sept. 8, 2008) (granting leave to amend after issuing judgment on the pleadings); *Pinto v. Microsoft Corp.*, 2012 WL 4479059, at *3 (S.D. Fla. Sept. 28, 2012) (explaining rule that parties must be given at least one opportunity to amend before dismissal "is typically applied after a court grants a Rule 12(b)(6) motion to dismiss when a plaintiff fails to state a claim upon which relief can be granted, ... [but] courts also apply the rule in the context of a 12(c) motion for judgment on the pleadings"); *Williams v. Monroe Cnty. Bd. of Educ.*, 2009 WL 1767658, at *5 (S.D. Ala. June 23, 2009) (same).

[21] *See Sherman,* 532 F.3d at 717 (no amendment where party sought leave two and a half years after suit was filed, after the close of discovery, 18 months after the deadline for amending pleadings, and eight months after it was aware of the defense it wished to plead and there would be prejudice to other party); *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 948-49 (8th Cir. 2012) (no amendment to assert new claim in putative class action where party sought to amend two years after deadline and six months after class certification ruling and plaintiff did not allege any change in fact, law, or circumstances); *Freeman v. Busch*, 349 F.3d 582, 589 (8th Cir. 2003) (no amendment to assert new claim where party sought amendment weeks before close of discovery and could not explain why request for amendment could not have been made earlier); *SmithCo Mfg. Inc. v. Haldex Brake Prods. Corp.*, 267 F.R.D. 250, 254 (N.D. Iowa 2010) (no amendment to assert new claims where party requested leave after summary judgment papers filed against it, eight months after deadline to amend); *see also Barstad v. Murray Cnty.*, 420 F.3d 880, 883 (8th Cir. 2005) (no amendment to assert new claims where party sought amendment while discovery was underway and sought to add claims that were known at the time of the original complaint); *Wolff Shoe Co.*, 2012 WL 2899325, at *2-3 (allowing amendment nine months after deadline in case management order where the party was diligent and there was no prejudice to opposing party).

[22] Even though, as set forth in Pt. III.A *supra*, Defendants' mistaken admission that the Association Rules are incorporated into the Agreement is of no legal effect, Defendants also would amend their pleadings to expressly deny Plaintiff's allegation that the Association Rules are incorporated into the Agreement.

15

Dated: March 16, 2015                Respectfully submitted,


        */s/ Edward Soto*
Edward Soto (*pro hac vice*)
edward.soto@weil.com
P. Christine Deruelle, Esq. (*pro hac vice*)
christine.deruelle@weil.com
**WEIL, GOTSHAL & MANGES LLP**
1395 Brickell Avenue, Suite 1200
Miami, Florida  33131
Telephone:      (305) 577-3100
Facsimile:       (305) 374-7159

Jonathan D. Polkes (*pro hac vice*)
jonathan.polkes@weil.com
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York  10153
Telephone:      (212) 310-8881
Facsimile:       (212) 310-8007

Lucy T. Unger (No. 36848)
lunger@wvslaw.com
Lisa Larkin (No. 46796MO)
llarkin@wvslaw.com
Bank of America Tower
100 North Broadway, 21st Floor
St. Louis, Missouri, 63102
Telephone:      (314) 345-5000
Facsimile:       (314) 345-5055

*Counsel for Defendants/Counterclaim-Plaintiffs First Data Merchant Data Services Corporation and Citicorp Payment Services Incorporated*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing was filed electronically with the Clerk of the Court of the United States District Court for the Eastern District of Missouri using CM/ECF on March 16, 2015 and, as such, was served on all parties of record by operation of the CM/ECF system.

By: */s/ P. Christine Deruelle*
P. Christine Deruelle (*pro hac vice*)
christine.deruelle@weil.com
**WEIL, GOTSHAL & MANGES LLP**
1395 Brickell Avenue, Suite 1200
Miami, Florida  33131
Telephone:     (305) 577-3100
Facsimile:      (305) 374-7159

*Counsel for Defendants/Counterclaim-Plaintiffs First Data Merchant Data Services Corporation and Citicorp Payment Services Incorporated*